IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| Mobile Equity Corp., <br><br> *Plaintiff*, <br><br> v. <br><br> Walmart Inc., <br><br> *Defendant*. | Civil Action No.: 2:21-CV-00126-JRG-RSP <br><br> JURY TRIAL DEMANDED |

**MOBILE EQUITY CORP.'S**
**FIRST MOTION TO COMPEL DISCOVERY**

I.  **Summary and Background Facts**

Mobile Equity Corp ("MEC") moves to compel Walmart Inc. ("Walmart") to produce technical documents and source code after Walmart failed to comply with its August 26, 2021 P.R. 3-4(a) obligation to produce "documentation sufficient to show the operation of any aspects or elements of an Accused Instrumentality."  MEC has accused the payment infrastructure used by Walmart in mobile payments, such as Walmart Pay.  This is a large multi-component system, handling millions of transactions representing billions of dollars annually. But Walmart produced just 30 pages (no source code was produced), showing only high-level components. Despite a one-month extension (1/10th of the entire schedule), Walmart has not cured its failure.

On the 3-4(a) deadline Walmart produced 30 pages of material (shown below): 25 high-level figures (including two duplicate and four illegible figures) and five screenshots:



Ex. 1 (showing the 28 documents produced).  This material (about 2,500 words), contains no source code and does not explain how Walmart Pay operates.  It, at best, identifies the high-level

components of the accused system, which comprises an app (on one end) and multiple back-end systems, orchestrating and conducting payment (on the other).  It was a map to what was missing.

MEC agreed to extend the schedule by a month to give Walmart time, which Walmart said it needed, to collect and produce the withheld technical discovery before the 4-2 deadline. Walmart, instead, waited three weeks (September 21) and then produced only another select handful of material that, shockingly, were all dated as collected to produce by August 16th—10 days *before* the 3-4(a) deadline.  This production—about 40 web pages—was the original source of Walmart's 3-4(a) production—it contains the same images (some more legibly).[1] Walmart thus had this material, apparently, produced only snippets of a few technical documents, claimed hardship, received an extension, and then produced what it had already collected and withheld.

The September production did not cure Walmart's failure to produce under 3-4(a). Walmart has still produced no source code.  The September documents do not show how important aspects of how Walmart's systems work, such as how Walmart identifies payment accounts and initiates the transaction.  This is important because Walmart, among the 39 terms it has proposed for construction, is seeking a construction of "account" and "initiating a transaction" terms.  The documents primarily show the existence of extensive documentation MEC does not have.[2]

MEC has sent letters and emails and repeatedly met and conferred with Walmart, requesting these 3-4(a) materials.  Walmart's response has been indifference.  It takes the position its 25 figures satisfied 3-4(a) and that it may produce something, including source code, at some time, but that it will not commit to either what or when.  This is not what the Court's rules require

---

[1] *See, e.g.*, Exhibit 2, showing examples of images from the 3-4(a) production within their original document.
[2] The pages also show that Walmart, again, only selectively produced material.  Walmart did not produce other relevant pages in the two "sites," collections of pages in ▮▮▮▮▮, it did produce.  For example, Walmart appears to have produced the ▮▮▮▮▮▮▮▮▮ page but not the ▮▮▮▮▮▮ page or the ▮▮▮▮▮▮▮▮ page from the ▮▮▮▮ site. It also appears to have not produced its ▮▮▮▮▮▮▮ site.

2

or expect. Walmart's actions have erased one month off the three-month period for the parties to substantially complete document production. And MEC still does not have the material that Walmart was obligated to produce in August, causing cascading prejudice into MEC's ability to prosecute this case and engage in the *Markman* process—the 4-2 deadline is Friday, October 1st.

## II.   ARGUMENT

### A.   Walmart's August Production Did Not Meet 3-4(a)'s Requirements

Walmart's 25 pages of high-level figures (and no source code) did not meet the requirement to show the actual operation of "of any aspects or elements" required by 3-4(a) for the accused Walmart Pay system. As this Court explained in the *Avigilion* case (below) on similar facts, 3-4(a) requires the production of "any and all documents describing the operation of any aspects or elements of an accused instrumentality," including source code.

