**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

Mobile Equity Corp.,

       *Plaintiff*,

v.

Walmart Inc.,

       *Defendant*.

Civil Action No.: 2:21-CV-00126-JRG-RSP

JURY TRIAL DEMANDED

**MOBILE EQUITY CORP.'S**
**<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ii

I.     INTRODUCTION ..................................................................................................... 1

II.    BACKGROUND AND TECHNOLOGY OVERVIEW .......................................... 1

III.   AGREED CONSTRUCTIONS ................................................................................ 4

IV.   ARGUMENT ............................................................................................................ 4

       A.    U.S. Patent No. 8,589,236 ............................................................................ 4

            1.   "A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:" ........ 4

            2.   "merchant identifier" ...................................................................... 7

            3.   "an appropriate financial institutions associated with the purchase account and the deposit account" ................................................................. 10

            4.   "mobile enablement center" ........................................................... 12

            5.   "appropriate payment processing server associated with a financial institution" ...................................................................................... 14

            6.   "service data point" ........................................................................ 16

       B.    '058 Patent .................................................................................................. 20

            1.   "A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:" ............................................................... 20

            2.   "payment processing server" .......................................................... 21

            3.   "a plurality of sub-accounts associated with a parent account" ...................... 22

IV.   CONCLUSION ....................................................................................................... 24

## **TABLE OF AUTHORITIES**

### **Cases**

*Alexsam, Inc. v. Simon Prop. Grp., L.P.,*
    No. 2:19-CV-331-JRG, 2021 U.S. Dist. LEXIS 145450
    (E.D. Tex. Aug. 4, 2021) ..................................................................................... 13, 18

*Allen Eng'g Corp. v. Bartell Indus., Inc.,*
    299 F.3d 1336 (Fed. Cir. 2002) .................................................................................. 4

*Aventis Pharma S.A. v. Hospira*, Inc.,
    675 F.3d 1324 (Fed. Cir. 2012) .................................................................................. 8

*BASF Corp. v. Johnson Matthey Inc.,*
    875 F.3d 1360 (Fed. Cir. 2017) ................................................................................ 11

*Biosonix, LLC v. Hydrowave, LLC,*
    230 F. Supp. 3d 598 (E.D. Tex. 2017) (Clark, J.) ........................................... 23

*Bristol-Myers Squibb Co. v. Ben Venue Labs., Inc.,*
    246 F.3d 1368 (Fed. Cir. 2001) ............................................................................. 5, 6

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.,*
    289 F.3d 801 (Fed. Cir. 2002) .................................................................................... 4

*CIVIX-DDI, L.L.C. v. Cellco P'ship,*
    387 F. Supp. 2d 869 (N.D. Ill. 2005)......................................................................... 5

*Cont'l Circuits LLC v. Intel Corp.,*
    915 F.3d 788 (Fed. Cir. 2019) .................................................................................. 10

*Cytyc Corp. v. TriPath Imaging, Inc.,*
    505 F. Supp. 2d 199 (D. Mass. 2007)......................................................................... 4

*Georgetown Rail Equip. Co. v. Holland L.P.,*
    867 F.3d 1229 (Fed. Cir. 2017) .................................................................................. 4

*Gree, Inc. v. Supercell Oy,*
    No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 82086
    (E.D. Tex. May 8, 2020) (Gilstrap, C.J.).................................................................. 12

*Hillman Grp., Inc. v. Keyme, LLC,*
    No. 2:19-CV-209-JRG, 2020 U.S. Dist. LEXIS 115981
    (E.D. Tex. July 2, 2020) (Gilstrap, C.J.).................................................................. 13

*Huawei Techs. Co. v. Verizon Communs.,*
  No. 2:20-cv-00030-JRG, 2021 U.S. Dist. LEXIS 7944
  (E.D. Tex. Jan. 15, 2021) (Gilstrap, C.J.) .......................................................................... 13

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.,*
  No. 6:15-cv-59, 2016 U.S. Dist. LEXIS 3299, (E.D. Tex. Jan. 11, 2016) ........................ 19

*Kaifi LLC v. AT&T Corp.,*
  No. 2:19-CV-00138-JRG, 2020 U.S. Dist. LEXIS 67492
  (E.D. Tex. Apr. 17, 2020) (Gilstrap, C.J.) ................................................................... 17, 18

*MacroPoint, LLC v. Ruiz Food Prods.,*
  No. 6:16-CV-1133-RWS-KNM, 2018 U.S. Dist. LEXIS 23745
  (E.D. Tex. Feb. 14, 2018) .................................................................................................... 14

*Mad Dogg Ath., Inc. v. Peloton Interactive, Inc.,*
  No. 2:20-cv-00382-JRG, 2021 U.S. Dist. LEXIS 140304
  (Gilstrap, C.J.) (E.D. Tex. July 28, 2021) .......................................................................... 11

*Nautilus, Inc. v. Biosig Inst., Inc.,*
  572 U.S. 898 (2014) ............................................................................................................ 11

*Optis Wireless Tech. LLC v. ZTE Corp.,*
  No. 2:15-cv-300-JRG-RSP, 2016 U.S. Dist. LEXIS 52657
  (E.D. Tex. Apr. 19, 2016) (Payne, M.J.) ............................................................................ 12

*Optis Wireless Tech., LLC v. Apple Inc.*
  2:19-cv-00066-JRG, 2020 U.S. Dist. LEXIS 60636
  (E.D. Tex. Apr. 7, 2020) (Gilstrap, C.J.) ........................................................................... 13

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005) ...............................................................................8, 17, 21

*Phx. Licensing, L.L.C. v. AAA Life Ins. Co.,*
  No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 8017
  (Payne, M.J.) (E.D. Tex. June 21, 2015) ............................................................................ 12

*Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*
  948 F.3d 1342 (Fed. Cir. 2020) .......................................................................................... 13

*Seagen Inc. v. Daiichi Sankyo Co.,*
  No. 2:20-CV-00337-JRG, 2021 U.S. Dist. LEXIS 174566
  (E.D. Tex. Sep. 14, 2021) (Gilstrap, C.J.) ...............................................................9, 16, 22

*Shoes by Firebug LLC v. Stride Rite Children's Grp.*, LLC,
    962 F.3d 1362 (Fed. Cir. 2020) ........................................................5

*Thorner v. Sony Comput. Entm't Am. LLC,*
    669 F.3d 1362 (Fed. Cir. 2012) ........................................................8

*TracBeam, L.L.C. v. AT&T, Inc.,*
    No. 6:11-CV-96, 2013 U.S. Dist. LEXIS 10103
    (E.D. Tex. Jan. 23, 2013) (Davis, J.) ..............................................24

*Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:18-cv-00508-JRG
    2020 U.S. Dist. LEXIS 9401, (E.D. Tex. Jan. 20, 2020) (Payne, M.J.) .....................6, 20

*Vocalife LLC v. Amazon.Com, Inc.,*
    No. 2:19-CV-00123-JRG, 2020 U.S. Dist. LEXIS 60526
    (E.D. Tex. Apr. 6, 2020)....................................................................13

*Wasica Fin. GmbH v. Cont'l Auto. Sys.,*
    853 F.3d 1272 (Fed. Cir. 2017) ........................................................8

*Williamson v. Citrix Online LLC,*
    792 F.3d 1339 (Fed. Cir. 2015) ......................................................13

Pursuant to Local Patent Rule 4-5(a), Plaintiff Mobile Equity Corp. ("MEC") respectfully submits this Opening Claim Construction Brief.  MEC respectfully requests that the Court resolve certain claim construction disputes between MEC and Defendant Walmart Inc. ("Walmart").

## I.    INTRODUCTION

The MEC Patents[1] disclose and claim a foundational technology in mobile payments. MEC's proposed constructions are in keeping with MEC's invention.  They are grounded in the plain-and-ordinary meaning of these terms as those in the computer and networking fields would have understood them.  They comport with the intrinsic record.  And they focus and clarify the claim language to allow a jury to focus on the merits of whether Walmart's (or the prior art) actually practice the invention as disclosed and claimed.

Walmart takes the opposite approach.  It contends that the preambles—which only state an intended use of the claims ("conducting a transaction")—limit the claims.  It contends that a number of terms are indefinite, without any evidence that those skilled in the art could not understand the terms.  It improperly limits MEC's claims to specific disclosed embodiments, even though the Patents lack the clear definitional statements that Federal-Circuit law requires to limit the claims in that manner.  And its proposed constructions are unlikely to assist the jury.  Walmart construes one term, for example, with reference to a 200-page technical-standards document without any guidance on how the jury should apply that document to determine a fact issue.

For these reasons, and those below, MEC requests that the Court enter its proposed constructions in this case.

## II.    BACKGROUND AND TECHNOLOGY OVERVIEW

This case involves two related patents that are referred to collectively as the MEC Patents.

---

[1] The following are the MEC patents at issue in this case: U.S. Patent Nos. 8,589,236 ("the '236 Patent") and 10,535,058 ("the '058 Patent").

The MEC Patents disclose a new type of mobile payment technology that is more secure than traditional payment systems.  Traditional systems had security vulnerabilities because they exposed the customer's payment information at the terminal (*e.g.*, swiping a credit card exposes the credit card number).  *See, e.g.*, '236 Patent, at 1:48–56.  And while technologies existed to make the system more secure by using encryption, such as chip readers and near-filed communications ("NFC") systems, those technologies required expensive new hardware, could prove unreliable, and still exposed the payment information at the terminal (though in encrypted form).  *See id.* at 1:66–2:6.

The MEC Patents addressed those drawbacks (among others) by rearchitecting the software flow of the traditional payment system with a specific mobile-payment solution.  In the MEC Patents, the customer's information is not exposed at the terminal, so attack by a criminal's card skimmer becomes impossible.  Instead, a mobile device obtains an identifier from the terminal, such as by scanning a QR code.  The mobile device then sends that identifier to the payment processing system.  With the identifier, the system can directly communicate with the terminal to obtain the amount of the transaction.  And using information from the mobile device, the system can identify the customer's account information and then initiate the transaction.  The customer's information is never exposed at the terminal.

Claim 1 of the '236 Patent shows these concepts, with the claim language for construction underlined:

<u>A method for conducting a transaction between a merchant and a customer, the customer using a mobile device</u>, the method comprising:

receiving a <u>merchant identifier</u> from the mobile device operated by the customer, the <u>merchant identifier</u> indicating a request to initiate a transaction with a merchant terminal identified by the <u>merchant identifier</u>, wherein the <u>merchant identifier</u> does not indicate a transaction amount for the transaction;

sending, in response to receiving the <u>merchant identifier</u>, a transaction information request to the merchant terminal associated with the <u>merchant identifier</u>;

receiving transaction information from the merchant terminal in response to the transaction information request, the transaction information including the transaction amount for the transaction;

identifying a purchase account associated with the customer and a deposit account associated with the merchant; and

initiating the transaction between the merchant and the customer for the transaction amount received from the merchant terminal and the identified purchase account associated with the customer and the identified deposit account associated with the merchant.

The parties also dispute terms that appear only in dependent claims of the '236 Patent.

These are shown below.

<u>Claim 10</u>.  The method of claim 1, wherein initiating a transaction between the merchant and the customer comprises sending instructions to <u>an appropriate financial institutions associated with the purchase account and the deposit account</u>.

