**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MOBILE EQUITY CORP., | |
| *Plaintiff*, | Civil Action No. 2:21-cv-00126-JRG-RSP |
| v. | **JURY TRIAL DEMANDED** |
| WALMART INC. | |
| *Defendant*. | |

**DEFENDANT WALMART INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF
ON THE TERMS OF U.S. PATENT NOS. 8,589,236 AND 10,535,058**

## TABLE OF CONTENTS

**Page**

I.      OVERVIEW OF THE '236 and '058 PATENTS ...................................................1

II.     LEVEL OF ORDINARY SKILL IN THE ART ..................................................1

III.    THE DISPUTED TERMS OF U.S. PATENT NO. 8,589,236.............................2

    **A.**   "A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:"............. 2

    **B.**   "merchant identifier" ........................................................................ 8

    **C.**   "an appropriate financial institutions *[sic]* associated with the purchase account and the deposit account"........................................................ 15

    **D.**   "mobile enablement center"............................................................... 20

        1.   "Mobile Enablement Center" Is A Purely Functional Term......................20

        2.   The '236 Patent Fails to Disclose Sufficient Corresponding Structure .....22

    **E.**   "appropriate"................................................................................... 23

    **F.**   "payment processing server" .............................................................. 24

    **G.**   "service data point" (agreed) ............................................................. 26

IV.     THE DISPUTED TERMS OF U.S. PATENT NO. 10,535,058......................................27

    **A.**   "A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:".......................................................................... 27

    **B.**   "payment processing server" .............................................................. 28

    **C.**   "a plurality of sub-accounts associated with a parent account"............................ 28

V.      CONCLUSION.................................................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AGIS Software Dev. v. T-Mobile*,
2:21-cv-72-JRG-RSP, Dkt. No. 213, at 28 (E.D. Tex. Nov. 10, 2021) ................................. 18

*Ahern Rentals, Inc. v. EquipmentShare.com, Inc*,
No. 2:20-CV-00333-JRG, 2021 WL 4891379 (E.D. Tex. Oct. 19, 2021) ..................... 2, 4, 6, 7

*Aristocrat Techs. v. Int'l Game,Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ............................................................................. 22

*Bancorp Servs., LLC v. Hartford Life Ins.*,
359 F.3d 1367 (Fed. Cir. 2004) ............................................................................. 13

*Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.*,
55 F.3d 615 (Fed. Cir. 1995) ............................................................................. 2, 27

*Boston University v. Everlight Electronics Co.*,
896 F.3d 1357 (Fed. Cir. 2018) ............................................................................. 11

*Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*,
289 F.3d 801 (Fed. Cir. 2002) ............................................................................. 5

*Cellular Commc'ns Equip. LLC v. LG Elecs., Inc.*,
No. 6:14-CV-982, 2016 WL 2808887 (E.D. Tex. May 13, 2016) ............................. 3

*Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*,
868 F.2d 1251 (Fed. Cir. 1989) ............................................................................. 4

*Cronos Techs. v. Expedia, Inc.*,
No. 13-cv-1538, 2015 WL 3548744 (D. Del. June 8, 2015) ................................. 11

*Data Engine Techs. LLC v. Google LLC*,
10 F.4th 1375 (Fed. Cir. 2021) ............................................................................. 5

*Edwards Lifesciences LLC v. Cook Inc.*,
582 F.3d 1322 (Fed. Cir. 2009) ....................................................................... 14, 25

*Egenera, Inc. v. Cisco Sys., Inc.*,
972 F.3d 1367 (Fed. Cir. 2020) ....................................................................... 20, 22

*Electro Sci. v. Dynamic*,
307 F.3d 1343 (Fed. Cir. 2002) ....................................................................... 6, 27

*Eon Corp. IP Holdings v. Silver Spring Networks,*
   815 F.3d 1314 (Fed. Cir. 2016) ............................................................................ 9

*ePlus, Inc. v. Lawson Software, Inc.,*
   700 F.3d 509 (Fed. Cir. 2012) ............................................................................ 23

*Ergo Licensing v. CareFusion 303, Inc.,*
   673 F.3d 1361 (Fed. Cir. 2012) .......................................................................... 23

*Evicam Int'l, Inc. v. Enf't Video, LLC,*
   No. 4:16-CV-105, 2016 WL 6470967 (E.D. Tex. Nov. 2, 2016) ..................... 15, 17

*FotoMedia Techs., LLC v. AOL, LLC,*
   No. 2:07-cv-255, 2009 WL 2175845 (E.D. Tex. July 21, 2009) ...................... 10, 12

*General Electric Co. v. Nintendo Co.,*
   179 F.3d 1350 (Fed. Cir. 1999) ............................................................................ 4

*Gree, Inc. v. Supercell Oy,*
    No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 82086 (E.D. Tex. May 8, 2020) ........ 17

*Honeywell Int'l, Inc. v. ITT Indus., Inc.,*
   452 F.3d 1312 (Fed. Cir. 2006) ............................................................................ 3

*Imperium (IP) Holdings, Inc. v. Apple, Inc.,*
   920 F. Supp. 2d 747 (E.D. Tex. 2013) ................................................................ 18

*In re Fought,*
   941 F.3d 1175 (Fed. Cir. 2019) ........................................................................ 2, 6

*Intell. Ventures II LLC v. Sprint Spectrum, L.P.,*
   2019 WL 2959568 (E.D. Tex. Apr. 18, 2019) ................................................... 18

*IQASR LLC v. Wendt Corp.,*
   825 F. App'x 900 (Fed. Cir. 2020) ..................................................................... 20

*Lexion Med. v. Northgate Techs.,*
   641 F.3d 1352 (Fed. Cir. 2011) ............................................................................ 3

*Liebel-Flarsheim Co. v. Medrad, Inc.,*
   481 F.3d 1371 (Fed. Cir. 2007) .......................................................................... 11

*Media Rights Techs., Inc. v. Capital One Fin. Corp.,*
   800 F.3d 1366 (Fed. Cir. 2015) ..................................................................... 21, 22

*Metabolite Labs., Inc. v. Corp. of Am. Holdings,*
  370 F.3d 1354 (Fed. Cir. 2004)............................................................. 5, 7

*Nautilus, Inc. v. Biosig Instruments, Inc.,*
  572 U.S. 898 (2014)............................................................................. 18

*Noah Sys., Inc. v. Intuit Inc.,*
  675 F.3d 1302 (Fed. Cir. 2012)............................................................. 22

*Novo Indus., L.P. v. Micro Molds Corp.,*
  350 F.3d 1348 (Fed. Cir. 2003)......................................................... 19, 20

*Parthenon Unified Memory Architecture LLC v. Apple Inc.,*
  No. 2:15-CV-00621-JRG-RSP, 2016 WL 3365945 (E.D. Tex. June 17, 2016)...................... 19

*Phillips v. AWH Corp.,*
  415 F.3d 1303 (Fed. Cir. 2005)............................................................... 3

*Phx. Licensing, L.L.C. v. AAA Life Ins. Co.,*
  No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 80177 (E.D. Tex. June 21, 2015) ...................... 17

*Rapoport v. Dement,*
  254 F.3d 1053 (Fed. Cir. 2001)......................................................... 6, 27

*Robert Bosch LLC v. Snap-On Inc.,*
  769 F.3d 1094 (Fed. Cir. 2014)............................................................. 22

*Scripps Rsch. Inst. v. Illumina, Inc.,*
  782 F. App'x 1018 (Fed. Cir. 2019) ...................................................... 11, 25

*Semcon IP Inc. v. Huawei Device USA Inc.,*
  No. 216-cv-00437-JRG-RSP, 2017 WL 2972193 (E.D. Tex. July 12, 2017) ...................... 18, 24

