**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MOBILE EQUITY CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | NO. 2:21-CV-00126-JRG-RSP |
| | § | |
| WALMART INC., | § | |
| | § | |
| *Defendant*. | § | |

## CLAIM CONSTRUCTION OPINION AND ORDER

In this case, Mobile Equity Corporation alleges infringement of U.S. Patents 8,589,236 (the

"'236 Patent") and 10,535,058 (the "'058 Patent") by Walmart Inc. The patents, which are related

and share the same disclosure, relate to "electronic commerce and more particularly to using

mobile communication devices to execute a commercial transaction." '236 Patent at 1:12–14; *see*

*also* '058 Patent at 1:14 –16.[1]

The parties dispute the scope of six terms or phrases, with Walmart challenging three of

the terms as indefinite. Having considered the parties' briefing, along with arguments of counsel

during a December 20, 2021 hearing, the Court resolves the disputes as follows.

## I.    BACKGROUND

The patents relate to using mobile communication devices for commercial transactions.

'236 Patent at 1:13–14. In the Background, the patents describe a typical "quick and reliable"

credit card transaction, in which a merchant receives a customer's card information at a point-of-

sale terminal. That information is sent to a clearinghouse, which authenticates the information and

---

[1] The '058 Patent issued from U.S. Application No. 14/082,425, which is a continuation of the
application underlying the '236 Patent. '058 Patent at [21], [63].

routes the transaction based on the card information. The clearinghouse then executes the transaction with an appropriate financial institution. *See generally id.* at 1:18–38.

This prior-art methodology requires that the customer have a credit card, which the patent suggests is "less than optimal." Many customers might not be eligible for a credit card or may have had their card lost, stolen, or damaged. *See generally id.* at 1:39–63.

To address this "less-than-optimal" methodology, the patent teaches a system and method for allowing a customer to use a mobile communication device to "initiate and execute a transaction [with a merchant] by reversing the conventional direction of point of sale transaction initiation." *See id.* at 2:10–17. Generally, the customer uses a mobile device to initiate the transaction by causing a merchant ID associated with the merchant to be sent to a payment processing server. *Id.* at [57]. In response, that server requests transaction information from the merchant. *Id.* After the merchant provides the transaction information (e.g., the sales amount) to the server, the server authenticates the customer and initiates a purchase transaction with the appropriate financial institutions associated with the customer and the merchant. *Id.*; *see also id.* at 2:32–47.



**Figure 1 of U.S. Patent 8,589,236**

2

FIG. 1 (above) shows a high-level block diagram of a computing environment for the claimed method. *See id.* at 3:40–42. A mobile enablement center (106) is situated logically between a customer's mobile device (102) and a payment processing server (110), which communicates with a financial institution (116). The center (106) also communicates with a register of payment processing servers (108). *See id.* at FIG. 1.

With respect to one embodiment, the patent describes the mobile enablement center as "a platform that routes outgoing messages from the mobile devices 102 to the appropriate payment processing server." *Id.* at 7:17–19. To accomplish this routing, the center "interrogates the registry . . . to identify an appropriate payment processing server 110." *Id.* at 7:43–45[2]; *see also id.* at 7:45–53 (explaining the registry "can include a listing of payment processing servers 110 based on the routing numbers or other identification information associated with each financial institution"). Regarding the payment processing server (110), the patent explains the server, at least with respect to FIG. 2, "is a platform that executes a transaction between a customer, a financial institution 116 associated with the customer and a merchant 104. Examples of . . . payment processing servers 110 include databases maintained by Visa, MasterCard, American Express, etc." *Id.* at 7:54–59.

Plaintiff asserts independent Claim 1 of each patent, which are similar. Claim 1 of the '236 patent recites:

> 1. A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:
> receiving a merchant identifier from the mobile device operated by the customer, the merchant identifier indicating a request

---

[2] The patent describes *the payment processing server* 110, rather than the mobile enablement center 106, interrogating the register 108 to identify an appropriate payment processing server 110. '236 Patent at 7:43–45. This is a clear a mistake because only the center 106 is shown as connected to the register.

to initiate a transaction with a merchant terminal identified by the merchant identifier, wherein the merchant identifier does not indicate a transaction amount for the transaction;

sending, in response to receiving the merchant identifier, a transaction information request to the merchant terminal associated with the merchant identifier;

receiving transaction information from the merchant terminal in response to the transaction information request, the transaction information including the transaction amount for the transaction;

identifying a purchase account associated with the customer and a deposit account associated with the merchant; and

initiating the transaction between the merchant and the customer for the transaction amount received from the merchant terminal and the identified purchase account associated with the customer and the identified deposit account associated with the merchant.

