**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| Mobile Equity Corp.,<br><br>   *Plaintiff*,<br><br>v.<br><br>Walmart Inc.,<br><br>   *Defendant*. | Civil Action No.: 2:21-CV-00126-JRG-RSP<br><br>JURY TRIAL DEMANDED<br><br>████████████ |

**MOBILE EQUITY CORP.'S RESPONSE TO DEFENDANT
WALMART INC.'S MOTION TO COMPEL RESPONSE TO INTERROGATORIES
NO. 19, 22, AND 23 AND RELATED REQUESTS FOR ADMISSION**

## I.    INTRODUCTION

Mobile Equity Corp. (MEC) hereby responds to Walmart's Motion to Compel Response to Interrogatories 19, 22, and 23 and Related Requests for Admission.  (Dkt. No. 135).  MEC has properly responded to Walmart's interrogatories and requests for admission.  Generally, Walmart asks several interrogatories and requests for admission directed to whether "QRUZ" practices the asserted patents. QRUZ is a marketing term that MEC used to describe all of its technologies, including technologies not credibly at issue in this case.  If a customer had purchased a QRUZ product from MEC, MEC would have required six-to-nine-months to development and integrate a product for that customer.  Multiple MEC documents and witness testimony confirm this reality. MEC never sold a QRUZ mobile payment system or licensed the patents, and discussions with potential customers never reached the stage where terms were offered, much less accepted. Walmart moves to compel discovery responses that assume a reality that does not exist and have moved to compel responses that MEC cannot provide beyond what it has already provided.

Walmart's remaining issues—with Interrogatory Nos. 19 and 22—are similarly resolved as interrogatories that have already been answered.

## II.    ARGUMENT

### A.    MEC's Responses to the RFAs Raised and Interrogatory No. 23 Are Sufficient Under the Law

Walmart's interrogatory 23 asks (and its RFAs ask similar questions):

> For each of the asserted claims, identify each limitation that each mEquity and QRUZ product does not practice and explain in detail why MEC asserts that each limitation is not met.

Again, mEquity and QRUZ are marketing terms for a technology solution that must be built for each customer individually according to customer specifications. MEC has had no customers and

1

never built a mobile payment system for a customer. Thus, Walmart's interrogatory assumes facts that are not true. MEC appropriately responded to this interrogatory.

MEC clearly objected that these questions would be very burdensome to answer, would require expert analysis, and were not relevant. MEC has not taken the position that it contends that its products practice. This position was explained in MEC's Response to Walmart's Interrogatory No. 1, which was incorporated into MEC's response to Rog. No. 23. MEC took that position understanding that it was not raising lost profits as an issue in this case, which it has not. In not contending its products practice, MEC did not take a position on whether its products actually practice / infringe, which MEC, again, explained in its response to Rog. No. 1.

Walmart's Motion otherwise raises novel arguments that do not stand up to scrutiny. For example, Walmart claims that it needs to know whether MEC's products infringe because then it would assert they are non-infringing alternatives. This is not an argument that counsel have ever seen raised in a patent case. Walmart has had MEC's source code and has not asserted that MEC's products are non-infringing alternatives in response to MEC's interrogatory on Walmart's non-infringing alternatives. Walmart also claims it needs the response for a *Georgia Pacific* factor, but that argument does not square with the positions taken by MEC's damages expert. Finally, Walmart asserts it needs MEC's position on non-obviousness, but Walmart separately requested that position in an interrogatory response—that it does not contest.

## 1. Walmart's Cases Do Not Apply

None of the cases Walmart provides are from this district, and Walmart's cases involve discovery requests in which the patentee *contended in the lawsuit* that its products practiced the asserted claims. But MEC has not made that contention here.

2

**VI.    Disclosure Under P.R. 3-1(f)**

MEC does not identify any such disclosure under Patent Local Rule 3-1(f).

For example, the *PersonalWeb* case involved Local Rule 3-1 in N.D. Cal. that required a patentee to provide a claim chart for its own product if the patentee contended that its product practiced the claims. *PersonalWeb Techs., LLC v. Google Inc.*, No. C13-01317 EJD (HRL), 2014 U.S. Dist. LEXIS 116140, at *16-18 (N.D. Cal. Aug. 19, 2014). But there is no analogous rule in this District, and MEC did not identify its own actions as practicing any claims of the Patents-in-Suit in its infringement contentions.

The *Blast Motion* and *Wi-LAN* cases likewise involved a patentee who contended, per that Court's local rules disclosure, that its own products practiced the asserted claims. *Blast Motion, Inc. v. Zepp Labs, Inc.*, No. 3:15-cv-00700-JLS-NLS, 2016 U.S. Dist. LEXIS 192741, at *2–3, *11–13 (S.D. Cal. Mar. 2, 2016); *Apple Inc. v. Wi-LAN Inc.*, No. 14cv2235-DMS (BLM), 2018 U.S. Dist. LEXIS 19565, at *3 (S.D. Cal. Feb. 6, 2018). Again, that is not the situation here— MEC does not contend that it practices any claim of the Patents-in-Suit. And, unlike these cases, MEC does not have access to the inventor of the Patents-in-Suit. Mr. Afana passed away prior to the filing of this suit.

