# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| Mobile Equity Corp., <br><br> *Plaintiff*, <br><br> v. <br><br> Walmart Inc., <br><br> *Defendant*. | Civil Action No.: 2:21-CV-00126-JRG-RSP <br><br> JURY TRIAL DEMANDED |

# MOBILE EQUITY CORP.'S
# RESPONSE TO WALMART'S *DAUBERT* MOTION
# MOTION TO STRIKE INFRINGEMENT OPINIONS OF DR. JAKOBSSON FOR
# <u>APPLYING INCORRECT CLAIM CONSTRUCTIONS</u>

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................... ii

I. INTRODUCTION ........................................................................................................ 1

II. APPLICABLE LAW .................................................................................................... 2

III. ARGUMENT ................................................................................................................ 2

    A. Dr. Jakobsson Correctly Applied the "In Response To" Claim Language ............. 2

        1. Walmart Waived Its "In Response To" Argument ........................................... 2

        2. Walmart's New Construction of "In Response To" is Wrong .......................... 3

        3. Dr. Jakobsson's Report Correctly Applied the Plain-and-Ordinary Meaning of "In Response To" ........................................................................................ 6

    B. Dr. Jakobsson Correctly Applied the Court's Construction of "Payment Processing Server" ............................................................................................... 11

        1. The Jakobsson Report Did Not Exclude a Preferred Embodiment ................ 12

        2. Walmart's New Construction of "Server" is Waived, and Whether Certain Software Components Constitute a "Server" is a Fact Question, Not a *Daubert* Issue ................................................................................................................ 13

        3. Dr. Jakobsson's Opinions "Payment Processing Server" and "Mobile Enablement Center" Opinions Are Consistent ............................................... 14

    C. Should the Court Reconstrue the Claims, MEC Seeks Leave to Supplement Dr. Jakobsson's Infringement Report .......................................................................... 14

IV. CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

*Applied Med. Res. Corp. v. United States Surgical Corp.*
    448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006) ........................................................................... 14

*Calcar, Inc. v. Am. Honda Motor Co.*
    651 F.3d 1318 (Fed. Cir. 2011) ......................................................................................... 5, 6

*Duncan Parking Techs., Inc. v. IPS Grp., Inc.*,
    914 F.3d 1347 (Fed. Cir. 2019) ............................................................................................ 3

*Elbit Sys. Land v. Hughes Network Sys., LLC*
    2017 U.S. Dist. LEXIS 94495 (E.D. Tex. June 20, 2017) .................................................... 3

*Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*,
    2017 U.S. Dist. LEXIS 183216, (E.D. Tex. Nov. 4, 2017) .................................................. 2

*Hill-Rom Servs. v. Stryker Corp.*
    755 F.3d 1367 (Fed. Cir. 2014) .......................................................................................... 12

*Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*
    2019 U.S. Dist. LEXIS 32575 (E.D. Tex. Feb. 28, 2019) .................................................... 2

*Music Choice v. Stingray Dig. Grp. Inc.*,
    2019 U.S. Dist. LEXIS 228326 (E.D. Tex. Nov. 19, 2019) ................................................. X

*Ultravision Techs., LLC v. Govision LLC*
    2021 U.S. Dist. LEXIS 99142, (E.D. Tex. May 25, 2021) ............................................. 2, 12

**I.     INTRODUCTION**

Walmart cloaks a factual dispute on infringement—which is subject to the protections of Rule 56 and the Seventh Amendment—as a legal questions of claim construction. Walmart claims that Dr. Jakobsson's Report should be struck for failing to follow constructions that the Court never entered, that Walmart never raised at the *Markman* phase of the case, and that Dr. Jakobsson never had an opportunity to address. Walmart then seeks judgment based on its new theories, without affording MEC any of the process protections under the law. Walmart has waived these new arguments by failing to timely raise them, and the Court can deny the Motion on that ground.

Walmart's Motion also fails on the merits. For the "in response to" term, the Court did not construe that term and it is undisputed that Dr. Jakobsson's Report did not re-define the term. Walmart's new construction also conflicts with the intrinsic evidence, which Walmart's Motion addresses. Ultimately, Walmart raises a factual issue—whether the evidence shows that a message is received "in response to" another message. That is a question of which expert view of the evidence to credit, not a methodological *Daubert* issue.