In *Edward D. Iola Trust, v. Avigilion Corp.*, the Court addressed a matter where the defendant had produced 21 documents in the 3-4(a) production (and no source code). Case No. 2:10-cv-605, ECF No. 279, at 4 (E.D. Tex., Nov. 16, 2012) (Gilstrap, C.J.). The Court compelled production and sanctioned the defendant, explaining that "[t]his District's P. R. 3-4(a) requires the alleged infringer to produce any and all documents describing the operation of any aspects or elements of an accused instrumentality." *Id.* at 4. The Court continued, "P.R. 3-4(a) clearly covers source code, regardless of what additional materials may exist to disclose the functionality of the technology at issue." *Id.* The *Avigilion* defendant even made an argument Walmart uses to justify its nonproduction under 3-4(a)—that "the plain text of P.R. 3-4(a) mentions 'source code' but does not require its production because the disjunctive or authorizes seven distinct categories of documents by which [Defendant] can meet P. R. 3-4(a)." *Id.* at 3. The Court roundly rejected this "grammatical" view and admonished the defendant that its view "shirks responsibility" and "offends the discovery principles driving this District":

3

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

> [Defendant]'s bare minimum production shirks this responsibility and its attempt to use a grammatically technical reading of P. R. 3-4(a) as a shield to avoid production of its source code offends the discovery principles driving this District's patent rules. P.R. 3-4(a) requires [Defendant] to produce more than the bare minimum of what it believes is sufficient, including but not limited to any and all source code, specifications, schematics, flow charts, artwork, formulas, or other documentation in its possession.

*Id.* at 5 (emphasis added). The defendant was sanctioned for costs and fees up to $10,000. *Id.* at 8. And the Court has explained that difficulty in collecting material is not an excuse: "[i]rrespective of any confidentiality obligations or difficulty locating documents, a party must fully comply with Rule 3-4 on or before the deadline unless that party (or an intervening third party) moves the Court for relief." *Ericsson Inc., et al., v. TCL Comm'n Tech. Holdings, Ltd., et al.*, Case No. 2-15-cv-11-RSP, ECF. No. 98, at 2 (E.D. Tex., Sept. 4, 2015) (Payne, M.J.).

**B.     Walmart Has Not Produced Material That Would Satisfy its Obligations**

**1.     Walmart has not produced any source code**

It is undisputed that Walmart has source code for the accused Walmart Pay system, and that Walmart has failed to produce any of that code. Walmart's few 3-4(a) diagrams and its September production (the original context of those diagrams), confirm that the accused Walmart Pay system is ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. For example, Walmart's chart below (WMT-MEC00126_000002, Ex. 3), which appears to be the most comprehensive illustration, shows ▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇:

4



Other documents similarly identify multiple Walmart Pay components ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. But Walmart did not produce detailed documentation or source code showing how those components work. MEC thus asks the Court to compel the production of Walmart's source code, including historic versions, for any and all components of Walmart Pay, which includes its dependencies.

        2.      **Walmart has substantial unproduced technical documentation**

Walmart has extensive unproduced documentation covering Walmart Pay and its components. The six files produced in September appear to all be exported from ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬. At a high level,

5

██████████████████████████████████████████████

these six files appear to be two different collections of web pages called "sites": ██ and ██████████. ██████ sites have the following **site** and *page* structure, for example:

- ██████████████████████████████████ (unproduced)

Reviewing these pages shows 1) unproduced pages in the two sites provided—██ and ██████████—and 2) many other sources of documentation sites within Walmart. For example, the "██████████████████" and "██████████████████" pages have long sections listing information associated with ██████████████ for Walmart Pay. The chart below contains a few examples, but there is significant withheld material:



MEC asks the Court to compel the production of Walmart's technical documents for any and all components of Walmart Pay, which includes its dependencies, whether it is kept in ██████████ "██████████" or another source. MEC asks the Court to compel the production of the complete "sites" for any repository, so, for example, Walmart should produce all of the pages ██████ site (discussed above).

### C. Walmart Has Not Otherwise Provided Technical Discovery

MEC has sought technical discovery in parallel forms to avoid this Motion, but Walmart has not answered them. First, MEC served a discovery letter (in July and again in August), but MEC has never received the written response required by the Discovery Order. (*See* Dkt. No. 23, ¶ 9.) Second, MEC served interrogatories in August, but Walmart provided no substantive response, including on technical matters. Third, MEC served deposition notices in late August, and MEC's first scheduled engineer deposition was canceled the week it was set to occur because Walmart claims that the engineer—whose name appears on Walmart's diagrams—lacks relevant knowledge. And Walmart has not provided dates for any of the witnesses noticed last month.