<u>Claim 11</u>.  The method of claim 1, wherein a <u>mobile enablement center</u> is used to identify <u>an appropriate payment processing server associated with a financial institution</u>.

<u>Claim 12</u>.  The method of claim 1, wherein a <u>service data point</u> is used to initiate a transaction between the merchant and the customer.

The parties also dispute the construction of terms from the '058 Patent.  Claim 1 shows the terms for construction highlighted:

<u>A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising</u>:

receiving, at the <u>payment processing server</u>, a terminal identifier from the mobile device operated by the customer, the terminal identifier indicating a request to initiate a transaction with a terminal identified by the terminal identifier, wherein the terminal identifier does not indicate a transaction amount for the transaction;

sending, at the <u>payment processing server</u>, in response to receiving the terminal identifier, a transaction information request to the terminal associated with the terminal identifier;

receiving, at the <u>payment processing server</u>, transaction information from the terminal in response to the transaction information request, the transaction information including the transaction amount for the transaction;

identifying, at the <u>payment processing server</u>, a customer account associated with the customer and a terminal account associated with the terminal; and

initiating, at the <u>payment processing server</u>, the transaction between the customer account and the terminal account for the transaction amount received from the terminal.

The parties also dispute a term that only appears in dependent claim 6 of the '058 Patent.

<u>Claim 6</u>. The method of claim 1, wherein the identified customer account is one of a plurality of <u>sub-accounts associated with a parent account</u>.

## III.   AGREED CONSTRUCTIONS

The parties do not presently have any agreed claim constructions.

## IV.   ARGUMENT

### A.   U.S. Patent No. 8,589,236

#### 1.   **"A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:"**

| **Plaintiff's Proposed Construction** | **Walmart's Proposed Construction** |
|---|---|
| Plain and ordinary meaning. No construction necessary. Not limiting. | Limiting |

The parties dispute if the preamble limits the claims.  Walmart has not shown that the preamble is limiting.  "Generally, the preamble does not limit the claims." *Georgetown Rail Equip. Co. v. Holland L.P.*, 867 F.3d 1229, 1236 (Fed. Cir. 2017) (quoting *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1346 (Fed. Cir. 2002)).  "Ordinarily, where the preamble describes the purpose of the method . . . , it is not considered limiting."  *Cytyc Corp. v. TriPath Imaging, Inc.*, 505 F. Supp. 2d 199, 221 (D. Mass. 2007) (citing *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002)).

The preamble here states the purpose of the method—"conducting a transaction between a merchant and a customer."  It is not a step required to meet the claims.  The steps in the body of the claim describe a structurally complete invention, from what is received from the mobile device ("receiving a merchant identifier") to what starts the transaction ("initiating the transaction").

The claimed steps further support that "conducting a transaction" is not a limitation.  The last step is "initiating the transaction."  The body of the claim does not require "conducting the transaction"—just starting that process.  The dependent claims similarly address different ways to initiate the transaction.  *See, e.g.*, '236 Patent, claim 10 ("initiating a transaction . . . comprises *sending instructions to an appropriate financial institutions*"); *id.* at claim 12 ("*service data point is used to initiate a transaction*").  "[C]onducting a transaction" is not a limitation.

To argue otherwise, Walmart points to where MEC amended the claims to replace the word "computing" with the word "mobile," including in the preamble, so the claims would read "mobile device" and not "computing device."  Dkt. 37-2, at 9; Exh. A, at MEC-WM-00000075.  This evidence does not show that the preamble of claim 1 limits the claims.

MEC's amendment does not indicate the "conducting a transaction" language from the preamble limits the claims.  The term "mobile device" is a claim element in the body of the claims.  *E.g.*, claim 1 ("receiving a merchant identifier from the mobile device operated by the customer").  While the "*a* mobile device" in the preamble provides the antecedent basis for "*the* mobile device" recited in the body of claims, "antecedent basis alone is not determinative of whether a preamble is limiting."  *Shoes by Firebug LLC v. Stride Rite Children's Grp.*, LLC, 962 F.3d 1362, 1368 (Fed. Cir. 2020).  And "[t]he Federal Circuit has found a statement of intended use in a preamble to be non-limiting, even where the body of the claim relied on the preamble for antecedent basis."  *CIVIX-DDI, L.L.C. v. Cellco P'ship*, 387 F. Supp. 2d 869, 890 (N.D. Ill. 2005) (citing *Bristol-*

*Myers Squibb Co. v. Ben Venue Labs., Inc.*, 246 F.3d 1368 (Fed. Cir. 2001) (holding that the preamble "[a] method for treating a patient suffering from a taxol-sensitive tumor" did not limit the claim even though the body of the claim relied on the term "a patient" for antecedent basis). That is the case here: "conducting a transaction" is simply an intended use of the claimed method.

There is likewise no reason to import a "conducting a transaction" limitation into the claims based on an amendment to different claim language—a "mobile device."  The "conducting a transaction" language was not subject to the amendment.  Exh. A, at MEC-WM-00000075.  And, again, that a term in the preamble provides antecedent basis (*e.g.*, the "mobile device" term) "does not necessarily make the entire preamble limiting."  *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:18-cv-00508-JRG, 2020 U.S. Dist. LEXIS 9401, at *38 (E.D. Tex. Jan. 20, 2020) (Payne, M.J.) ("[E]ven if some terms in the preamble provide the antecedent basis for terms in the body does not necessarily make the entire preamble limiting.").

The Court faced a similar situation in *Uniloc 2017*.  The Court there concluded that the preamble for a "method of protecting a mobile radiotelephony device" was not limiting.  2020 U.S. Dist. LEXIS 9401, at *38.  The Court reached this conclusion even though the preamble provided the antecedent basis for the "mobile radiotelephony device" term recited in the body of the claims.  *Id.*  While the "mobile radiotelephony device" was a claim limitation (it was in the body of the claims), the Court declined to limit the method to "protecting" the device:

> [A] portion of a preamble providing only a statement of intended use of the invention is nonlimiting even if other portions of the preamble are limiting.  Here, a "method of protecting" is a statement of intended use of the method. The steps recited in the body of claim set forth a structurally complete invention with reference to what is done with the mobile device. As such, "protecting" is not limiting and need not be construed.