*Shoes by Firebug LLC v. Stride Rite Children's Grp.,*
  962 F.3d 1362 (Fed. Cir. 2020)........................................................... 7, 8

*Sinorgchem Co., Shandong v. Int'l Trade Comm'n,*
  511 F.3d 1132 (Fed. Cir. 2007)......................................................... 11, 25

*Synchronoss Techs., Inc. v. Dropbox, Inc.,*
  987 F.3d 1358 (Fed. Cir. 2021)............................................................. 23

*TF3 Ltd. v. Tre Milano, LLC,*
  894 F.3d 1366 (Fed. Cir. 2018)......................................................... 14, 25

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*,
    681 F. App'x 898 (Fed. Cir. 2017) ........................................................................ 18

*Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*,
    No. 2:18-CV-0041-JRG-RSP, 2019 WL 1614724 (E.D. Tex. Apr. 15, 2019)........................ 19

*Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*,
    Case No. 2:18-cv-00508-JRG, 2020 U.S. Dist. LEXIS 9401
    (E.D. Tex. Jan. 20, 2020) ........................................................................................ 8

*Univ. of Texas Sys. v. BENQ Am. Corp.*,
    533 F.3d 1362 (Fed. Cir. 2008)........................................................................... 13

*ViaTech Techs., Inc. v. Microsoft Corp.*,
    2020 WL 2616226 (D. Del. May 22, 2020)............................................................ 20

*Wapp Techs. v. Seattle Spinco*,
    No. 4:18-CV-469, 2020 WL 1983087 (E.D. Tex. Apr. 27, 2020)............................. 13

*Williamson v. Citrix*,
    792 F.3d 1339 (Fed. Cir. 2015)........................................................................... 20

**Statutes**

35 U.S.C. §112........................................................................................ 20, 21, 22

35 U.S.C. §112(f)............................................................................................. 20

Defendant Walmart, Inc. ("Walmart") hereby submits this brief in support of its proposed constructions of the disputed claim terms for U.S. Patent Nos. 8,589,236 ("the '236 Patent") and 10,535,058 ("the '058 Patent" and, collectively, the "Patents-in-Suit").

## I. OVERVIEW OF THE '236 AND '058 PATENTS

The '058 Patent is a continuation of Utility Application No. 12/906,989, which is now the issued '236 Patent. As such, the Patents-in-Suit share a common specification and are directed to substantially similar subject matter—methods and systems of using mobile communication devices to execute a commercial transaction. *See, e.g.*, '236 Patent at 1:12-14. The purported novelty rests in reversing the order in which a point of sale ("POS") transaction is made. *Id*. at 2:10-17. Figure 1 illustrates the general architecture of a computing environment for using a mobile device 102 to initiate a transaction with a merchant 104. Figure 2 identifies the method of executing a transaction between a customer with mobile device 102 and merchant 104. At step 202, a merchant ID is from the mobile device; at step 204, a transaction information request is sent to the merchant; at step 206, transaction information from the merchant is received; at step 208, an authorization request is sent to the mobile device; at step 210, an authorization from the mobile device is received; at step 212, the transaction is executed with a financial institution; and at step 214, a transaction confirmation is sent.

## II. LEVEL OF ORDINARY SKILL IN THE ART

MEC has not proposed a level of ordinary skill in the art. Walmart reserves its right to respond if MEC proposes a skill level. However, none of Walmart's proposed constructions turn on a particular level of skill in the art and thus Walmart proceeds as follows.

III.    **THE DISPUTED TERMS OF U.S. PATENT NO. 8,589,236**

A.    **"A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:"**

| Walmart's Proposed Construction | MEC's Proposed Construction |
|---|---|
| Limiting. | Plain and ordinary meaning.  No construction necessary. Not limiting. |

The preamble to claim 1 is limiting because it provides necessary antecedent basis, the specification supports treating it as limiting, and the patentee relied on it to overcome prior art. MEC's argument to the contrary contravenes well-settled principles of claim construction law.

First, the preamble is limiting because it provides the antecedent basis for the rest of the claim.  As this Court recently explained, "when the limitations in the body 'rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention.'"  *Ahern Rentals, Inc. v. EquipmentShare.com, Inc*, No. 2:20-CV-00333-JRG, 2021 WL 4891379, at *8–*9 (E.D. Tex. Oct. 19, 2021) (finding "[t]he preamble is limiting" because "'[t]he machine' in the body clearly refers back to, and derives antecedent basis from, the 'rental machine' of the preamble") (Payne, J.); *see also, e.g.*, *In re Fought*, 941 F.3d 1175, 1178 (Fed. Cir. 2019) ("We have repeatedly held a preamble limiting when it serves as antecedent basis for a term appearing in the body of a claim.") (collecting cases).  Thus, "if the claim drafter "'chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined ... is the one the patent protects.'" *Ahern Rentals*, 2021 WL 4891379, at *8–*9 (quoting *Bell Commc'n Research, Inc. v. Vitalink Commc'n Corp.,* 55 F.3d 615, 620 (Fed. Cir. 1995)).

Here, the preamble of claim 1 is limiting because it expressly provides the ***only*** antecedent basis for numerous terms that follow in the claim, including "the merchant," "the customer," and "the mobile device" recited in the later limitations of claim 1.  The mapping below shows that the preamble contains the only antecedent basis for terms in the limitations of claim 1:

2

A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:

receiving a merchant identifier from the mobile device operated by the customer, the merchant identifier indicating a request to initiate a transaction with a merchant terminal identified by the merchant identifier, wherein the merchant identifier does not indicate a transaction amount for the transaction;

*       *       *

identifying a purchase account associated with the customer and a deposit account associated with the merchant;

'236 Patent, Cl. 1 (annotated).  Accordingly, if its preamble were not limiting, claim 1 would be invalid for lack of antecedent basis.

Second, the specification confirms that the preamble of claim 1 limits the claim in light of the description in the "Field of the Invention."  "The customary meaning of a claim term is not determined in a vacuum and should be harmonized, to the extent possible, with the intrinsic record, as understood within the...field of the invention."  *Cellular Commc'ns Equip. LLC v. LG Elecs., Inc.*, No. 6:14-CV-982, 2016 WL 2808887, at *5 (E.D. Tex. May 13, 2016) (quoting *Lexion Med. v. Northgate Techs.*, 641 F.3d 1352, 1356 (Fed. Cir. 2011)); *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("It is the person of ordinary skill in the field of the invention through whose eyes the claims are construed.").  Here, the specification defines the "Field of the Invention" using nearly identical language from the preamble, emphasizing that "[t]his invention…relates...more particularly to using mobile communication devices to execute a commercial transaction."  '236 Patent at 1:10-14; *accord Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1318 (Fed. Cir. 2006) (construing specification's statement "this invention relates to a fuel filter" to limit the claims because "[t]he public is entitled to take the patentee at his word and the word was that the invention is a fuel filter").  Accordingly, the patentee's description of "this invention" and the

"Field of the Invention" is consistent with Walmart's construction, and inconsistent with MEC's claim that this invention excludes "using mobile devices to execute"—not merely initiate—"a commercial transaction."

Moreover, courts routinely find that a preamble is limiting when it recites additional structure or steps that the specification underscores are important. *See, e.g.*, *Ahern Rentals*, 2021 WL 4891379, at *9 (limiting claim scope to "rental machine" rather than "a machine" because "the applicant apprised the public his invention pertains to 'rental machines'" and the patentee did "not support [its] presumption" that the preamble "has no bearing on" the claim's "structure" "with intrinsic evidence"); *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989) (limiting claim scope to "optical waveguides" rather than all optical fibers in light of specification); *General Electric Co. v. Nintendo Co.*, 179 F.3d 1350, 1361–62 (Fed. Cir. 1999) (limiting claim scope to a "raster scanned display device" rather than all display systems given specification's focus on problem of displaying binary data on a raster scan display device).