'236 Patent at 21:5–28. Similarly, Claim 1 of the '058 Patent recites a *terminal* identifier instead of a merchant identifier and limits the steps to being performed "at the payment processing server":

1.  A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising:

    receiving, at the payment processing server, a terminal identifier from the mobile device operated by the customer, the terminal identifier indicating a request to initiate a transaction with a terminal identified by the terminal identifier, wherein the terminal identifier does not indicate a transaction amount for the transaction;

    sending, at the payment processing server, in response to receiving the terminal identifier, a transaction information request to the terminal associated with the terminal identifier;

    receiving, at the payment processing server, transaction information from the terminal in response to the transaction information request, the transaction information including the transaction amount for the transaction;

    identifying, at the payment processing server, a customer account associated with the customer and a terminal account associated with the terminal; and

    initiating, at the payment processing server, the transaction between the customer account and the terminal account for the transaction amount received from the terminal.

4

'058 Patent at 21:40–63.

Plaintiff's opening brief identifies eight disputed terms and phrases, but Defendant has dropped its challenge to two of those terms.[3] Of the terms still disputed, Walmart challenges three as indefinite.

## II.   LEGAL STANDARDS

### a.   Generally

"'The claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). As such, if the parties dispute the scope of the claims, the court must determine their meaning. *See, e.g.*, *Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1317 (Fed. Cir. 2007); *see also Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390 (1996), *aff'g*, 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc).

Claim construction, however, "is not an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, "[c]laim construction is a matter of [resolving] disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims . . . ." *Id.* A court need not "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." *Id.*

When construing claims, "there is a heavy presumption that claim terms are to be given their ordinary and customary meaning." *Aventis Pharm. Inc. v. Amino Chems. Ltd.*, 715 F.3d 1363, 1373 (Fed. Cir. 2013) (citing *Phillips*, 415 F.3d at 1312–13). Courts must therefore "look to the

---

[3] The parties agree the proper construction of "service data point" is "a computer that stores customer information." Dkt. No. 60 at 26. The parties also agree "a plurality of sub-accounts associated with a parent account" should receive its plain and ordinary meaning. *Id.* at 28.

words of the claims themselves . . . to define the scope of the patented invention." *Id.* (citations omitted). "The ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313. This "person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." *Id.*

Intrinsic evidence is the primary resource for claim construction. *See Power-One, Inc. v. Artesyn Techs., Inc.*, 599 F.3d 1343, 1348 (Fed. Cir. 2010) (citing *Phillips*, 415 F.3d at 1312). For certain claim terms, "the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips*, 415 F.3d at 1314; *see also Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1319 (Fed. Cir. 2005) ("We cannot look at the ordinary meaning of the term . . . in a vacuum. Rather, we must look at the ordinary meaning in the context of the written description and the prosecution history."). But for claim terms with less-apparent meanings, courts consider "'those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean[,] [including] the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'" *Phillips*, 415 F.3d at 1314 (quoting *Innova*, 381 F.3d at 1116).

### b.  Indefiniteness

"A patent is invalid for indefiniteness if its claims, read in light of the specification

delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc*., 572 U.S. 898, 901 (2014). "A patent must be precise enough to afford clear notice of what is claimed," but that consideration must be made while accounting for the inherent limitations of language. *Id.* at 908–09. "Indefiniteness must be proven by clear and convincing evidence." *Sonix Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

## III.    THE LEVEL OF ORDINARY SKILL IN THE ART

The level of ordinary skill in the art is the skill level of a hypothetical person who is presumed to have known the relevant art at the time of the invention. *In re GPAC*, 57 F.3d 1573, 1579 (Fed. Cir. 1995). In resolving the appropriate level of ordinary skill, courts consider the types of and solutions to problems encountered in the art, the speed of innovation, the sophistication of the technology, and the education of workers active in the field. *Id.* Importantly, "a person of ordinary skill in the art is also a person of ordinary creativity, not an automaton." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007).

Neither party proposes a level of skill in the art for resolving the disputes. Plaintiff does not address the issue at all. Walmart purports to reserve its right to respond if that changes. Dkt. No. 60 at 1 (stating also that "none of Walmart's proposed constructions turn on a particular level of skill in the art").