The *McKesson* case only involved only the identity of the *names* of products that the patentee *contended* practiced the asserted patent. *McKesson Info. Sols. LLC v. Epic Sys. Corp.*, 242 F.R.D. 689, 692-93 (N.D. Ga. 2007). MEC does not contend in this case that it practices any claim of the Patents-in-Suit, and Walmart's requests seek more than simply identification of product names—it seeks analysis or admission on the ultimate expert opinion of whether MEC practices the claims. That is not proper fact discovery.

3

MEC has provided its corporate knowledge on the discovery that Walmart has sought. It has produced all of its documents. It has produced all of its source code. And it has produced its Chief Technology Officer for a deposition. Walmart has long had more than enough information from which its experts can determine if MEC has practiced the claims of the Patents-in-Suit. Walmart cannot force MEC to take positions in this case that MEC is not taking and has no corporate knowledge on.

**B.      MEC Has Provided a Complete Answer to Rog. No. 22**

Walmart's Interrogatory No. 22 asks questions regarding the timing of MEC's "commercial offering[s]." As the Court is aware "commercial offering" is a term of art in patent cases. MEC's answer provides objections, provides its answer, and incorporates MEC's answer to Interrogatory No. 26 by reference. Contrary to Walmart's suggestion, MEC did not "refuse to respond."

Walmart does not appear to have appreciated MEC's incorporation of its answer to Walmart Rog. No. 26. That interrogatory asks MEC to describe its "commercial offerings." As that answer makes clear MEC is not aware of having commercial offerings. Walmart does not contest MEC's answer to Interrogatory No. 26. MEC is therefore baffled by Walmart's issue on Interrogatory No. 22. Likely, this is simply an issue of Walmart's failure to properly meet and confer on this issue (discussed below). At any rate, MEC stands by its answer.

**C.      MEC Has Provided a Complete Answer to Rog. No. 19**

For Walmart's Interrogatory No. 19, MEC provided a detailed objection directed to the what Walmart meant by "use." MEC then answered, incorporating its answers to Interrogatory Nos. 5 (licenses (and other issues)), 8 (agreements to convey rights related to the patents), 15 (sales or offers for sale), and 18 (licenses), which covered the majority of the topics requested in this

4

interrogatory. This, respectfully, highlights how Walmart has asked many broad interrogatories that overlap.

Subject to its objections, MEC then provided specific examples of users MEC was aware of. Walmart's Motion asserts that MEC should have also provided information from the "iOS store," but this is never an argument Walmart wrote to MEC about before its Motion (discussed below), and MEC is still investigating this issue. Generally, MEC does not understand that potential downloads are responsive to this interrogatory, but, again, MEC is investigating.

**D.      Walmart Did Not Meaningfully Confer Prior to Filing This Motion**

Walmart never raised any issue with the interrogatories at issue until three days before the close of fact discovery. The RFAs were not raised, in any way, until after 5 p.m. two days before the close of fact discovery. MEC has copied (below) all that Walmart wrote to MEC on the issues it now raises in this motion.

> RFAs: "[p]lease be prepared to discuss <u>MEC's inappropriate responses to its RFAs, including its basis for its failure to admit, its inappropriate reliance on 'expert' objections,</u> and its answers which are not intelligible."

> Interrogatory No. 19: This interrogatory seeks identification of those who purchased, licensed, or used any QRUZ or mEquity product and a description of agreements. <u>MEC's response as to licenses and purchases is incomplete for the reasons already stated. MEC's refusal to identify users of its products is an improper narrowing of this Interrogatory</u>. Please confirm MEC will supplement its response to this Interrogatory.

> Interrogatory No. 22: This interrogatory seeks information regarding when MEC started and stopped offering its products, as well as the reasons for discontinuation. <u>MEC has failed to respond to the scope of this Interrogatory</u>. Please confirm MEC will supplement its response to this Interrogatory.

> Interrogatory No. 23: This interrogatory seeks an identification of any limitation(s) that are not practiced by mEquity and/or QRUZ products. <u>MEC has failed to provide an appropriate response to this interrogatory</u>. Please confirm that MEC will supplement its response to this Interrogatory.

5

Many other issues were also "raised" by Walmart on those days, including 15 other interrogatories and miscellaneous discovery issues, most with similarly little detail. MEC met and conferred at 6 p.m. the next day (Thursday) on these issues. On that call, Walmart's counsel began rattling off a prepared speech raising issues MEC had never heard before and asking MEC to confirm its position. Walmart, as it has done selectively, required a reporter to be on the call, and MEC's understanding is that this prepared speech was so that Walmart could claim MEC had heard these issues before its motion.

On that Thursday night, MEC, in real time, tried to understand what the issues Walmart was even raising were, since it had never heard them before, and then tried to understand how Walmart was grouping the issues, which again had never been presented in that way before. MEC does not recall the RFAs being discussed in any specificity—they were just mentioned as a list of numbers—or discussing interrogatory no. 22 at all. Walmart's Motion includes yet more issues that MEC is seeing for the first time, including issues directed to "user accounts" and the iOS store.

## III.   CONCLUSION

For the foregoing reasons, MEC respectfully asks that the Court deny Walmart's Motion to Compel (Dkt. No. 135) and for any other relief the Court considers just and proper.

6

Dated: February 9, 2022

/s/ William E. Davis, III

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Plaintiff Mobile Equity Corp.***

7

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document and all attachments thereto are being

filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being

served this February 9, 2022 on all counsel of record, each of whom is deemed to have consented

to electronic service.  L.R. CV-5(a)(3)(A).

*/s/ Rudolph Fink IV*
Rudolph Fink IV