The same is true for the "payment processing server" terms. It is undisputed that Dr. Jakobsson's Report states that it applied the Court's construction of that term—"a platform that can execute a transaction between a customer, a financial institution associated with the customer, and a merchant." Walmart never asked for a sub-construction of the term "server" (construed as a "platform")—to limit it to a single software or hardware component—or asked the Court to limit a "payment processing server" to the examples in the specification (*e.g.*, American Express). Both of those view of the claims are incorrect in view of the intrinsic record (which Walmart, again, ignores). And whether one box or multiple boxes from Walmart's internal diagrams constitute a "server" is a question for a jury to resolve, not an issue for the Court on claim construction.

Walmart may disagree with Dr. Jakobsson's opinions. But a jury is entitled to hear them.

1

## II.  APPLICABLE LAW

This Court is familiar with claim-construction-based challenges to an expert. *Ultravision Techs., LLC v. Govision LLC*, 2021 U.S. Dist. LEXIS 99142, at *5-7 (E.D. Tex. May 25, 2021). "Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role . . . ." *Id.* at *6.

## III.  ARGUMENT

### A.  Dr. Jakobsson Correctly Applied the "In Response To" Claim Language

Dr. Jakobsson did not construe the term "in response to," and Walmart does not point to any portion of his Report where Dr. Jakobsson allegedly did so. Walmart's new claim-construction argument is waived. It is also wrong on the merits. And, as a review of the Report shows, Dr. Jakobsson provided a reliable analysis. Whether one event occurs "in response to" another event is a prototypical question of fact for a jury, not a question of law for the Court.

#### 1.  Walmart Waived Its "In Response To" Argument

Walmart claims that Dr. Jakobsson did not apply the Court's construction of "in response to." But the Court did not construe the term "in response to." And Walmart waived its right to spring up at summary-judgment with a new construction of "in response to."

"This Court has stated that a 'failure to timely raise . . . claim construction arguments should ordinarily result in waiver of the arguments.'" *Music Choice v. Stingray Dig. Grp. Inc.*, 2019 U.S. Dist. LEXIS 228326, at *13 (E.D. Tex. Nov. 19, 2019) (quoting *Ericsson Inc. v. TCL Commun. Tech. Holdings, Ltd.*, 2017 U.S. Dist. LEXIS 183216, at *15 (E.D. Tex. Nov. 4, 2017)). "[W]here a court has prescribed specific claim construction procedures and the parties have proceeded towards trial in reliance thereon, the court has discretion to preclude parties from injecting new claim construction theories on the eve of trial." *Id.* (quoting *Intellectual Ventures II LLC v. BITCO Gen. Ins. Corp.*, 2019 U.S. Dist. LEXIS 32575, at *3 (E.D. Tex. Feb. 28, 2019))

2

(internal quotation and citation omitted); *Elbit Sys. Land v. Hughes Network Sys., LLC*, 2017 U.S. Dist. LEXIS 94495, at *22 (E.D. Tex. June 20, 2017) (finding claim-construction arguments raised in summary judgment motion were waived "by not raising them earlier") (collecting authority).

This is the type of case in which waiver applies. Walmart does not address why it did not raise this issue earlier in the case, and the evidence shows that Walmart certainly could have. Walmart identified "in response to" terms in its Patent Rule 4-1 disclosures. Exh. 1 (truncated).

I. **Proposed Claim Terms Requiring Construction in U.S. Pat. No. 8,589,236**

| Claim Term, Clause or Phrase |
|---|
| "in response to" |
| "receiving transaction information from the merchant terminal in response to the transaction information request" |

II. **Proposed Claim Terms Requiring Construction in U.S. Pat. No. 10,535,058**

| Claim Term, Clause or Phrase |
|---|
| "receiving, at the payment processing server, transaction information from the terminal in response to the transaction information request" |

In its Rule 4-2 disclosures, MEC proposed that each of these terms carried their plain-and-ordinary meanings and did not require construction. Exh. 2, at 3, 8. Walmart then dropped the "in response to" terms. *See* Exh. 3 (Walmart's Rule 4-2 disclosures); *see also* Dkt. 71-1 (Joint Claim Construction Chart) (omitting "in response to" terms). Despite forfeiting this issue, Walmart now claims that Dr. Jakobsson did not follow the Court's construction of "in response to." But the Court did not construe that term—because Walmart dropped it. The issue is waived.