Walmart's failure to provide discovery has prejudiced MEC. It has deprived MEC of the technical understanding of the accused product that the rules intend, causing a massive disruption to MEC's limited time in discovery. MEC respectfully submits that Walmart's conduct is not substantially justified and requests that the Court consider potential relief under FED. R. CIV. P. Rule 37 or 28 U.S.C. § 1927, including precluding Walmart from arguing noninfringement based on material produced after August 26, 2021 (similar to how a plaintiff cannot raise infringement theories at trial not disclosed in its infringement contentions). Walmart would be bound by its representation these documents are sufficient to show the operation of its accused system.

### III. Conclusion

For the reasons discussed above, MEC asks the Court to compel Walmart to produce, at all possible speed, but within no more than 7 days, both its complete technical documentation and source code, including historic versions, for Walmart Pay, which includes Walmart Pay's dependencies. To the extent the Court considers Walmart's conduct to be in bad faith or prejudicial, MEC asks the Court for whatever relief the Court deems appropriate.

Dated: September 30, 2021

/s/ Rudolph Fink IV

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Plaintiff Mobile Equity Corp.***

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a). As such, this document is being served this September 30, 2021 on all counsel of record, each of whom is deemed to have consented to electronic service. L.R. CV-5(a)(3)(A).

/s/ Rudolph Fink IV
Rudolph Fink IV



**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel have complied with the meet-and-confer requirements of Local Rule CV-7(h) and (i) and that discussion between Plaintiff Mobile Equity Corp. and Defendant Walmart, Inc. have reached an impasse and that this motion is opposed, as summarized below:

- On August 27, 2021, MEC requested a lead-and-local meet-and-confer under Rule 7(h) to discuss Walmart's production under 3-4(a). Walmart declined, stating the Discovery Order foreclosed a meet-and-confer until a 14-day period elapsed for Walmart to formally respond to MEC's request. Walmart stated that it would provide a response by September 10, 2021.

- Between August 30, 2021 and September 1, 2021, MEC requested a meet-and-confer on three occasions. On September 3, 2021, the parties held a telephonic meet-and-confer. Christian Hurt and Rudy Fink participated on behalf of MEC and Christian Chessman participated on behalf of Walmart. Walmart did not commit to a timeframe for producing any additional documents or source code, but stated that Walmart would look into it.

- Between September 7, 2021 and September 10, 2021, MEC requested a meet-and-confer on six occasions, but Walmart did not provide a time to meet-and-confer. Walmart also did not provide an update on its production or provide the response Walmart indicated it would provide by September 10, 2021.

- On September 12, 2021, MEC again requested a lead-and-local meet-and-confer under Rule 7(h). The parties held that conference on September 13, 2021. Kathryn Riley Grasso and Eric Findlay participated on behalf of Walmart and Bo Davis, Christian Hurt, and Rudy Fink participated on behalf of MEC. Walmart stated it intended to make a document production by the end of the following week and would look into source code production. Walmart declined to commit to a date certain to produce technical documents or source code.

- On September 22, 2021, MEC again requested a lead-and-local meet-and-confer and an update from Walmart, including questions on Walmart's September 21, 2021 production.

- On September 27, 2021, the parties held a 90 minute lead-and-local meet-and-confer. Kathryn Riley Grasso, Christian Chessman, and Eric Findlay participated on behalf of Walmart and Bo Davis, Christian Hurt, and Rudy Fink participated on behalf of MEC. MEC requested that Walmart commit to a date certain to produce the technical documentation and source code required by Local Patent Rule 3-4(a) and explained why it believed Walmart's document production was insufficient. Walmart would not commit to producing any additional

documents or commit to any date for such production, source code or otherwise. Walmart indicated that it would eventually produce source code, but would not commit to any date when MEC asked about committing to producing the code in October or November. After the call, MEC gave Walmart until September 29, 2021 to reconsider its position and to agree to produce the source code and technical documents requested in this Motion.

- On September 29, 2021, Walmart did not respond to MEC's request to commit to a date certain to produce technical documents and source code. This left the parties at an impasse, leaving an open issue for the court to resolve.

/s/ William E. Davis, III  
William E. Davis, III