*Id.* (citation omitted).  The same reasoning applies here.  While the preamble provides antecedent basis for "mobile device" (and "transaction," "customer," and "merchant"), that does not convert the intended use of the method—"conducting a transaction"—into a claim limitation.

Walmart has not shown that the preamble is limiting.  MEC respectfully requests that Court decline to construe the term.

### 2.    "merchant identifier"

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
| --- | --- |
| Plain and ordinary meaning. No construction necessary.<br><br>Alternatively, an identifier provided by a merchant that includes information sufficient to identify a terminal | "a unique identifier associated with a merchant" |

The parties' dispute for this term is narrow.  Walmart limits the term "merchant identifier" to one specific type of identifier—"a ***unique*** identifier associated with a merchant."  Walmart's construction conflicts with the claim language and limits the claims to a disclosed embodiment. That conflicts with established Federal Circuit law, and MEC requests that the Court reject Walmart's proposed construction.

The claim language details what a "merchant identifier" is and how it is used.  Claim 1 details the three aspects of the merchant identifier: (1) it identifies and is associated with a merchant terminal; (2) it indicates a request to initiate a transaction with that merchant terminal; and (3) it does not indicate a transaction amount for the transaction.  '236 Patent, claim 1 ("the merchant identifier indicating a request to initiate a transaction with a merchant terminal identified by the merchant identifier, wherein the merchant identifier does not indicate a transaction amount for the transaction . . . sending . . . [a] request to the merchant terminal associated with the merchant

identifier").   MEC's proposed alternative construction tracks this claim language (which underscores why the term need not be construed).

Claim 1 does not require that the identifier be "unique."  And the lack of a "unique" limitation shows Walmart's construction is incorrect.  *See, e.g.*, *Phillips*, 415 F.3d at 1314 ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms.").

The claims also show that MEC knew how to add a "unique" limitation to claim 1, but declined to do so.  Dependent claim 2 recites that the merchant identifier "comprises a unique identifier associated with the merchant terminal."  '236 Patent, claim 2.  This difference between the claims—a dependent claim contains a "unique identifier" limitation while the independent claim does not—further weighs against Walmart's proposed construction.  *See, e.g.*, *Phillips*, 415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").

Facing the broader ordinary meaning of a "merchant identifier" (reflected in the claims), Walmart has to show clear disclaimer or lexicography to narrow the term.  *Wasica Fin. GmbH v. Cont'l Auto. Sys.*, 853 F.3d 1272, 1282 (Fed. Cir. 2017) ("[A]bsent a clear disavowal or alternative lexicography by a patentee, he or she 'is free to choose a broad term and expect to obtain the full scope of its plain and ordinary meaning.'") (quoting *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1367 (Fed. Cir. 2012)).  Walmart has not cleared this "stringent standard."  *Aventis Pharma S.A. v. Hospira*, Inc., 675 F.3d 1324, 1330 (Fed. Cir. 2012).

The specification does not require Walmart's construction.  Walmart points to a description in connection with the embodiments in Figures 1 and 2, which states that "[t]he merchant ID number is a unique identifier associated with a merchant":

> FIG. 1 is a high-level block diagram that illustrates a computing environment for using a mobile device to initiate a transaction according to one embodiment. . . .

> FIG. 2 is a flowchart illustrating a method of using a mobile device to initiate a transaction according to one embodiment. For the purposes of discussion below, FIGS. 1 and 2 are discussed concurrently.
>
> <u>In one embodiment</u>, the mobile device 102 initiates a point of sale transaction. . . . The mobile device sends a merchant ID associated with a merchant to the payment processing server 106. <u>The merchant ID number is a unique identifier associated with a merchant</u>. The merchant ID can include any information to identify or communicate with the associated number. For example, a merchant ID can include a point-of-sale terminal ID to be used by the merchant to execute the transaction. In other embodiments, the merchant ID can include an e-mail address or a phone number associated with the merchant.

'236 Patent, at 5:44–6:3 (emphases added).  This evidence is insufficient to narrow the "merchant identifier" term for three reasons.

<u>First</u>, the description is in connection with the embodiments in the specification and does not define the scope of the invention.  It is black-letter claim-construction law that descriptions in embodiments do not limit the claims absent clear definitional language.  *Seagen Inc. v. Daiichi Sankyo Co.*, No. 2:20-CV-00337-JRG, 2021 U.S. Dist. LEXIS 174566, at *17 (E.D. Tex. Sep. 14, 2021) (Gilstrap, C.J.) ("Even where a patent describes only a single embodiment, absent a 'clear intention to limit the claim scope,' it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification.") (citation omitted) (collecting authority).  The description of the "merchant ID number" relates to the embodiments in Figures 1 and 2; it is not the clear and unmistakable statement intended to limit claim scope.

<u>Second</u>, the description refers to one type of merchant identifier—a "merchant ID *number*"—not the broader term.  The "merchant identifier" term is not limited to just only those identifiers displayed as a number.  The claims reinforce that scope.  Claim 1 recites a "merchant identifier," while dependent claim 4 narrows the identifier to "a number interpreted by an application executing on the mobile device based on a depiction of merchant identification."  Any

9

alleged definition of a "merchant identifier number" is thus limited to that narrower term.  It does not extend to the broader "merchant identifier" term.