Third, the '236 Patent specification repeatedly emphasizes that the claimed invention requires a transaction between a merchant and a customer, where the customer is using a mobile device. *See, e.g.*, '236 Patent at 2:10–17 ("It is the general object of the present invention to allow a customer to use a mobile communications device to initiate and execute a transaction…"); *id.* at 2:18-23 ("It is a general object of the present invention to allow a customer to use a mobile communications device to initiate and execute a transaction, which overcomes the aforementioned problems with using a credit or debit card by taking advantage of the prevalence of mobile communication devices and the communications abilities of mobile devices."); *id.* at 2:32-36 ("A mobile device can be used to initiate and execute a transaction with a merchant."); *see also id.* at 5:61-63, 6:4-7:4. These elements flow directly from the preamble. Accordingly, MEC's assertion

that the preamble is not limiting ignores the overwhelming substantive overlap between the invention described in the specification and the scope recited by the preamble.

The prosecution history also confirms that the preamble of claim 1 is limiting because the applicant amended the preamble to overcome a prior art rejection.  The Federal Circuit has repeatedly "held that where the preamble is relied on to distinguish prior art during prosecution, it cannot later be argued that the preamble has no weight."  *Data Engine Techs. LLC v. Google LLC*, 10 F.4th 1375, 1381 (Fed. Cir. 2021) (affirming that the preamble is limiting based on patentee's reliance on it to avoid invalidity).  Notably, even when a preamble includes a "statement of intended use," that may be limiting "where … that preamble's statement of intended use forms the basis for distinguishing the prior art in the patent's prosecution history."  *Metabolite Labs., Inc. v. Corp. of Am. Holdings,* 370 F.3d 1354, 1358-62 (Fed. Cir. 2004) (where preamble reciting "a method for detecting a deficiency of" certain vitamins was used to overcome a rejection "under § 102," "the recitation of the intended use in the preamble makes this invention a method for detecting a vitamin deficiency"); *accord Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.,* 289 F.3d 801, 808-09 (Fed. Cir. 2002) ("[C]lear reliance on the preamble during prosecution to distinguish the claimed invention from the prior art transforms the preamble into a claim limitation because such reliance indicates use of the preamble to define, in part, the claimed invention.").

To overcome a prior art rejection at the USPTO, the '236 Patent applicant amended the preamble of claim 1 to require a customer using a mobile device: "A method for conducting a transaction between a merchant and a customer, the customer using a ~~computing~~ mobile device, the method comprising."  Ex. 1 ('236 FH) at MEC-WM-00000075.  The applicant also amended limitation 1[a] of claim 1 to require the customer to operate the mobile device: "receiving… from the ~~computing~~ mobile device operated by the customer...."  *Id.*  The applicant justified the

patentability of his invention by representing to the examiner that his "claimed invention executes transactions that are initiated by a customer on the customer's user device rather than by a merchant point of sale terminal." *Id.* at MEC-WM-00000081.  The applicant argued that "[t]his approach of the claimed invention is in stark contrast to the typical payment processing methodology." *Id*. After the USPTO responded with a final rejection of the claims, the applicant filed a request for continuing examination, reiterating the importance of executing a transaction initiated at a customer's mobile device and stating "[t]hus, the claimed invention executes transactions that are initiated by a customer on the customer's user device, and such transactions are not initiated by the merchant."  Ex. 2 at MEC-WM-00000049.  The '236 Patent issued the next month without further action from the patentee.  Ex. 3 at MEC-WM-00000014.

Despite this, MEC argues that the preamble of claim 1 should be non-limiting by default. MEC Br. at 4–7.  But as explained above, any such rule does not apply because the preamble provides the only antecedent basis for numerous terms that appear in the claim, and because of the specification and prosecution history.  *Fought*, 941 F.3d at 1178; *Electro Sci. v. Dynamic*, 307 F.3d 1343, 1348 (Fed. Cir. 2002); *Rapoport v. Dement*, 254 F.3d 1053, 1059 (Fed. Cir. 2001).

MEC next argues that "conducting a transaction between a merchant and a customer" is not a step required to meet the claims.  MEC Br. at 5.  Initially, MEC's assertion presumes its own conclusion—the very question in dispute is whether the preamble, including the portion cited by MEC, is limiting.  Moreover, as in *Ahern*, MEC does not "support [its] presumption with intrinsic evidence," and fails to cite any support for the notion that the claims were intended to exclude conducting a transaction.  *Ahern Rentals*, 2021 WL 4891379, at *8.  To the contrary, nothing in claim 1 of the specification suggests that the transaction cannot be completed.  An invention that only initiated—but could not complete—a transaction would not achieve core "object[s] of the

6

present invention" as disclosed in the specification.  '236 Patent at 2:10-17 ("It is a general object of the present invention to allow a customer to use a mobile communications device to initiate <u>and execute</u> a transaction…"); *id.* at 2:18-23 (same); *id.* at 2:48-50 ("It is another general object of the present invention to use a point of sale terminal associated with a merchant <u>to execute a transaction</u> between a merchant and customer.").  Further, as detailed above, "the language the patentee has chosen to…claim…his invention," the specification, and the prosecution history, all compel the conclusion that the preamble is limiting.  *Ahern Rentals*, 2021 WL 4891379, at *8.

Next, MEC argues that the antecedent basis for "mobile device" is not determinative of the issue because the preamble is merely a statement of intended use.  MEC's contention fails because the preamble contains terms that are necessary to describe a "structurally complete invention" and the preamble is the antecedent basis to virtually every operative component of the claims, including for "merchant," "customer," and "mobile device."  *Shoes by Firebug LLC v. Stride Rite Children's Grp.*, 962 F.3d 1362 (Fed. Cir. 2020) (cited by MEC Br. at 5-6).  Devoid of both the parties interacting (merchant and customer) and the means of interaction (a mobile device) claim 1 does not disclose a "structurally complete invention."  And where a patentee does not "define[] a structurally complete invention in the claim body," instead relying on antecedents in a preamble to complete the invention, the preamble is not "only…a purpose or intended use."  *Id.*  Moreover, even a preamble reciting a statement of intended use will be deemed limiting when, as here, the preamble was used to overcome a rejection before the USPTO.  *Metabolite*, 370 F.3d at 1358-62.

MEC's Brief relies on authority that supports Walmart's position.  For example, *Shoes by Firebug* held that preambles which provided antecedent basis <u>are</u> limiting.  962 F.3d 1362, 1368 (Fed. Cir. 2020).  While *Shoes by Firebug* also found one preamble not limiting, it explained that the preamble did not contain a true antecedent basis because "the first limitation of the body of

claim 1…reintroduces" the term at issue.  The non-limiting preamble in *Shoes by Firebug* provided for "<u>an</u> <u>internally</u> <u>illuminated</u> textile <u>footwear</u> comprises: a footwear." *Id.*  "The preamble, then, cannot be said to provide essential structure or necessary meaning to the claimed invention because the same element—the footwear—is independently recited in the body of the claim." *Id.* at 1367–68.  Here, by contrast, the customer, the merchant, and—as MEC explicitly concedes, MEC Br. at 5—the mobile device, are introduced exactly once (in the preamble) and never reintroduced in the body.  These three elements both individually and collectively provide "essential structure" that is "necessary" to grasp the "meaning" of "the claimed invention." *Id.* at 1368.