## IV.     THE DISPUTED TERMS

**A.**     **"A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:" ('236 Patent, Claim 1); "A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile device, the method comprising" ('058 Patent, Claim 1).**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary. Not limiting. | Limiting. |

The parties dispute whether these preambles are limiting and, more specifically, whether "conducting a transaction" requires that a transaction be both "initiated and executed." Plaintiff argues the preambles are not limiting because the recited steps describe a structurally complete invention. Dkt. No. 49 at 5. Walmart, however, contends (1) the preambles are limiting because they provide antecedent basis for the rest of the claims, Dkt. No. 60 at 2, and (2) the specification repeatedly emphasizes the claimed invention requires a transaction between a merchant and a customer. *Id.* at 4; *see also id.* at 6–7 ("An invention that only initiated—but could not complete—a transaction would not achieve core 'object[s] of the present invention' as disclosed in the specification."). According to Walmart, the specification and prosecution history confirm the limiting nature of the preamble. *Id.* at 3, 5.

Courts determine "whether to treat a preamble as a claim limitation [based] on the facts of each case in light of the claim as a whole and the invention described in the patent." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) (quoting *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 831 (Fed. Cir. 2003)). "Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim." *Id.* Similarly, "[i]f the body of the claim 'sets out the complete invention,' the preamble is not ordinarily treated as limiting the scope of the claim." *Schumer v. Lab. Comput. Sys., Inc.*, 308 F.3d

1304, 1310 (Fed. Cir. 2002). But the preamble is limiting if it recites essential structure that is important to the invention or necessary to give meaning to the claim. *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1305–06 (Fed. Cir. 2005), *cert. denied,* 546 U.S. 1157 (2006). That is, if the claim drafter "chooses to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined . . . is the one the patent protects." *Bell Commc'ns Rsch., Inc. v. Vitalink Commc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) (emphasis in original). Moreover, when the limitations in the body "rely upon and derive antecedent basis from the preamble, then the preamble may act as a necessary component of the claimed invention." *Eaton Corp. v. Rockwell Int'l Corp.*, 323 F.3d 1332, 1339 (Fed. Cir. 2003).

Here, the preambles are not limiting so far as "conducting a transaction" is concerned. That phrase does not "breathe life" into the claim, and the body already describes a structurally complete invention. Importantly, the patent does not tie "conducting a transaction" to either "initiating" or "executing" a transaction. Rather, Claim 1 of each patent is directed to the steps preceding and including initiating the transaction, which is consistent with how the patent describes the advancement over the prior art. Past that, the written description simply mentions sending a confirmation of the executed transaction to the merchant and mobile device, a step which is not claimed. The details of what happens between initiation of the transaction and the confirmation are conventional so far as the patent is concerned.[4]

Walmart relies on excerpts from the prosecution history and specification in which the applicant uses "initiates and executes" or simply "executes." For example, Walmart cites to the Field of the Invention, in which the applicant explained the invention relates "to using mobile

---

[4] Walmart correctly notes the "merchant" and "customer" of the body are the same "merchant" and "customer" of the preamble, and Plaintiff does not dispute this. Walmart, however, provides no authority that a limiting preamble is an all-or-nothing proposition.

communication devices to execute a commercial transaction." Dkt. No. 60 at 3 (quoting '236 Patent at 1:10–14). The specification contains similar recitations elsewhere. *See, e.g.*, '236 Patent at 2:10–17 ("It is the general object of the present invention to allow a customer to use a mobile communications device to initiate and execute a transaction . . . ."); *id.* at 2:18–23 ("It is a general object of the present invention to allow a customer to use a mobile communications device to initiate and execute a transaction, which overcomes the aforementioned problems with using a credit or debit card by taking advantage of the prevalence of mobile communication devices and the communications abilities of mobile devices."); *id.* at 2:32–36 ("A mobile device can be used to initiate and execute a transaction with a merchant."); *see also id.* at 5:61–63, 6:4–7:4. And during prosecution, the applicant argued the "claimed invention executes transactions that are initiated by a customer on the customer's user device rather than by a merchant point of sale terminal." *Id.* (citing Dkt. No. 60-1 at MEC-WM-00000081).

Walmart, however, reads "executes" in these citations too strictly. Of course, it naturally follows from the recited steps that a commercial transaction which has been initiated will continue in some regard—perhaps successfully, perhaps not. After all, to "initiate" means to "start." This is the point of the invention: to allow commercial transactions to occur as they otherwise would, except to "reverse the direction of point of sale transaction initiation." *See* '236 Patent at 2:12–13. Thus, the applicant uses "executes" in the sense that some result will inherently flow from the initiation step, but Claim 1 does not require a specific result.