        **2.**        **Walmart's New Construction of "In Response To" is Wrong**

Walmart's new construction—to exclude a "trigger" at the terminal—is also incorrect. The MEC Patents expressly discloses embodiments that Walmart excludes from the scope of the claims. *See, e.g., Duncan Parking Techs., Inc. v. IPS Grp., Inc.*, 914 F.3d 1347, 1364 (Fed. Cir. 2019) ("[A] claim construction that excludes the preferred embodiment is highly disfavored.").

3

The Patents disclose, for example, that a terminal has human triggers to send the transaction information to the server, including that "the merchant can enter the total purchase amount on a point-of-sale terminal's keypad" to send the transaction information to the server.

| MEC Patent Figures | Accompanying Text |
|---|---|
| Send Transaction Information Request To A Merchant 204 → Receive Transaction Information From A Merchant 206<br><br>Figure 2 (truncated) | In one embodiment, the payment processing server 110 sends 204 a request for transaction information to the merchant 104 associated with the received merchant ID. . . . .<br><br>The merchant 104 can provide transaction information to send to the payment processing server 110. . . . ***In one embodiment, the merchant can enter the total purchase amount on a point-of-sale terminal's keypad***. . . . The payment processing server 110 receives 206 transaction information from the merchant 104. . . .<br><br>('236 Patent at 7:64–8:31) (emphasis added) |

*See also* '236 Patent, Fig. 5, 14:1–16 ("Responsive to the request, the merchant can send transaction information to the payment processing server. . . . In one embodiment, the merchant can enter the total purchase amount on a point-of-sale terminal's keypad.").

The specification also discloses that the communications between the server and the merchant can include formats that involve a "trigger" at the merchant terminal—the transaction information request can be in the form of "an SMS message, an e-mail message etc to a phone number or an email address." '236 Patent at 8:1–4. The server can then receive transaction information in response to that message, even if there is a "█████████████████████████ █████████," Mot. at 1, such as a send button to transmit that data. And, as anyone who has sent an email and text message knows, hitting the send button "█████████████." *Id.* But, when the server receives the transaction information, it was received in response to the request.

The claim language also shows that Walmart's construction is incorrect. Walmart rewrites the claims to be terminal-focused. *See, e.g.*, Mot. at 6 ("████████████████████████████

4

██████████████████████████████████████████████████████████████████████

████████████████."). But the claims do not focus on what happens at the <u>terminal</u> "in response to" <u>receiving</u> the transaction information request. They focus on the perspective of the <u>server</u> and what it receives in response to <u>sending</u> the transaction information request: a server "send[s] . . . a transaction information request to the merchant terminal associated with the merchant identifier" and "receiv[es] transaction information from the merchant terminal in response to the transaction information request . . . ." *See, e.g.*, '236 Patent, claim 1. The intrinsic record thus points in same direction—focusing on what the <u>server</u> receives in response to sending message, without regard for what intervening events might happen at the terminal.

Instead of addressing the intrinsic evidence, Walmart relies on the Federal Circuit's decision in *American Calcar*. Mot. at 8 (citing *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 651 F.3d 1318, 1340 (Fed. Cir. 2011). *American Calcar* does not support Walmart's exclusion of a terminal-side "triggering" event from the scope of the claims for three reasons.

<u>First</u>, the claim in *American Calcar* was substantively different than the claims here. The *American Calcar* claim recited a processing element for (1) "determining a vehicle condition for which a selected service of the vehicle is needed" and (2) "identifying one of the plurality of providers in response to the vehicle condition." 651 F.3d at 1324. The Court found that this language "suggest[ed] that when a vehicle condition is detected, the processing element identifies a provider automatically as opposed to requiring further user interaction." *Id.*

The claims here contemplate that there may be user interaction at the terminal. That is because they focus on the server—the server sends a transaction information request and receives, in response to that request, the transaction information. The claims allow for user interaction at the terminal (which the server is agnostic to), so long as the server receives the transaction

5

information in response to the server sending the transaction information request.