Third, other parts of the specification indicate that the "merchant identifier" term is not limited to a "unique identifier."   The Summary of the Invention section describes a merchant identifier as "associated with the merchant," consistent with MEC's construction.  '236 Patent, at 3:9–12 ("A service data point (SDP) receives a merchant ID associated with the merchant.").  Like claim 1, it does not require that the identifier is *uniquely* associated with a merchant.  And the specification never refers to a "unique" identifier other than the one example on which Walmart relies.  This further shows that Walmart's construction is incorrect.  *See, e.g.*, *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) (declining to limit claims to a repeated desmear process—even though embodiments described the process as part of "the present invention"— where "[i]n certain portions of the specification, such as the summary, the invention is described with respect to its 'unique surface structure,' without any requirement that the invention must encompass the repeated desmear process") (citation omitted).

MEC thus respectfully requests that the Court reject Walmart's proposed construction and decline to construe this claim term.  Should the Court construe this term, MEC requests the Court enter MEC's alternate construction.

3.    **"an appropriate financial institutions associated with the purchase account and the deposit account"**

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
| --- | --- |
| Not indefinite. Plain and ordinary meaning. No construction necessary. | Indefinite |

Walmart contends that this term (which only appears in dependent claim 10) is indefinite. To prevail on that defense, Walmart has to show, by clear-and-convincing evidence, that this term

fails to inform "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *BASF Corp. v. Johnson Matthey Inc.*, 875 F.3d 1360, 1365 (Fed. Cir. 2017) (quoting *Nautilus, Inc. v. Biosig Inst., Inc.*, 572 U.S. 898, 901 (2014)). Walmart fails to make that showing.

Claim 10 details with reasonable certainty which financial institutions are the appropriate ones: the institutions that receive the instructions to initiate the transaction. '236 Patent, claim 10 ("initiating a transaction between the merchant and the customer comprises sending instructions to an appropriate financial institutions associated with the purchase account and the deposit account"). The specification similarly teaches that the "appropriate financial institutions" are ones that receive the instruction to execute the transaction:

> Using a credit card, debit card, payroll card, senior benefit card, ATM card or any stored value card (hereafter credit card) and a point of sale terminal to purchase one or more items from a merchant has become commonplace. . . . Once the customer's credit card information is entered in a point of sale terminal, the information is sent to servers associated with a clearing house. . . . The clearing house can execute a transaction with an appropriate financial institution and provide a confirmation of the executed transaction to the merchant's point of sale terminal. . . .

'236 Patent, 1:18–34; *see also id.* at 2:42–45 ("The payment processing server can authenticate the customer and initiate a purchase transaction with the appropriate financial institutions associated with the customer and the merchant."); *id.* at 2:65–3:1 (same); *see also* Exh. B, at MEC-WM-00000945 (describing "linking the mobile handset to the same bank account to enable m-commerce, mobile banking and mobile payments"); *id.* at WM-00000946 (describing that the system "processes the payment with the bank").

This description is sufficient under the law. *See, e.g.*, *Mad Dogg Ath., Inc. v. Peloton Interactive, Inc.*, No. 2:20-cv-00382-JRG, 2021 U.S. Dist. LEXIS 140304, at *58–59 (Gilstrap, C.J.) (E.D. Tex. July 28, 2021) (rejecting challenge to "appropriate cadence at which the rider should be pedaling" term where the patent linked the "appropriate cadence" to the "target cadence of the exercise routine"); *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist.

11

LEXIS 82086, at *38–40 (E.D. Tex. May 8, 2020) (Gilstrap, C.J.) (rejecting challenge to "appropriate timing" term where the patent indicated it was a predetermined time); *Phx. Licensing, L.L.C. v. AAA Life Ins. Co.*, No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 80177, at *20–25 (Payne, M.J.) (E.D. Tex. June 21, 2015) (rejecting challenge to selecting an "appropriate" product where "[t]he claim language makes clear that a product is 'appropriate' when it is selected 'using the client information, the financial products information, and the decision criteria'") (citation omitted); *Optis Wireless Tech. LLC v. ZTE Corp.*, No. 2:15-cv-300-JRG-RSP, 2016 U.S. Dist. LEXIS 52657, at *33–39 (E.D. Tex. Apr. 19, 2016) (Payne, M.J.) (rejecting challenge to "appropriate" application program terms where the patent taught that "the 'appropriate application programs' are the applications to which the message is directed by the line device").

MEC thus respectfully requests that the Court reject Walmart's indefiniteness challenge. Because Walmart has not offered an alternative construction, MEC requests that the Court decline to construe this term.

### 4.    "mobile enablement center"

| **Plaintiff's Proposed Construction** | **Walmart's Proposed Construction** |
|---|---|
| Not indefinite and not subject to § 112(6).<br><br>a platform to route outgoing messages from a mobile device to an appropriate payment processing server | Subject to 112 paragraph 6, and indefinite.<br><br>Function: "a platform that routes outgoing messages from the mobile devices to the appropriate payment processing server"<br><br>Structure: Indefinite for lack of corresponding structure |

Walmart asserts that this term (which only appears in dependent claim 11) is a means-plus-function term—even though the term does not use the word "means," is not a common "nonce" word, and the specification teaches that a "mobile enablement center" is a type of structure. MEC respectfully requests that the Court deny Walmart's request.

"[T]he failure to use the word 'means' . . . creates a rebuttable presumption . . . that § 112, para. 6 does not apply." *Alexsam, Inc. v. Simon Prop. Grp., L.P.*, No. 2:19-CV-331-JRG, 2021 U.S. Dist. LEXIS 145450, at \*49 (E.D. Tex. Aug. 4, 2021) (quoting *Williamson v. Citrix Online LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015) (citations and internal quotation marks omitted)).   A challenger can overcome the presumption by demonstrating "that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Id.* (quoting *Williamson*, 792 F.3d at 1348).