Finally, MEC argues that this case is similar to *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, where the Court found a "method of protecting a mobile radiotelephony device" to be non-limiting.  Case No. 2:18-cv-00508-JRG, 2020 U.S. Dist. LEXIS 9401, at *38 (E.D. Tex. Jan. 20, 2020) (Payne, J.).  But in *Uniloc*, the preamble term "protecting" did not appear in the body of the claims and the specification did not limit "protecting" to protecting against theft.  *Uniloc* is inapposite because here, by contrast, the terms of the preamble provide the only antecedent basis for numerous terms that are repeated throughout the rest of claim 1, an understanding that is further supported by the specification and prosecution history.  Accordingly, the Court should adopt Walmart's construction that the preamble of claim 1 is limiting.

### B.   "merchant identifier"

| Walmart's Proposed Construction | MEC's Proposed Construction |
|---|---|
| "a unique identifier associated with a merchant" | Plain and ordinary meaning.  No construction necessary.<br><br>Alternatively, "an identifier provided by a merchant that includes information sufficient to identify a terminal" |

Walmart's proposed construction flows directly from the specification, comports with the purpose of the claimed invention, and enables the jury to distinguish between discrete limitations.

By contrast, MEC's proposal conflates a "merchant identifier" with a "terminal identifier" by treating the former as met when there is "information sufficient to identify a terminal."[1] MEC collapses a distinction intentionally made by the patentee, and should be rejected.  Because a merchant identifier must identify a merchant, the Court should adopt Walmart's construction.

Walmart's proposed construction flows directly from the specification, which recognizes that a transaction must identify both (1) the merchant at which a customer is shopping, and (2) a particular terminal at which that customer is checking out.  As the specification explains, the purpose of the merchant identifier is to allow "the merchant" to be "identified based on the provided merchant ID."  '236 Patent at *Abstract*.  That comports with the commonsense notion that payment routing requires identifying the merchant who is designated to receive payment, and who should receive "a confirmation of the executed transaction" once payment is completed.  *Id.* As a result, the specification explains that the merchant identifier "is a unique identifier associated with a merchant," distinguishing one merchant from another.  *Id.* at 5:63-64.  The specification's concrete examples of a merchant identifier—"an e-mail address or a phone number"—are unique forms of identification (e.g., multiple independent businesses do not share the same phone number).  '236 Patent at 6:1-3.

Absent a unique identifier that allows "the merchant" to be "identified," *id.* at *Abstract*, the claimed payment system runs the risk of routing payment to the wrong merchant.  The following example illustrates the problem with MEC's construction:  Two stores, Acme Stores and General Stores, each have terminals numbered 1–10.  A customer goes to store General Stores to make a

---

[1] Contrary to MEC's assertion, this term requires the Court's construction because there is a live dispute over claim scope.  *See Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) (reversing the district court's determination that terms did not require construction because "the court left this question of claim scope unanswered").  Specifically, the parties dispute whether merely identifying a terminal is sufficient to meet this term (MEC's position) or whether an identifier must also uniquely identify a merchant (Walmart's position).

purchase at terminal 6.  Under MEC's construction, the merchant identifier need only identify the terminal at which the customer is standing, *i.e.*, terminal 6.  When the system goes to process the customer's payment, the only information it has about where to send funds is "terminal 6," but the system does not know whether it is the terminal 6 at Acme Stores or the terminal 6 at General Stores.  As a result, the system cannot route the funds belonging to General Stores unless there is an identifier associated with General Stores.  The same unacceptable result is obtained where there is no ***unique*** identifier: where two (or twenty) merchants share an identifier, a payment system has no way to identify which specific merchant should receive a given payment.

Only Walmart's proposal is consistent with the stated purpose of the invention and this claim term.  *See, e.g.*, *FotoMedia Techs., LLC v. AOL, LLC*, Case No. 2:07-cv-255, 2009 WL 2175845, at *9 (E.D. Tex. July 21, 2009).  This Court's decision in *FotoMedia* is instructive here.  In *FotoMedia*, the plaintiff proposed construing "identifier" as "information for identifying image data."  *Id.*  The defendants' proposed construction required "information uniquely identifying particular image data."  *Id.* (emphasis added).  In light of the specification, which sought to identify a particular image, the Court rejected the notion of using the same single identifier for multiple items and adopted defendants' construction, which required an identifier to be unique to the item associated with it.  *Id.*

Here, as in *FotoMedia*, the claimed merchant identifier must be required to perform its stated purpose, *i.e.*, identifying the specific merchant for a transaction, which necessarily requires a unique identifier.  Indeed, if a merchant were not uniquely identified by the "merchant identifier," the system would not be able to "send[] a transaction information request to the merchant terminal"

because there would be more than one merchant having the same, non-unique merchant identifier.[2] This is nonsensical.  As the specification explains, the term "merchant identifier" was drafted to mean "a unique identifier associated with a merchant."  In fact, another district court confronting a similar term reached this same result, by construing a "user and/or merchant identifier" as "information identifying the user and/or the desired merchant."  *Cronos Techs. v. Expedia, Inc.*, C.A. No. 13-cv-1538, 2015 WL 3548744, at *9-10 (D. Del. June 8, 2015).  The '236 Patent requires that a merchant identifier be unique to a specific merchant.

The specification confirms Walmart's construction because it uses words of definition—specifically, the word "is"—to describe a merchant identifier.  When the specification states that a "[claim term] is [something]," the use of the word "is" should "signify that a patentee is serving as its own lexicographer."  *Sinorgchem Co., Shandong v. Int'l Trade Comm'n*, 511 F.3d 1132, 1136 (Fed. Cir. 2007).  Indeed, when there is "nothing extraordinary to the contrary," courts treat "is" as definitional.  *Scripps Rsch. Inst. v. Illumina, Inc.*, 782 F. App'x 1018, 1022 (Fed. Cir. 2019).  Here, as in *Sinorgchem*, the '236 Patent specification includes a clear statement (using the word "is") to define the term "merchant identifier."  *See* '236 Patent at 5:63-66 ("The merchant ID number *is* a unique identifier associated with a merchant.").[3]  Here, the specification repeatedly describes a "merchant identifier" as "a unique identifier associated with a merchant."  *See, e.g.*, *id.* at *Abstract* ("[T]he payment processing server requests transaction information from the merchant, wherein the merchant is identified based on the provided merchant ID."); *id.* at 2:36-40 ("wherein the merchant is identified based on the provided merchant ID"); *id.* at 5:61–63 ("The mobile device

---

[2] If MEC's construction were adopted, it would render the patent invalid for lack of enablement.  If a merchant identifier were associated with more than one merchant, as MEC suggests, a POSITA would not have understood how to use the merchant identifier to identify the single merchant.  *See, e.g.*, *Boston University v. Everlight Electronics Co.*, 896 F.3d 1357 (Fed. Cir. 2018); *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1378–79 (Fed. Cir. 2007).

[3] The specification abbreviates "identifier" as "ID," a commonly used American English abbreviation. MEC does not dispute that "ID" is used interchangeably with "identifier" in this specification.

sends a merchant ID associated with a merchant to the payment processing server 106."); *id.* at 6:1-3 ("[T]he merchant ID can include an e-mail address or a phone number associated with the merchant.").  As the specification explains, the merchant identifier or merchant ID must uniquely identify a merchant (*i.e.*, one merchant) in order to execute the transaction.  *Id.*; *FotoMedia*, 2009 WL 2175845, at *9 (construing "identifier" to mean "information uniquely identifying image data" because "[a] non-unique card key would therefore fail in its utility by the patentee's own definition.").