During the hearing, Walmart argued "conducting a transaction" must be limiting because it explains why the customer was using the mobile device. Hr'g Tr., Dkt. No. 108 at 25:5–10 ("If you cross out 'conducting a transaction', you have no answer to the question what is the customer using the mobile device for."). But there is no requirement that a preamble include a statement of

10

intended use. To the contrary, the preamble could have simply recited "a method comprising," which would leave Walmart in the same position of wondering toward what end the recited steps are directed. Of course, the body answers that question clearly by reciting what the specification describes as important and different from the prior art: "reversing the direction of point of sale transaction initiation." '236 Patent at 2:12–13; *see also id.* at [57] ("A mobile device [rather than a merchant's terminal] is used to initiate a point of sale transaction, wherein a merchant ID is sent to a payment processing server.").

The preambles are not limiting so far as "conducting a transaction" is concerned.

### B.      "merchant identifier" ('236 Patent, Claim 1 and dependent claims)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary.<br>Alternatively, "an identifier provided by a merchant that includes information sufficient to identify a terminal." | "a unique identifier associated with a merchant" |

The specification describes the invention as "initiat[ing] a point of sale transaction, wherein a merchant ID is sent to a payment processing server. Responsive to receiving a communication from the mobile device, the payment processing server requests transaction information from the merchant, wherein the merchant is identified based on the provided merchant ID." '236 Patent at [57]; *see also id.* at 2:32–47. With respect to FIG. 1, the disclosure explains:

> [t]he merchant ID number is a unique identifier associated with the merchant [and] can include any information to identify or communicate with the associated number. For example, a merchant ID can include a point-of-sale terminal ID to be used by the merchant to execute the transaction. In other embodiments, the merchant ID can include an e-mail address or a phone number associated with the merchant.

*Id.* at 5:63–6:3.

The parties dispute whether the "merchant identifier" must be uniquely associated with a

merchant. According to Walmart, "absent a unique identifier that allows 'the merchant' to be identified, . . . the claimed payment system runs the risk of routing payment to the wrong merchant." Dkt. No. 60 at 9. Plaintiff, however, contends that Walmart's construction improperly limits this term "to one specific type of identifier—'a unique identifier associated with a merchant.'" Dkt. No. 49 at 7. According to Plaintiff, "Claim 1 details three aspects of the merchant identifier: (1) it identifies and is associated with a merchant terminal; (2) it indicates a request to initiate a transaction with that merchant terminal; and (3) it does *not* indicate a transaction amount for the transaction." *Id*. Claim 1, stresses Plaintiff, does not require that the identifier be unique.

Based on the specification, the Court construes "merchant identifier" as "an identifier associated with a particular merchant." An "identifier" or "ID" in the context of this specification is of limited or no value if it does not identify a particular merchant with which the customer is intending to transact. As for Claim 1's additional limiting language, the Court does not need to construe "merchant identifier" to have features provided by the surrounding claim language. While Plaintiff correctly notes Claim 1 further limits "merchant identifier" within the scope of that claim, Dkt. No. 49 at 7, that is not the issue. Also, one merchant can have more than one merchant identifier, such as when multiple individual terminal IDs are associated with a single merchant.

**C.    "an appropriate financial institutions associated with the purchase account and the deposit account" ('236 Patent, Claim 10)**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Not indefinite. Plain and ordinary meaning. No construction necessary. | Indefinite. |

Walmart contends this term, which appears in dependent Claim 10, is indefinite for two reasons: (1) "appropriate" is subjective; and (2) the term has at least two reasonable, distinctive interpretations because it uses the singular article "an" with the plural noun "institutions." Dkt.

No. 60 at 15. Plaintiff, however, contends the claim itself "details with reasonable certainty which financial institutions are the appropriate ones: the institutions that receive the instructions to initiate the transaction." Dkt. No. 49 at 11. It cites several other cases in which this Court has found "appropriate" sufficiently definite. *Id.* at 11–12.