Second, the specification here is the opposite of the specification in *American Calcar*. There, "the specification fail[ed] to disclose any embodiment that requires any type of user interaction prior to identification of a service provider." 651 F.3d at 1340. Here, the specification discloses embodiments in which there is user interaction at the terminal.

Third, the *American Calcar* patentee expressly distinguished prior art that taught "a POS transaction [that] is *in response to a vehicle renter's selection of a service* shown on a display, *rather than in response to a vehicle condition determined by a processor*, . . . ." 651 F.3d at 1340 (emphasis in opinion). Walmart has not pointed to any analogous prosecution history here. And, again, the specification discloses embodiments in which there is the same type of the terminal-based "trigger" that Walmart contends shows noninfringement.

The intrinsic evidence shows that Walmart's new construction is wrong and its extension of *American Calcar* is unsupported and misplaced. *See, e.g.*, *Optis Wireless Tech., LLC v. Huawei Device Co.*, No. 2:17-cv-123-JRG-RSP, 2018 U.S. Dist. LEXIS 7711, at *115 (E.D. Tex. Jan. 18, 2018) (rejecting similar attempt to invoke *American Calcar* to narrow the term "in response to" to mean "the second event occurs in reaction to the first event and no other event may intervene, or have any impact whatsoever on, the occurrence of the second event"); Mot. at 7 (arguing for "direct causality" and claiming a "manual input by a user" at the terminal falls outside the claims).

### 3. Dr. Jakobsson's Report Correctly Applied the Plain-and-Ordinary Meaning of "In Response To"

The evidence shows that Dr. Jakobsson reliably arrived at the opinion that the ▮▮▮▮▮ ▮▮▮▮▮ is received "in response to" the ▮▮▮▮▮▮▮▮▮▮. The Motion does not contest that the ▮▮▮▮▮▮▮▮▮▮ is a "transaction information request" or that the ▮▮▮▮▮▮▮▮ contains "transaction information." The Motion only challenges the "in response to" element.

6

As Dr. Jakobsson recounts, Walmart's internal flow diagrams (created before this lawsuit) repeatedly show that the Walmart's server receives ███████████████ in response to ████████████████. *See, e.g.*, Report, at ¶¶ 196, 340–355, 420–23, 449.  For example, the three diagrams below show the steps of the ████████████████.  In each diagrams, ████████████████████████████████████████████████████████████████████████████████████████████.[1]



Walmart's internal documents are replete with diagrams showing the ████████████████████████████████████████████.  *See also* Exh. 7 (345035058.png) (showing "████████████████████████████████████████████████████████████████"); Exh. 8 (453989897.png) (same); Exh. 9 (336480374.png) (showing ████████████████████████████████████████); Report, at ¶¶ 340–55 (discussing diagrams).

---

[1] Exh. 4 (240019865.png) (truncated, highlighted, cleaned up); Exh. 5 (262784688.png) (truncated, highlighted, cleaned up); Exh. 6 (582751286.png) (truncated, highlighted, cleaned up).

These diagrams show that the ▬▬▬ is received in response to the ▬▬▬, as Dr. Jakobsson opines. *See, e.g.*, Report, at ¶ 422. Indeed, while Walmart now attempts to separate the ▬▬▬, Walmart's system is called "▬▬," which means "▬▬▬." *Id.* at ¶ 135 (emphasis added). That underscores the causal link between the ▬▬▬.

In contrast, none of the above diagrams show the alleged "trigger" that Walmart claims is so important to the software that it warrants striking Dr. Jakobsson's entire report. That is expected because the server is agnostic to the alleged "trigger." The relevant component (called ▬ below) is ▬▬▬ as Walmart's source-code expert (Dr. Krein) testified.



Exh. 10 (Krein Depo.), at 85:8–86:11. A reasonable jury could thus credit Dr. Jakobsson's opinion that Walmart's "▬▬▬." Report, at ¶ 422.