Walmart fails to rebut that presumption here.  The term "mobile enablement center" does not "use any of the words identified by *Williamson* as a 'nonce' word lacking structure, and the claim limitations at issue are not 'in a format consistent with traditional means-plus-function claim limitations.'" *Alexam*, 2021 U.S. Dist. LEXIS 145450, at \*50.  And a "mobile enablement center" is similar to a number of terms that courts have found were not subject to means-plus-function treatment.  *See, e.g.*, *id.* ("processing hub"); *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1353-54 (Fed. Cir. 2020) ("digital processing unit"); *Huawei Techs. Co. v. Verizon Communs.*, No. 2:20-cv-00030-JRG, 2021 U.S. Dist. LEXIS 7944, at \*40 (E.D. Tex. Jan. 15, 2021) (Gilstrap, C.J.) ("acquisition unit, conversion unit, and transmission unit"); *Hillman Grp., Inc. v. Keyme, LLC*, No. 2:19-CV-209-JRG, 2020 U.S. Dist. LEXIS 115981, at \*43–52 (E.D. Tex. July 2, 2020) (Gilstrap, C.J.) ("key analysis system"); *Optis Wireless Tech., LLC v. Apple Inc.*, No. 2:19-cv-00066-JRG, 2020 U.S. Dist. LEXIS 60636, at \*22–25 (E.D. Tex. Apr. 7, 2020) (Gilstrap, C.J.) ("control information extractor"); *Vocalife LLC v. Amazon.Com, Inc.*, No. 2:19-CV-00123-JRG, 2020 U.S. Dist. LEXIS 60526, at \*61–66 (E.D. Tex. Apr. 6, 2020) ("sound source localization unit");  *MacroPoint, LLC v. Ruiz Food Prods.*, No. 6:16-CV-1133-RWS-KNM, 2018 U.S. Dist. LEXIS 23745, at \*15–18 (E.D. Tex. Feb. 14, 2018) ("communications interface").

The patent specification also describes a "mobile enablement center" as a structure.  It describes the mobile enablement center as "a platform that routes outgoing messages from the mobile devices 102 to the appropriate payment processing server 110."  '236 Patent, at 7:17–19.  And even Walmart recognizes that a computer "platform" is a sufficiently definite structure.  It proposes below that a "payment processing server associated with a financial institution" is a "*platform* that executes a transaction between a customer, a financial institution associated with the customer and a merchant."

MEC thus respectfully requests that the Court reject Walmart's indefiniteness challenge.  Because Walmart has not offered an alternative construction, MEC requests that the Court construe this term as "a platform to route outgoing messages from a mobile device to an appropriate payment processing server."

### 5.     "appropriate payment processing server associated with a financial institution"

| Component Term | Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|---|
| appropriate | Not indefinite. Plain and ordinary meaning. No construction necessary. | Indefinite |
| payment processing server associated with a financial institution | Not indefinite. Plain and ordinary meaning. No construction necessary. | "a platform that executes a transaction between a customer, a financial institution associated with the customer and a merchant" |

Walmart raises two issues with this term: (1) whether the word "appropriate" renders claim 11 indefinite; and, if not, (2) if the "payment processing server" term in claim 11 should be limited to an example from the specification.  MEC requests that the Court reject both positions.

*Indefiniteness*.  Walmart raises the same definiteness challenge to the term "appropriate" in claim 11 that it raised for claim 10.  That challenge fails for the same reasons.  The claim

delineates with reasonable clarity that the "appropriate" payment processing server is the one that is associated with (and can communicate with) a financial institution to initiate the transaction. *See, e.g.*, '236 Patent, at 7:5–16 (teaching that, in one embodiment, all transactions "are associated a particular financial institution and routed through a particular payment processing server"—and that requests are "routed to an appropriate payment processing server"). That is sufficient.

***Payment Processing Server Associated With a Financial Institution***. Walmart's proposed construction for this term is also incorrect. A payment processing server generally refers to software running on one or more computing devices connected to a network that is involved with processing payment. The specification uses the term that way, detailing the operations of the payment processing server:

- A mobile device is used to initiate a point of sale transaction, wherein a merchant ID is sent to a payment processing server.

- Responsive to receiving a communication from the mobile device, the payment processing server requests transaction information from the merchant. . . .

- The merchant can provide transaction information such as the total sale amount to the payment processing server.

- The payment processing server can authenticate the customer and initiate a purchase transaction with the appropriate financial institutions associated with the customer and the merchant. . . . .

'236 Patent, Abstract; *see also id.* at 2:33–47 (describing similar functionality); *id.* at Fig. 3 (depicting payment processing server able to interface over a network with the mobile device and merchant terminal); *id.* at 10:49–11:50 (describing payment processor elements, including mobile payment device instructions); '058 Patent, claim 1 (reciting steps performed at the payment processing server). Claim 11 simply adds that the payment processor is "associated with a financial instruction."

Like its proposed construction of "merchant identifier," Walmart sources its proposed construction from an embodiment—without the type of clear language Federal Circuit law requires to limit the term.  *Seagen*, 2021 U.S. Dist. LEXIS 174566, at *17 (citation omitted).  Walmart points to the following discussion of an embodiment to limit the claims:

> In one embodiment, the payment processing server 110 interrogates a registry of payment processing servers 108 to identify an appropriate payment processing server 110. . . .
>
> A payment processing server 110 is a platform that executes a transaction between a customer, a financial institution 116 associated with the customer and a merchant 104. Examples of a payment processing servers 110 include databases maintained by Visa, MasterCard, American Express, etc. . . .

'236 Patent, at 7:43–63 (emphasis added).  The passage relates to an example embodiment and is not limiting.  The passage references "payment processing server 110" by its number (110) in Figure 1.  This highlights the fact that the text is describing the payment processing server in the embodiments and not defining the term.