MEC attempts to avoid this portion of the specification by suggesting that "merchant ID number"—referenced in the specification—refers to something other than the "merchant identifier."  MEC Br. at 8-9.  But MEC's suggestion is belied by the specification, which uses the terms interchangeably.  In pertinent part, the specification provides:

> The mobile device sends <u>a merchant ID</u> associated with a merchant to the payment processing server 106.  <u>The merchant ID number</u> is a unique identifier associated with a merchant.  <u>The merchant ID</u> can include any information to identify or communicate <u>with the associated number</u>.

'236 Patent at 5:63-66 (emphasis added).  The reference to a merchant ID "number" is most naturally read as a recognition that the merchant identifier may be represented as an "associated number," not an attempt to disclose a different "merchant ID" than the one referenced in the immediately preceding and succeeding sentences.  *Id.*  That understanding is consistent with the introduction of "<u>a</u> merchant ID," followed by two immediately-subsequent references to "<u>the</u> merchant ID number," and "<u>the</u> merchant ID."  *Id.*  By contrast, MEC's reading would suggest that the patentee was discussing "a merchant ID" in the first sentence, then abruptly veered to reference an entirely different identifier (that is never again referenced anywhere in the specification or claims), but then returned back to the "merchant ID" of the first sentence.

Recognition that "merchant ID" and "merchant ID number" are used interchangeably is the more natural reading in context of the specification.

Walmart's construction is affirmatively supported by the structure of the claims and the patentee's decision to differentiate between a "merchant identifier" and a "terminal identifier." Indeed, it is axiomatic that "different claim terms are presumed to have different meanings." *See Wapp Techs. v. Seattle Spinco*, No. 4:18-CV-469, 2020 WL 1983087, at *10 (E.D. Tex. Apr. 27, 2020) (quoting *Univ. of Texas Sys. v. BENQ Am. Corp.*, 533 F.3d 1362, 1371 (Fed. Cir. 2008)). "The use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each." *Bancorp Servs., LLC v. Hartford Life Ins.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004). Walmart's definition preserves the distinction between a terminal identifier and a merchant identifier, while MEC's collapses the distinction by treating an identification of the terminal alone as sufficient to meet both. MEC expressly proposes that "information sufficient to identify a terminal" is sufficient to show a "merchant identifier." Thus, in addition to the above-described support in the specification, Walmart's construction gives meaning to each of the terms and is consistent with the purpose of the invention (to figure out whose store a customer is at as well as what terminal the customer is at in the merchant's store).

MEC argues that the merchant identifier of claim 1 does not have to be "unique" because uniqueness is required by claim 2. MEC Br. at 8. But MEC misreads claim 2, which differentiates claim 1 by covering an embodiment in which a merchant has more than one payment terminal at its retail store, and the merchant identifier includes both identification of the merchant and a specific terminal (e.g., John is at "Acme's 2nd Cash Register"). *See* '236 Patent at 8:4-9 ("In one embodiment, the merchant ID can be associated with a merchant's unique point-of-sale terminal. In such an instance, the payment processing server 110 can send a communication to the point

[sic] the particular point of sale terminal."); *id.* at 10:26-30 ("In one embodiment, the payment processing server 110 sends the confirmation to a point-of-sale terminal associated with the merchant ID.").  Nothing in claim 2 abrogates the notion that a merchant identifier must identify a particular merchant and, for the reasons described above, the invention could not function if the merchant were not also uniquely identified.

MEC also argues that the descriptions in the specification are mere embodiments, and thus do not limit the claim term.  MEC Br. at 9.  This argument fails for multiple reasons.  First, when a patentee uses "is," the court will treat that as "an intent to define" even when the discussion occurs in relation to an embodiment.  *TF3 Ltd. v. Tre Milano, LLC*, 894 F.3d 1366, 1372 (Fed. Cir. 2018) (treating "that is" as definitional); *Edwards Lifesciences LLC v. Cook Inc.*, 582 F.3d 1322, 1334 (Fed. Cir. 2009) (same).  *Edwards* explicitly rejected the same argument MEC now asserts.  Faced with the argument that "that is" was only used to define a single embodiment, the Federal Circuit held that lexicography is lexicography, regardless of where it occurs.  "Contrary to [the patentee's] argument, the location within the specification in which the definition appears is irrelevant." *Edwards*, 582 F.3d at 1334.  Accordingly, courts must use an "inventors' definition," signaled by use of "that is," "even though it appeared in connection with the description of a preferred embodiment." *Id.*[4]  Second, there is no contrary indication in the specification—MEC cites no disclosure (and there is none) where multiple merchants share a single common identifier.

---

[4] Contrary to MEC's argument, the "merchant identifier number" of the specification is not the sole embodiment of claim 4.  MEC Br. at 9.  Dependent claim 4 is merely an embodiment of *how the merchant identifier is input*, not *what it is.  See* '236 Patent at 6:4-21 (disclosing embodiments of how the merchant identifier is received by the customer and comparing visual input of a merchant identifier—like a barcode scanner—with other means of input, such as using "a keyboard or touchpad.").  Claim 4 narrows claim 1 by focusing on a particular means for inputting the identifier. Notably, in making this argument, MEC implicitly concedes that the portion of the specification discussing a "merchant ID number" appropriately informs "merchant identifier" (the term used in claim 4), self-defeating its principal submission on this term.

To the contrary, the only disclosures presume a unique, individually-identifying identifier.  Third, as detailed above, the invention simply could not function if merchant identifiers were not unique.

MEC's final argument is that a "merchant identifier" is not unique because the specification describes it as being "associated with the merchant."  MEC Br. at 10.  But this is precisely the reason that the merchant identifier must be unique—if the merchant identifier were not unique, there would be no way to associate it with the particular merchant.  Indeed, the specification requires the merchant identifier to be "a unique identifier associated with a merchant" because a particular merchant must be "identified based on the provided merchant ID."  '236 Patent at 2:39-40.  Accordingly, the Court should construe "merchant identifier" to mean "a unique identifier associated with a merchant."

### C. "an appropriate financial institutions *[sic]* associated with the purchase account and the deposit account"

| Walmart's Proposed Construction | MEC's Proposed Construction |
| --- | --- |
| Indefinite. | Plain and ordinary meaning.  No construction necessary. |

This claim term is indefinite for two distinct reasons.  First, "appropriate" is a subjective word that "lack[s]…objective criteria for evaluating" its "meaning."  *Evicam Int'l, Inc. v. Enf't Video, LLC*, No. 4:16-CV-105, 2016 WL 6470967, at *20 (E.D. Tex. Nov. 2, 2016).  Second, the term contains an internally incoherent error that is subject to at least two reasonable, distinctive interpretations (and thus is not subject to correction by the Court).

Neither the claims nor the specification provide any criteria for determining whether a financial institution is "appropriate."  As an initial matter, neither claim 10—the claim where "appropriate financial institution" appears for the first time—nor any of the other claims offer any insight into what distinguishes an "appropriate" financial institution from an "inappropriate" one.  *See generally* '236 Patent, Cls. 1–19.  The specification is similarly unhelpful, as it merely recites

the claim language—"appropriate financial institutions"—without disclosing how to determine whether or not an institution is inappropriate.  *See, e.g.*, '236 Patent at Abstract, 2:42-45, 2:65-3:1.

MEC argues that the specification teaches a definite scope for "an appropriate financial institution."  MEC Br. at 11 (citing '236 Patent at 1:18–34).  Likewise, MEC argues that "[c]laim 10 details with reasonable certainty which financial institutions are the appropriate ones: the institutions that receive the instructions to initiate the transaction."  MEC Br. at 11.  That argument fails.  MEC's argument is circular.  Claim 10 requires the sending instructions to an appropriate financial institution.  But according to MEC, the appropriate financial institution is the one to which the instructions were sent.



MEC never identifies a criterion to determine what institutions should receive the instructions to initiate the transaction, and none is apparent from the specification.