Concerning Walmart's first argument—that "appropriate" is indefinite—that word has a well-understood meaning to a lay person: "something that is right for the purpose." *appropriate*, https://www.yourdictionary.com/appropriate (last visited Jan. 10, 2022). Here, the purpose is executing a purchase transaction between the merchant and the customer and the intended financial institutions. Walmart suggests that meaning is already captured in the rest of the disputed language, which renders "appropriate" superfluous, but "[t]he preference for giving meaning to all terms . . . is not an inflexible rule that supersedes all other principles of claim construction." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016). Ultimately, "the construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243,1250 (Fed. Cir. 1998)).

Here, the "appropriate" financial institutions are those that correspond to the identifying information of the intended transaction. With respect to FIG. 2, for example, the patent describes how the mobile enablement center "interrogates the registry . . . to identify an appropriate payment processing server 110." '236 Patent at 7:43–45.[5] That identification is "based on the routing

---

[5] The patent describes *the payment processing server* 110, rather than the mobile enablement center 106, interrogating the registry 108 to identify an appropriate payment processing server 110. '236 Patent at 7:43–45. This is a clear a mistake because only the center 106 is shown as connected to the register. In fact, there appear to be other mistakes concerning these terms in the specification, as elsewhere the payment processing server is identified as "106" rather than "110." *Id.* at 7:35.

numbers or other identification information associated with each financial institution." *Id.* at 7:45–53. Thus, an "appropriate financial institution" is one that corresponds to the identifying information associated with the financial institution.

With respect to Walmart's second argument, the number of financial institutions is determined by the requirements of the transaction, and nothing in the specification requires more than one financial institution in all circumstances. Moreover, Walmart has the burden of showing indefiniteness, which is considered from the perspective of a skilled artisan, by clear and convincing evidence. *See Nautilus, Inc.*, 572 U.S. at 901 ("A patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."). Here, however, Walmart does not explain who such a skilled artisan is, *see* Dkt. No. 60 at 1, much less how one would (or would not) understand the term in the context of the specification. Given that shortfall in its analysis, Walmart has not met its burden of showing a skilled artisan would not understand the scope of this claim with reasonable certainty.

\* \* \*

The Court construes "an appropriate financial institutions associated with the purchase account and the deposit account" as "one or more corresponding financial institutions associated with the purchase account and the deposit account."

### D.    "mobile enablement center" ('236 Patent, Claim 11)

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Not indefinite and not subject to § 112, ¶ 6. "a platform to route outgoing messages from a mobile device to an appropriate payment processing server" | Subject to § 112, ¶ 6, and indefinite. Function: "route[] outgoing messages from the mobile devices to the appropriate payment processing server" Structure: "indefinite for lack of corresponding structure" |

14

Claim 11 recites using a "mobile enablement center" to identify an appropriate payment processing server associated with a financial institution. '236 Patent at 22:3–5. The patent describes the "mobile enablement center," with respect to FIG. 2, as "a platform that routes outgoing messages from the mobile devices 102 to the appropriate payment processing server 110." *Id.* at 7:17–19. Plaintiff urges that language for its construction, whereas Walmart contends § 112, ¶ 6 applies.

There is, of course, a rebuttable presumption that § 112, ¶ 6 does *not* apply because the term does not use "means." *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1348 (Fed. Cir. 2015). That presumption stands or falls according to whether *one of ordinary skill in the art* would understand the claim with the functional language, in the context of the entire specification, to denote sufficiently definite structure or acts for performing the function. *Id.* at 1349 (noting § 112, ¶ 6 does not apply when "the words of the claim are understood by persons of ordinary skill in the art to have sufficiently definite meaning as the name for structure"). Here, however, Walmart fails to explain who such a skilled artisan is, much less analyze the term from such a person's perspective. The Court must therefore conclude Walmart has not carried its burden of showing applicability of § 112, ¶ 6.

Moreover, even if the Court were to conclude § 112, ¶ 6 applies, the patent discloses sufficient structure for accomplishing Walmart's recited function. Both FIG. 1 and FIG. 4, which are the only two figures disclosing a "mobile enablement center," show the center in bidirectional communication with a register of payment processing servers. The patent explains that the center interrogates the register to:

> identify an appropriate payment processing server 110. For example a registry of
> payment processing servers 108 can include a listing of payment processing servers
> 110 based on the routing numbers or other identification information associated

> with each financial institution or based on coordinated new routing mechanism that may be mandated, devised or supervised by, for example, a standardization body, governmental body or consortium body of companies or leaders in the field.

'236 Patent at 7:43–53. Though simple enough to obviate the need for a flowchart, this nonetheless would constitute sufficient structure to overcome Walmart's indefiniteness challenge.