A reasonable jury could also find that the message structure shows that the server ▬▬▬, as Dr. Jakobsson explains (and Walmart ignores). Report, at ¶¶ 342, 419–423. ▬▬▬

8



*See, e.g.*, Report, at ¶ 419–23.

9

███████████████████████████████████████████████████████████

████████████████████████████████████████████████. *See id.*

Walmart's Motion does not address this evidence.  It instead only focuses ████████

████████████████████████████████████████████████████████████

████████████████. This argument fails.

The witness testimony and source code shows, consistent with the above (unaddressed) evidence, a causal link between ████████████████████████████████████. This evidence, as Dr. Jakobsson explains, ████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████." Report at ¶ 351; *see also id.* at ¶¶ 348–55. ████████████████████████████████████████████████████

████████████████████████████. *See id.* at ¶¶ 343–55. ████████████

████████████████████████████████████████████████████████████

████████████████████████████████. *See id.*

████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████

Thus, while Walmart asserts that



Finally, Walmart's "trigger" theory is not a basis to strike Dr. Jakobsson's Report. As detailed above, Walmart's source code expert confirmed that ▮▮▮▮▮▮▮▮▮▮ And Walmart's theory contradicts the intrinsic evidence—which discloses a "trigger" at the terminal in the embodiments.

Walmart's claim that ▮▮▮▮▮▮ may never occur likewise contradicts the intrinsic record (as detailed above). It also proves too much. Any message (*e.g.*, an email or text message) may never receive a message in response. Once a message in response arrives, however, a person of skill in the art (as well as a layperson) would understand that the incoming message was received "in response to" the prior message—and not exclusively "in response to" the other user hitting "send." That understanding of "in response to" is how MEC's Patents teach the invention, and it was reliable for Dr. Jakobsson to apply that analysis in his Report. Walmart is free to cross examine Dr. Jakobsson. But it is not free to withhold his testimony from the jury.

### B. Dr. Jakobsson Correctly Applied the Court's Construction of "Payment Processing Server"

It is undisputed that Dr. Jakobsson's Report states that he is applied the Court's construction of this term—"a platform that can execute a transaction between a customer, a

11

financial institution associated with the customer, and a merchant." Report, at ¶ 406. Walmart simply disagrees with Dr. Jakobsson's conclusions on infringement, not the construction Dr. Jakobsson applied. That attack goes to the fact issue on infringement, not a claim-construction issue for a *Daubert* Motion. Each of Walmart's arguments lack merit, as detailed below.

### 1. The Jakobsson Report Did Not Exclude a Preferred Embodiment

Walmart does not point to any paragraph in Dr. Jakobsson's report where it construes "payment processing server" to exclude a preferred embodiment. Walmart does not point to any statement in which American Express (or a similarly situated entity) is *excluded* from the scope of the claims. Walmart instead argues that Dr. Jakobsson was *required* to *limit* the "payment processing server" to American Express's computers—and not include Walmart's computers. But that was not the Court's construction. And it has the law backwards.

The Patents disclose that "[e]xamples of a payment processing servers 110 include databases maintained by Visa, MasterCard, American Express, etc." '236 Patent at 7:54–64. Walmart did not seek to limit the "payment processing server" term to those examples, and it would have been improper to do so. *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("[T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.") (citation omitted). And that American Express is one example of a "payment processing server" in the specification does not mean that Walmart's server cannot be a "payment processing server." Again, that would improperly limit the claims to the disclosed examples.

This case is thus different than *Ultravision* case on which Walmart relies. There, the expert actually narrowed the Court's construction of a term such that the construction "wouldn't cover" the preferred embodiment. 2021 U.S. Dist. LEXIS 99142, at *15-16 (E.D. Tex. May 25, 2021). That did not happen here. Dr. Jakobsson pointed to Walmart's server—instead of American

12

Express—as meeting the claim limitations.  But that did not exclude American Express from the scope of the claims; it simply means that Walmart's system <u>also</u> falls within the scope of the claims, as construed.  There is no *Ultravision* issue.

### 2. Walmart's New Construction of "Server" is Waived, and Whether Certain Software Components Constitute a "Server" is a Fact Question, Not a *Daubert* Issue

Like Walmart's new construction of "in response to," it waived its new construction of "server" by failing to raise the issue at the *Markman* stage of the case.  Walmart never raised the proper construction of the term "server" during the *Markman* stage, let alone claimed that it had to be a single box on a Walmart diagram (*e.g.*, a single software or hardware component).  Indeed, Walmart prevailed on its construction that the "server" is a "platform."

Ultimately, whether Walmart's back-end components are a "server" (or "platform") is a question of fact for the jury, not a question of claim construction.  Indeed, it is undisputed that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

This view is consistent with the MEC Patents.  As Walmart highlights, the Patents teach that "[e]xamples of a payment processing servers 110 include databases maintained by Visa, MasterCard, American Express, etc." '236 Patent at 7:54–64.  This disclosure shows that a "server" can includes multiple components that may be distributed—it can include databases (in the plural) maintained by an entity, and not just one single software or hardware component.  And the back-end systems ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Walmart is free to

13

examine Dr. Jakobsson at trial; it is not entitled to striking his opinions based on a factual disagreement masquerading as a claim-construction issue.

### 3. Dr. Jakobsson's Opinions "Payment Processing Server" and "Mobile Enablement Center" Opinions Are Consistent

Walmart is also wrong that Dr. Jakobsson's opinions regarding the claimed "mobile enablement center" and "payment processing server" are inconsistent and requiring striking Dr. Jakobsson's entire opinions. Dr. Jakobsson opines that "▇" constitutes a "mobile enablement center" in claim 11 of the '236 Patent and—for different claims—alleges that "▇" is a component of Walmart's "payment processing server." *See, e.g.*, Report, at ¶¶ 435, 446. There is no inconsistency in those opinions because ▇ performs multiple operations within Walmart's system. Although Walmart did not raise at the claim-construction phase whether the "mobile enablement center" and "payment processing server" elements require physically distinct structures (and thus waived the issue), it is established law that one component can practice two different claim limitations. *See, e.g.*, *KAIST IP US LLC v. Samsung Elecs. Co.*, 439 F. Supp. 3d 860, 896 (E.D. Tex. 2020) ("Federal Circuit law is clear that 'the use of two terms in a claim requires that they connote different meanings, not that they refer to two different structures.'") (quoting *Applied Med. Res. Corp. v. United States Surgical Corp.*, 448 F.3d 1324, 1333 n.3 (Fed. Cir. 2006)). As with the balance of Walmart's "server" challenges, Walmart's argument reduces to a box-drawing exercise on what is a "server" in Walmart's documents. That is a factual question for a jury, not a claim-construction question for the Court.

### C. Should the Court Reconstrue the Claims, MEC Seeks Leave to Supplement Dr. Jakobsson's Infringement Report

Walmart's *Daubert* theories are based on new claim-construction positions that Dr. Jakobsson did not have an opportunity to address in his Report. Should the Court further construe the claims, MEC requests leave to supplement Dr. Jakobsson's expert report to address

14

infringement under the Court's constructions.  The remedy is not judgment on the merit based on issues that Walmart waited until after the close of fact discovery to raise.

## IV. CONCLUSION

For the foregoing reasons, MEC requests that the Court deny Defendant's Motion.

Dated: March 14, 2022

/s/  Christian J. Hurt

William E. Davis, III
Texas State Bar No. 24047416
bdavis@davisfirm.com
Christian J. Hurt
Texas State Bar No. 24059987
churt@davisfirm.com
Rudolph "Rudy" Fink IV
Texas State Bar No. 24082997
rfink@davisfirm.com
Ty Wilson
Texas State Bar No. 24106583
twilson@davisfirm.com
**THE DAVIS FIRM PC**
213 N. Fredonia Street, Suite 230
Longview, Texas 75601
Telephone: (903) 230-9090
Facsimile: (903) 230-9661

***Counsel for Plaintiff Mobile Equity Corp.***

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document and all attachments thereto are being filed electronically in compliance with Local Rule CV-5(a).  As such, this document is being served this March 14, 2022 on all counsel of record, each of whom is deemed to have consented to electronic service.  L.R. CV-5(a)(3)(A).

/s/ Christian Hurt
Christian Hurt

15