MEC thus respectfully requests that the Court reject Walmart's indefiniteness challenge.  MEC also requests that the Court decline to construe the term "payment processing server associated with a financial institution."

### 6.  "service data point"

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|
| Not subject to § 112(6). <br><br> a computer that stores customer information | "service data point as described in ITUT Q.1290 (05/98) and related versions of this standard at the time of the claimed invention" <br><br> Alternatively, subject to 112 paragraph 6. <br><br> Function: a computing machine used to store service logic and subscriber account balances, subscriptions, services, and expiration of service dates. |

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|
| | Structure: all components described in 300 |

The Patent describes a service data point (which only appears in dependent claim 12) as a computer that stores customer information.  *See, e.g.*, '236 Patent, at 13:13–22 ("Service data point (also referred to as SDP) is a computing machine with, for example, all the components described above 300, that telecommunication operators normally use to store service logic and subscriber account balances, subscriptions, services, expiration of service dates, etc.").  MEC's construction follows that evidence and should be adopted.

Walmart attempts to further limit the term in two proposed constructions.  Walmart first limits the term to the way a "service data point" is *described* in *specific versions* of *one specific standard*, even though the Patent does not incorporate any standards or define the term that way.[2] Walmart then contends that the term is a means-plus-function limitation—even though the Patent and Walmart's own extrinsic evidence describes a "service data point" as a structure.  MEC respectfully requests that the Court reject both of Walmart's constructions.

Walmart's first construction is in error because it lacks a tie to the patent specification and is solely based on extrinsic evidence.  *Phillips*, 415 F.3d at 1318 ("[E]xtrinsic evidence . . . is unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence.").  The Patent does not link the "service data point" term to an ITU-T standard, particular versions of that standard (even narrower), or a system described in those particular versions of the standard (even narrower still).  *Kaifi LLC v. AT&T Corp.*, No. 2:19-CV-00138-JRG, 2020 U.S. Dist. LEXIS 67492, at *79 (E.D. Tex. Apr. 17, 2020) (Gilstrap, C.J.)

---

[2] That standard Walmart cites for a technical definition is over 200 pages long and almost impenetrably technical (and cross references even more standards).  *See* Dkt. No. 37-2, p. 13 (citing ITU-T Rec. Q.1219 (04/94) at 115); *see also* Exh. C (providing excerpts, including the table of contents, from ITU-T Rec Q.1219 (04/94)).

(declining to construe "mobile IP" to mean "as set forth in RFC 2002").  And construing the term "as described" in an external 200-plus-page technical standards document fails to give the jury any guidance of how to apply this term to resolve fact issues in this case.  *Id.*

The Court addressed a similar issue in the *Kaifi* case.  The defendants there sought to limit the term "mobile IP" to how a particular standard used that term—"as set forth in RFC 2002."  2020 U.S. Dist. LEXIS 67492, at \*73–80.  The Court rejected that construction because there was "no indication that the patentee adopted the RFC 2002 protocol for mobile IP" and the defendants' wholesale incorporation of a technical standard "fail[ed] to give the jury any reasonable guidance":

> "RFC 2002" is never mentioned in the specification of the '728 Patent.  Simply stated, there is no indication that the patentee adopted the RFC 2002 protocol for mobile IP.  The specification makes no reference to mobile IP standards, let alone RFC 2002, and does not require compliance with a standard.  Moreover, Defendants' construction is also deficient because it is unclear.  Based on the evidence before the Court, RFC 2002 is a 79-page technical document.  Simply asserting that the term "mobile IP" should be construed "as set forth in" this document fails to give the jury any reasonable guidance.  Accordingly, the Court rejects Defendants' construction.

*Kaifi*, 2020 U.S. Dist. LEXIS 67492, at \*79 (citations omitted).  The same outcome applies here.

The Court should also reject Walmart's second construction.  Walmart has not shown that the "service data point" term—which presumptively falls outside Section 112, ¶ 6—fails to recite sufficiently definite structure.  Like a "mobile enablement center," a "service data point" is not a "nonce" word or written in means-plus-function format.  *Alexam*, 2021 U.S. Dist. LEXIS 145450, at \*50 (finding term "processing hub" was not a means-plus-function term).

The evidence also shows that a "service data point" is a structure.  The specification describes the term as a type of computer.  '236 Patent, at 13:13–22.  And even Walmart's extrinsic evidence identifies an "service data point" as structure—a type of network computer:



Exh. D, at WMT-MEC00126_0007583 (image truncated and cleaned up); s*ee also* Exh. E, at WMT-MEC126_0007621 (glossary defining "service data point" as "[Intelligent Network] element that executes service logic"); Exh. F, at WMT-MEC00126_0007639 (glossary defining "service data point" as "[a] physical entity that implements a service data function").

This evidence underscores that the "service data point" is not a means-plus-function limitation.  *See, e.g.*, *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, No. 6:15-cv-59, 2016 U.S. Dist. LEXIS 3299, at *27 (E.D. Tex. Jan. 11, 2016) (Gilstrap, C.J.) (rejecting means-plus-function challenge to "access point" terms because "[t]he evidence shows that 'access point' refers to the structure of a network resource that serves to provide access to the system").

MEC thus respectfully requests that the Court reject Walmart's proposed construction.  MEC requests the Court define "service data point" as "a computer that stores customer information."

19

### B.    '058 Patent

1.    **"A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:"**

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary. Not limiting. | Limiting |

The parties' dispute for this term mirrors the dispute on the preamble term in the '236 Patent: is the "method for conducting a transaction" language in the preamble limiting?

The preamble of the '058 Patent—like the '236 Patent—states an intended purpose of the method: "conducting a transaction."  The body of claim 1 also defines a structurally complete invention.  '058 Patent, claim 1 (detailing from "receiving . . . a terminal identifier" to "initiating . . . the transaction").  Both points indicate that "conducting a transaction" is not a limitation.

Walmart points to filings during prosecution of the '058 Patent relating MEC's addition the "payment processing server" limitation to the '058 Patent claims, including in the preamble. *E.g.*, Exh. G, at MEC-WM-00000496.  But, like the "mobile device" amendments above, MEC added the "payment processing server" term to the body of claims as well.  *See id.*  And adding the "payment processing server" to the preamble does not recast the intended use of the invention—"conducting a transaction"—into a claim limitation.  *See, e.g.*, *Uniloc 2017*, 2020 U.S. Dist. LEXIS 9401, at *38 (holding "method of protecting a mobile radiotelephony device" was not limiting, even though the body of the claim recited "the mobile radiotelephony device").

Walmart has not shown that the preamble is limiting.  MEC respectfully requests that Court decline to construe the term.

## 2. "payment processing server"

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary.<br><br>Alternatively, software running on one or more computing devices connected to a network that is involved with processing payment. | |

MEC proposed the term "payment processing server" in its Patent Local Rules disclosures, starting August.  Walmart has never provided its position on this term, and did not address the issue during the parties' meet-and-confer on the Joint Claim Construction Statement in October.

MEC thus understands that there is no live dispute on this term and the Court need not construe it.  To the extent there is a dispute, MEC does not know what the dispute is at this time, and MEC incorporates, as a general matter, its arguments and evidence from the "payment processing server associated with a financial institution" term from claim 11 of the '236 Patent. MEC also notes that this "payment processing server" term in the '058 Patent is broader: unlike claim 11 of the '236 Patent, it does not need to be "associated with a financial institution." *Phillips*, 415 F.3d at 1314 ("[T]he claim in this case refers to 'steel baffles,' which strongly implies that the term 'baffles' does not inherently mean objects made of steel.").  For these reasons, MEC respectfully requests that the Court decline to construe this term.  Should the Court be inclined to construe this term, MEC requests adoption of its proposed alternate construction.

### 3.    "a plurality of sub-accounts associated with a parent account"

| Plaintiff's Proposed Construction | Walmart's Proposed Construction |
|---|---|
| Plain and ordinary meaning.  No construction necessary. | sub-accounts means "accounts with limited access to the funds available to the parent account" |

Walmart seeks to limit the term "sub-account" (which only appears in dependent claim 6) to one type of sub-account: an account with "*limited access to the funds available* to the parent account."  The intrinsic record does not require that construction.

A sub-account is typically a subsidiary division of a parent account to allow for organization under the parent (*e.g.*, a parent account with Netflix could have a sub-account for other users).  The Patent is consistent with that understanding.  It discloses, for example, that "a customer can create a sub-account for a family member, such that the customer's children or other family members can make certain purchases using their own mobile device."  '058 Patent, at 18:10–13.  There is no requirement that sub-accounts have limited access to the parent account's funds.

Walmart adds that limitation based on the embodiment described in Figure 9.  Limiting claims to the described embodiment requires persuasive evidence—"a 'clear intention to limit the claim scope.'"  *Seagen*, 2021 U.S. Dist. LEXIS 174566, at *17 (citation omitted).  Walmart's evidence does not clear that bar.

In the Figure 9 embodiment, the system looks for criteria match for a sub-account (reflected in step 906 below).  One example criterion is if the phone number of the mobile device initiating the transaction matches the phone number associated with the sub-account.  *See, e.g.*, '058 Patent, at 17:47–18:39.  If there is a match, the system sends an authorization requests to the mobile device

"that initiated the transaction request or to the phone number associated with the parent account." *Id.* at 17:39–43.  This is highlighted below at step 908.



'058 Patent, at Fig. 9 (truncated, highlighting added).

The system then receives the authorization (step 910, highlighted) from "from the sub-account phone number, the communications phone number[,] or the phone number associated with the parent account."  '058 Patent, at 18:40–43.  Once authorization is received, the system can execute the transaction with the sub-account (step 912, highlighted).  *Id.* at 18:35–45.

In that way, the system in this embodiment may limit the access of the sub-account: "[a] sub-account 812 is associated with a parent account 810 wherein the sub-account *may* have limited access to the funds available to the parent account 810 or the account associated with the mobile phone number."  '058 Patent, at 17:55–58 (emphases added) (cleaned up).

This statement, however, does not redefine the "sub-account" term.  By its terms, it is describing the accounts in the example embodiments (including referencing them by element number from Figure 8).  The sentence also uses the permissive term "may," which is not limiting. *Biosonix, LLC v. Hydrowave, LLC*, 230 F. Supp. 3d 598, 607 (E.D. Tex. 2017) (Clark, J.) ("The

problem for Defendants here is that 'may' is permissive, and the sentence merely describes possible capabilities of one or more embodiments. This provides no basis to import the dual-capacity limitation from the specification to claim 4."); *TracBeam, L.L.C. v. AT&T, Inc.*, No. 6:11-CV-96, 2013 U.S. Dist. LEXIS 10103, at *41-42 (E.D. Tex. Jan. 23, 2013) (Davis, J.) (declining to limit claim term based on a sentence in the specification where "the sentence is permissive, using the word 'may,' and only describes a single embodiment of the invention").

MEC thus respectfully requests that the Court reject Walmart's proposed construction and decline to construe this claim term.

## V.    CONCLUSION

For the foregoing reasons, MEC respectfully requests that the Court enter an order adopting MEC's proposed constructions and rejecting the positions advanced by Walmart in its constructions.

Dated: November 4, 2021

/s/ Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Plaintiff Mobile Equity Corp.***

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this November 4, 2021 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

<u>/s/Christian J. Hurt</u>
Christian J. Hurt