Nor can "appropriate" refer to the financial institutions that are associated with the merchant and the customer, because that meaning is already captured in other words of the claim. Claim 10 provides that "initiating a transaction between the merchant and the customer comprises

sending instructions to an appropriate financial institutions associated with the purchase account and the deposit account."  '236 Patent at Claim 10.  The specification's references to "appropriate financial institutions" assign different language to denote the institutions which are associated with the customer and the merchant.  *See, e.g.*, 2:42–45 ("The payment processing server can authenticate the customer and initiate a purchase transaction with the appropriate financial institutions associated with the customer and the merchant.").  Thus, the word "appropriate" cannot mean "financial institutions associated with the purchase account and the deposit account," because that meaning is already expressed in the other words of the claim.  MEC's suggestion to the contrary would render "appropriate" meaningless (or render the latter half of the claim nugatory), implying that the claims would cover the same scope even if the word "appropriate" was removed.  But if "appropriate" must mean something other than "institutions associated with the purchase account and the deposit account," what definite meaning does it have?  Neither MEC nor the specification offer any "objective criteria" to answer that question.  *Evicam*, 2016 WL 6470967, at *20.

MEC's authority is inapposite because in each of those cases, the patent explained how to determine whether something is appropriate.  *E.g.*, *Gree, Inc. v. Supercell Oy*, No. 2:19-cv-00070-JRG-RSP, 2020 U.S. Dist. LEXIS 82086, at *38–40 (E.D. Tex. May 8, 2020) ("appropriate" was based on a "predetermined time"); *Phx. Licensing, L.L.C. v. AAA Life Ins. Co.*, No. 2:13-CV-1081, 2015 U.S. Dist. LEXIS 80177, at *20–25 (E.D. Tex. June 21, 2015) (appropriate was determined "using client information, the financial products information, and the decision criteria").  Here, by contrast, there is no disclosure in the claims or specification that informs a POSITA whether a financial institution is appropriate.  Each instance of the use "appropriate" merely repeats the term, without offering "objective criteria" or a "baseline" for distinguishing inappropriate from

17

appropriate institutions.  "Simply, the term" appropriate "does not adequately 'apprise the public of what is still open to them."  *Semcon IP Inc. v. Huawei Device USA Inc.*, No. 216-cv-00437-JRG-RSP, 2017 WL 2972193, at *25 (E.D. Tex. July 12, 2017) (quoting *Nautilus, Inc. v. Biosig Instruments Inc.*, 572 U.S. 898, 910 (2014)).  "Accordingly," the term "appropriate" "is indefinite by reason of the uncertainty in the meaning of" the term.  *See id.*

Claim 10 also is indefinite because it contains an error that is subject to two reasonable corrections and MEC has not requested a correction.  MEC does not dispute that "an…institutions" is grammatically incorrect and internally incoherent, nor does MEC ask the Court to correct the claim.  Indeed, MEC does not brief this argument at all, and cannot address it for the first time in reply.  "It is black-letter law that arguments raised for the first time in a reply brief are waived 'as a matter of litigation fairness and procedure.'"  *Intell. Ventures II LLC v. Sprint Spectrum, L.P.*, 2019 WL 2959568, at *3 (E.D. Tex. Apr. 18, 2019) (Payne, J.), *report and recommendation adopted*, 2019 WL 1987204 (E.D. Tex. May 6, 2019) (Gilstrap, C.J.).  Moreover, "[j]udicial correction would not be appropriate here because Plaintiff has not requested it."  *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp. 2d 747, 757 (E.D. Tex. 2013); *AGIS Software Dev. v. T-Mobile*, 2:21-cv-72-JRG-RSP, Dkt. No. 213, at 28 (E.D. Tex. Nov. 10, 2021) (Payne, J.) (finding term "is indefinite" because "Plaintiff did not argue for a correction and did not address the standard for judicial correction, let alone show that the standard for judicial correction is met in this case").  "[A]s the claim limitation stands uncorrected, it does not inform those skilled in the art about the scope of the invention with reasonable certainty."  *Trusted Knight Corp. v. Int'l Bus. Machines Corp.*, 681 F. App'x 898, 904 (Fed. Cir. 2017).

To the extent the Court considers possible corrections, it should still deem the language indefinite.  "If the claim language might mean several different things and no informed and

confident choice is available among the contending definitions, the claim is indefinite." *Uniloc USA, Inc. v. Samsung Elecs. Am., Inc.*, No. 2:18-CV-0041-JRG-RSP, 2019 WL 1614724, at *12 (E.D. Tex. Apr. 15, 2019) (invalidating claims where there were multiple plausible corrections). Notably, "[t]he Federal Circuit's standard does not ask the Court to decide which proposed construction is most plausible.  Rather the standard only asks the Court to decide if reasonable debate exists based on the claim language and the specification." *Parthenon Unified Memory Architecture LLC v. Apple Inc.*, No. 2:15-CV-00621-JRG-RSP, 2016 WL 3365945, at *13 (E.D. Tex. June 17, 2016) (citing *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1354 (Fed. Cir. 2003)).

Here, there are at least two plausible corrections—deleting the "an" (rendering "institutions" plural) or deleting the "s" following "institution" (rendering it singular)—both of which affect claim scope.

| Option 1 | "~~an~~…institutions associated with the purchase account and the deposit account." |
|----------|------------------------------------------------------------------------------------|
| Option 2 | "an…institution~~s~~ associated with the purchase account and the deposit account" |

Option 1 is plural, reflecting multiple different financial "institutions" that are associated with the purchase account (e.g., one account is associated with Wells Fargo and another is associated with Chase). Option 2 is singular, reflecting "*an*…institution" that is associated with the accounts (e.g., both are USAA accounts).  Both corrections are consistent with the specification.  *Compare, e.g.*, '236 Patent at 5:44-50 (describing embodiment with "*a* financial institution"), *and* Fig. 2 ("*a* financial institution"), Fig. 5 ("Execute Transaction With *A* Financial Institution"), *with, e.g.*, 13:33-34 ("In one embodiment the SDP communicates with financial *institutions*"). "Because either possible fix is supported by the specification and there is no clear basis to choose between

the two, the claim is indefinite."  *ViaTech Techs., Inc. v. Microsoft Corp.*, 2020 WL 2616226, at

*3 (D. Del. May 22, 2020) (citing *Novo*, 350 F.3d at 1358).

### D.    "mobile enablement center"

| Walmart's Proposed Construction | MEC's Proposed Construction |
|---|---|
| Subject to 112 paragraph 6, and indefinite. | Not indefinite and not subject to § 112(6). |
| Function: "route[] outgoing messages from the mobile devices to the appropriate payment processing server" | a platform to route outgoing messages from a mobile device to an appropriate payment processing server |
| Structure: Indefinite for lack of corresponding structure. | |

Mobile enablement center is a patentee-coined term that is defined in purely functional

terms, without reference to particular structure, and is therefore indefinite.  Notably, MEC does

not dispute that "mobile enablement center" is a term coined by the patentee, rather than a term

which is known in the art.  Because "a 'coined term'" arises from the patentee's idiosyncratic

lexicon, rather than the pertinent art, a coined term especially "rais[es] the question of 'whether

the intrinsic evidence provides objective boundaries to the scope of the term.'"  *IQASR LLC v.*

*Wendt Corp.*, 825 F. App'x 900, 904 (Fed. Cir. 2020).

### 1.    "Mobile Enablement Center" Is A Purely Functional Term

The first inquiry in construing this limitation is whether it is subject to construction as a

means-plus-function limitation under 35 U.S.C. § 112 ¶ 6.  Though use of the word "means"

triggers a presumption that § 112 ¶ 6 is applicable, "[t]his presumption…does not permit patentees

to freely engage in functional claiming while circumventing § 112(f) simply by avoiding the word

'means.'"  *Egenera, Inc. v. Cisco Sys., Inc.*, 972 F.3d 1367, 1372–73 (Fed. Cir. 2020).  Instead, a

term is subject to § 112 ¶ 6 if it "either fails to 'recite sufficiently definite structure' or recites

'function without reciting sufficient structure for performing that function.'"  *Id.*   (citing

*Williamson v. Citrix*, 792 F.3d 1339, 1349 (Fed. Cir. 2015)).  The law is clear that when the

specification describes the claim term using its function, § 112, ¶ 6 applies.  *See, e.g.*, *Media Rights Techs., Inc. v. Capital One Fin. Corp.*, 800 F.3d 1366, 1373 (Fed. Cir. 2015).

Here, the claimed "mobile enablement center" is defined solely by its function, namely "identify[ing] an appropriate payment processing server associated with a financial institution." '236 Patent, Cl. 11. The specification consistently describes a mobile enablement center using functional language, including descriptions of how the mobile enablement center "receives" and "routes" messages.  *Id.* at 7:17–19 ("routes outgoing messages"), 7:19–323 ("receiving routing requests"), 7:29–33 (receives a routing request), 7:33-38 ("routes the message"), 7:38–42 (same); *see also id.* 3:24–26 ("the mobile enablement functionality *[sic]* center's functionality can be integrated in an SDP and be called the mobile enablement center or the SDP").  By describing the mobile enablement center using only its functionality, the specification confirms that § 112, ¶ 6 applies.

The patent's figures also support application of § 112, ¶ 6 to mobile enablement center, because they depict only a black box where structure should be:



**FIG. 1**

'236 Patent, Fig. 1 (annotated); *see also id.* Figs. 4, 10.  Courts routinely find such black box depictions to be "simply a generic substitute for 'means.'"  *Egenera*, 972 F.3d at 1375.

MEC's argument relies heavily on the (rebuttable) presumption that the absence of the word "means" indicates § 112 ¶ 6 does not apply.  MEC Br. at 13–14.  Tellingly, even MEC's proposed construction shows that the term is means-plus-function: MEC replaces "mobile enablement center" with "platform,"[5] and then otherwise defines the phrase in terms of its function, namely "rout[ing] outgoing messages."  MEC Br. at 14.  According to MEC, a mobile enablement center is any computer that "route[s] outgoing messages from a mobile device to an appropriate payment processing server."  This is insufficient to escape § 112, ¶ 6.  *See, e.g.*, *Media Rights Techs.*, 800 F.3d at 1373.  MEC's inability to identify structure for a mobile enablement center, combined with MEC's own emphasis on function, shows that the term is subject to § 112, ¶ 6.

### 2.     The '236 Patent Fails to Disclose Sufficient Corresponding Structure

A term governed by § 112 ¶ 6 is indefinite if the specification does not disclose sufficient structure corresponding to the recited function.  *See, e.g.*, *Robert Bosch LLC v. Snap-On Inc.*, 769 F.3d 1094, 1102 (Fed. Cir. 2014).  For a computer-implemented means-plus-function term, the structure must be a disclosed program or algorithm.  *See, e.g.*, *Aristocrat Techs. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008); *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1312-13 (Fed. Cir. 2012).  Here, the specification does not provide any structure or algorithm linked to the claimed function beyond identifying mere black boxes, and a narrative that parrots the function itself.  In fact, MEC was unable to define a "mobile enablement center" without reference to its function of "rout[ing] outgoing messages."  MEC Br. at 12–13.  Moreover, as explained with respect to the first prong *supra*, the '236 Patent describes the mobile enablement center using only

---

[5] MEC does not contend that "platform" is understood as anything other than a stand-in for a general-purpose computer and does not cite any support in the specification (or other evidence) disclosing structural features of a platform.

its functions.  *See, e.g.*, '236 Patent at 3:24–26; *id.* at 7:17–42.  Similarly, the black boxes of the patent figures overlaid with the text "mobile enablement center" cannot provide sufficient structural disclosure.  *See ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 518 (Fed. Cir. 2012); *Ergo Licensing v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363-64 (Fed. Cir. 2012).  Here, none of the descriptions of the claimed "logic" or the claimed function disclose a particular structure associated with the corresponding function in the claim.  *See, e.g.*, *Synchronoss Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1367 (Fed. Cir. 2021).  That is especially true because the term is a "coined" term that does not automatically or inherently connote structure.  Indeed, MEC has failed to identify any corresponding structure for a mobile enablement center and no such structure exists.

Finally, to the extent the Court finds MEC's construction appropriate, it should still deem the term indefinite because MEC's construction relies on the word "appropriate," which is indefinite for the reasons that immediately follow.

### E.    "appropriate"

| Walmart's Proposed Construction | MEC's Proposed Construction |
| --- | --- |
| Indefinite. | Not indefinite.  Plain and ordinary meaning.  No construction necessary. |

Claim 11 recites an "appropriate payment processing server."  As with claim 10, the unbounded use of "appropriate" renders claim 11 indefinite, for the same two reasons: MEC proposes a circular definition that would read out the remainder of the claim and the specification provides no guidance about how to distinguish an "appropriate" payment processing server from an inappropriate server.  *See* '236 Patent at 7:5-38 (reciting "appropriate payment processing server 110" five times without any description or definition of what the term means).  Moreover, the drawings depict "payment processing server 110" as a black box without objective guidance to distinguish appropriate and inappropriate servers.  '236 Patent at Figs. 1, 4, 6, and 10.

As with claim 10, MEC proposes a completely circular construction, where the "appropriate" payment processing server is the one associated with a financial institution.  MEC Br. at 15 ("the appropriate payment processing server is the one that is associated with (and can communicate with) a financial institution to initiate the transaction.").  As an initial matter, MEC appears to suggest that "appropriate" means something different in claim 11 than it means in claim 10, despite the same word being used twice in close proximity.  Moreover, as above, MEC's definition is both circular (because it does not explain how to determine which server is associated with the financial institution) and inconsistent with the remainder of the claim (because the claim separately requires that the server be "associated with a financial institution," so "appropriate" cannot bear that same meaning). As above, "appropriate" here lacks sufficient context from the surrounding claims and lacks sufficient guidance from the written description of the patent. The intra-claim inconsistency between MEC's proposal the same term ("appropriate") in neighboring claims (claim 10 vs. claim 11) emphasizes that lack of clarity.  Accordingly, the term "does not adequately 'apprise the public of what is still open to them."  *Semcon*, 2017 WL 2972193, at *25. The term should be found indefinite.

F.      **"payment processing server"[6]**

| Walmart's Proposed Construction | MEC's Proposed Construction |
| --- | --- |
| "a platform that executes a transaction between a customer, a financial institution associated with the customer, and a merchant" | Plain and ordinary meaning.  No construction necessary. |

Walmart's construction flows directly from the patentee's use of words of definition in the specification.  '236 Patent at 7:54–56.  Specifically, the patentee notified the public that "A payment processing server 110 *is* a platform that executes a transaction between a customer, a

---

[6] MEC correctly notes that the parties dispute the construction of "payment processing server" rather than "associated with a financial institution," which does not presently appear to be in dispute. MEC Br. at 14.

financial institution 116 associated with the customer, and a merchant 104."  As noted above in Section III.B, a patentee's use of the word "is" indicates a definition absent something "extraordinary to the contrary."  *Scripps*, 782 F. App'x at 1022.  Here, as in *Sinorgchem*, the '236 Patent specification includes a statement using the word "is" to define a "payment processing server."  '236 Patent at 7:54–56.  MEC objects that this definition appears in connection with a preferred embodiment, but as above, the use of "is" qualifies as an "inventors' definition," "even though it appeared in connection with the description of a preferred embodiment."  *Edwards*, 582 F.3d at 1334.  Moreover, the specification which was deemed lexicography in *TF3*—another case construing "that is"—tracks the relevant portion of the specification here.  *TF3*, 894 F.3d at 1372.  *TF3* considered a section of specification describing numbered portions of a figure, and still treated the use of "that is" as definitional:

> "It is arranged that **the abutment 52** in its open position **allows the styled length of hair to pass out of the secondary opening 50**, [*that is*], **to slide along the elongate member 20 towards and subsequently off its free end**. Little force is required to separate the hair styling device 10 from the length of hair which has been styled."

*Id.* (emphasis added).  *TF3* and *Edwards* squarely govern this case.  While MEC complains that the passage at issue here discloses a definition through an element referred to "by its number," that was equally true in *TF3*.  Indeed, there is no principled distinction between the specification found binding in *TF3*.  "Contrary to [MEC's] argument, the location within the specification in which the definition appears is irrelevant."  *Edwards*, 582 F.3d at 1334.  Likewise, cases like *Scripps* note that once a patentee has used words of definition, such as "is," the patentee must show something "extraordinary to the contrary" to overcome their plain definitional import.  *Scripps*, 782 F. App'x at 1022.  MEC has not made such a showing here.  In fact, MEC has not shown a single embodiment that is inconsistent with the definition identified in the specification.

25

The remainder of MEC's argument is directed to showing that "payment processing server" is not indefinite, MEC Br. at 15-16, although Walmart does not assert that payment processing server is indefinite.  Critically, though, none of the functions identified by MEC are inconsistent with the definition of payment processing server provided in the specification.  For example, a platform that executes a transaction between a customer, a financial institution associated with the customer, and a merchant is by definition "able to interface over a network with the mobile device and merchant terminal."  MEC Br. at 15 (citing '236 Patent at Fig. 3).  MEC also makes the unfounded assertion that "[a] payment processing server generally refers to software running on one or more computing devices connected to a network that is involved with processing payment." MEC Br. at 15.  But nowhere in the '236 Patent—including the Abstract, which MEC cites for this erroneous proposition—does it state that a payment processing server is any software that is merely involved with processing a payment.  As its term suggests, the payment processing server must process a payment.  Taken at face value, MEC's argument means that a piece of software that does not process a payment could nonetheless be a payment processing server.  This cannot be right, and further illustrates why the Court should adopt Walmart's construction.

In short, Walmart has shown that a "payment processing server" should be construed to mean "a platform that executes a transaction between a customer, a financial institution associated with the customer and a merchant" and its construction should be adopted by this Court.

G.      "service data point" (agreed)

| Walmart's Proposed Construction | MEC's Proposed Construction |
|---|---|
| "A computer that stores customer information." | "A computer that stores customer information." |

After due consideration, Walmart agrees with MEC that the appropriate construction of this term is "a computer that stores customer information."  The parties are no longer in dispute and the Court should adopt the joint construction.

## IV.   THE DISPUTED TERMS OF U.S. PATENT NO. 10,535,058

### A.   "A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:"

| Walmart's Proposed Construction | MEC's Proposed Construction |
|---|---|
| Limiting. | Plain and ordinary meaning.  Not limiting. |

MEC correctly notes that the parties' dispute on this term mirrors the dispute on the preamble in the '236 Patent.  MEC argues that the preamble of claim 1 is not limiting.  MEC Br. at 20.  As above, the preamble is limiting for the same reasons.  First, the preamble of the '058 Patent provides the only antecedent basis for numerous terms that appear later in the claim.  *See, e.g., Electro Sci.*, 307 F.3d at 1348; *Rapoport*, 254 F.3d at 1059; *Bell*, 55 F.3d at 620.  A mapping of this antecedent basis is shown below.

A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:

receiving, at the payment processing server, a terminal identifier from the mobile device operated by the customer, the terminal identifier indicating a request to initiate a transaction with a terminal identified by the terminal identifier, wherein the terminal identifier does not indicate a transaction amount for the transaction;

sending, at the payment processing server, in response to receiving the terminal identifier, a transaction information request to the terminal associated with the terminal identifier;

'236 Patent, Cl. 1 (annotated).  The preamble of claim 1 is limiting because the applicant amended it to its current form to get around a prior art rejection.  *See* Ex. 4 at MEC-WM-00000496; *id.* at MEC-WM-00000502 ("Thus, the mobile device initiates a transaction with a payment processing server for a terminal identifier.").  The specification is consistent with treating the preamble as limiting.  *See supra* Section III.A.  This preamble is limiting for the same reasons the preamble

limits claim 1 of the '236 Patent.  Walmart's arguments and authorities recited in Section III.A are incorporated herein by reference.

### B.    "payment processing server"

| Walmart's Proposed Construction | MEC's Proposed Construction |
| --- | --- |
| "a platform that executes a transaction between a customer, a financial institution associated with the customer, and a merchant" | Plain and ordinary meaning.  No construction necessary.<br><br>Alternatively, software running on one or more computing devices connected to a network that is involved with processing payment. |

This term should have the same meaning as proposed above in Section III.F.[7]  Accordingly, Walmart's construction should be adopted for the reasons stated above.

### C.    "a plurality of sub-accounts associated with a parent account"

| Walmart's Proposed Construction | | MEC's Proposed Construction |
| --- | --- | --- |
| Plain and ordinary meaning | | Plain and ordinary meaning. No construction necessary. |

After due consideration, Walmart agrees with MEC that this term should receive its plain and ordinary meaning.  Accordingly, the parties are no longer in dispute and the Court need not construe this term.

## V.    CONCLUSION

For the above reasons, Walmart requests that its proposed constructions be adopted.

---

[7] MEC's statement that "Walmart has never provided its position on this term" is inaccurate.  Walmart identified a construction for this term under Local Patent Rule 4-3 by cross-referencing identical claim terms across the two asserted patents, which share a specification.  Indeed, in the conference required by Rule 4-3, which the parties conducted on October 13, 2021, MEC affirmatively raised this question, and Walmart confirmed that it sought construction of terms that are repeated across both patents (given the overlap between claims and the specifications), including this one.

Dated:  November 18, 2021

Respectfully submitted,

By:  */s/ Eric H. Findlay*

Eric H. Findlay
State Bar No. 00789886
Debby Gunter
State Bar No. 24012752
FINDLAY CRAFT, P.C.
102 N. College Ave. Suite 900
Tyler, TX  75702
Tel: (903) 534-1100
Fax: (903) 534-1137
Email:  efindlay@findlaycraft.com
Email:  dgunter@findlaycraft.com

Kathryn Riley Grasso
DLA Piper LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101-4297
Tel: (619) 699-2842
Fax: (619) 764-6692
Email:  kathryn.riley@us.dlapiper.com

Christian Chessman
DLA Piper LLP (US)
2000 University Avenue
East Palo Alto, CA  94303-2215
Tel: (650) 833-2112
Fax: (650) 687-1141
Email:  christian.chessman@us.dlapiper.com

Benjamin Yaghoubian
DLA PIPER LLP (US)
2000 Avenue of the Stars, Ste. 400, N. Tower
Los Angeles, CA  90067-4704
Tel:  (310) 595-3000
Email:  benjamin.yaghoubian@us.dlapiper.com

***COUNSEL FOR DEFENDANT,***
***WALMART INC.***

29

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on this 18th day of November, 2021, all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document through email.

*/s/ Eric H. Findlay*
Eric H. Findlay