Regardless, because Walmart has not carried its burden of showing § 112, ¶ 6 applies, the Court construes "mobile enablement center" based on the definition set forth in the specification: "a platform that routes outgoing messages from the mobile devices to the corresponding payment processing server 110." *See id.* at 7:17–19.

### E.    "appropriate" ('236 Patent, Claim 11)

| Plaintiff's Construction | Defendant's Construction |
| --- | --- |
| Not indefinite. Plain and ordinary meaning. No construction necessary. | Indefinite. |

As noted *supra*, Claim 11 recites using a "mobile enablement center" to identify an "appropriate" payment processing server associated with a financial institution. Similar to its argument with respect to Claim 10, Walmart contends the use of "appropriate" renders Claim 11 indefinite because the specification does not distinguish an "appropriate" payment processing server from an inappropriate one. Dkt. No. 60 at 23–24.

For the same reasons set forth above, "appropriate" does not render this claim indefinite. In the context of this specification, an "appropriate payment processing server" is a server corresponding to the underlying identifying information in the transaction. Thus, the Court construes "appropriate" in this context as "corresponding."

16

F.   **"payment processing server" ('236 Patent, Claim 11); "payment processing server" ('058 Patent, Claim 1)**

| Plaintiff's Construction | Defendant's Construction |
|---|---|
| Plain and ordinary meaning. No construction necessary.<br>Alternatively, "software running on one or more computing devices connected to a network that is involved with processing payment." | "a platform that executes a transaction between a customer, a financial institution associated with the customer, and a merchant" |

Plaintiff contends a "'payment processing server' generally refers to software running on one or more computing devices connected to a network that is involved with processing payments." Dkt. No. 49 at 15 (citing '236 Patent at [57], 2:33–47). Walmart relies on allegedly definitional language from the specification identifying a payment processing server as "a platform that executes a transaction between a customer, a financial institution 116 associated with the customer and a merchant 104." Dkt. No. 60 at 24–25 (citing '236 Patent at 7:54–59) (identifying "databases maintained by Visa, MasterCard, American Express, etc." as examples of a payment processing server). Plaintiff criticizes Walmart's reliance on this excerpt as relating to a specific embodiment.[6]

Walmart's construction is better. Plaintiff's alternative construction lacks sufficient specificity, whereas Walmart's construction cites language directly from the specification. Plaintiff criticizes Walmart's approach as drawing from one embodiment that is not limiting, but the context of the passage—including its reference to well-known payment processors not otherwise relevant to the disclosure—shows this definition is not limited to just this embodiment.

---

[6] Although Plaintiff urges "no construction required," its briefing—and more specifically its assertion of what a "payment processing server generally refers to"—shows a dispute that must be resolved.

That said, a "payment processing server" is a server regardless of whether it is executing a transaction at any moment. Accordingly, the Court adopts a modified form of Walmart's construction: "a platform that can execute a transaction between a customer, a financial institution associated with the customer, and a merchant."

## V.    CONCLUSION

| Disputed Term | The Court's Construction |
|---|---|
| "A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:" (’236 Patent, Claim 1) | Not limiting. |
| "A method for conducting a transaction between a terminal and a customer by a payment processing server, the customer using a mobile devices, the method comprising" (’058 Patent, Claim 1) | |
| "merchant identifier" (Claims 1 and dependent claims) | "an identifier associated with a particular merchant" |
| "an appropriate financial institutions [sic] associated with the purchase account and the deposit account" (’236 Patent, Claim 10) | "one or more corresponding financial institutions associated with the purchase account and the deposit account" |
| "mobile enablement center" (’236 Patent, Claim 11) | "a platform that routes outgoing messages from the mobile devices to the corresponding payment processing server" |
| "appropriate" (’236 Patent, Claim 11) | "corresponding" |
| "payment processing server" (’236 Patent, Claim 11; ’058 Patent, Claim 1 and dependent claims) | "a platform that can execute a transaction between a customer, a financial institution associated with the customer, and a merchant" |

The Court **ORDERS** each party not to refer, directly or indirectly, to its own or any other party's claim construction positions in the presence of the jury. Likewise, the Court **ORDERS** the parties to refrain from mentioning any part of this opinion, other than the actual positions adopted

by the Court, in the presence of the jury. Any reference to claim construction proceedings in the jury's presence is limited to informing the jury of the positions adopted by the Court.

**SIGNED this 25th day of January, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE