IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE EQUITY CORP., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Case No. 2:21-cv-00126-JRG-RSP |
| WALMART INC., | § § § | |
| *Defendant*. | § | |

**REPORT AND RECOMMENDATION**

Before the Court are cross-motions for summary judgment pursuant to 35 U.S.C. § 101 with Defendant Walmart Inc. seeking summary judgment that the asserted claims are ineligible under § 101, **Dkt. No. 199**, and Plaintiff Mobile Equity Corp. seeking summary judgment that the asserted claims are eligible under § 101. **Dkt. No. 202**.

**I.  Background**

On April 7, 2021, Mobile Equity filed the present suit alleging Walmart infringes U.S. Pat. Nos. 8,589,236 (the "'236 Patent") and 10,535,058 (the "'058 Patent"). The '236 Patent and the '058 Patent share a common specification and relate to "electronic commerce and more particularly to using mobile communication devices to execute a commercial transaction." Dkt. No. 128 at 1 (quoting '236 Patent at 1:12-14; '058 Patent at 1:14-16).

**II.  Legal Standard**

Pursuant to § 101, "Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." "A claim falls outside § 101 where (1) it is directed to a patent-ineligible concept, *i.e.*, a law of nature, natural phenomenon,

or abstract idea, and (2), if so, the particular elements of the claim, considered both individually and as an ordered combination, do not add enough to transform the nature of the claim into a patent-eligible application." *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166–67 (Fed. Cir. 2018) (quoting *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014)).

At Step 1, the "directed to" inquiry begins by asking "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1292 (Fed. Cir. 2020) (quoting *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1168 (Fed. Cir. 2019)). "In conducting this inquiry, the focus is on the claim language considered in the light of the specification. *Id.* (quoting *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016); *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016)). The Supreme Court has cautioned against "overgeneralizing claims" explaining that "characterizing the claims at 'a high level of abstraction' that is 'untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule.'" *TecSec*, 978 F.3d at 1293 (quoting *Enfish*, 822 F.3d at 1337)). Instead, the "Step 1 analysis . . . depends on an accurate characterization of what the claims require and of what the patent asserts to be the claimed advance." *Id.* at 1294.

In cases involving improvements to computing technology and networks, the Federal Circuit has identified "two inquiries of significance here: [1] whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers; and [2] whether the claim is properly characterized as identifying a specific improvement in computer capabilities or network functionality, rather than only claiming a desirable result or function." *Id.* at 1293.

### III.   Analysis

The Court will address Mobile Equity's motion first because Walmart incorporated the

majority of its motion for summary judgment into its response to Mobile Equity's motion. Therefore, the Court resolves the majority of issues raised in Walmart's motion by addressing Mobile Equity's motion. However, before reaching Step 1, the parties dispute whether Claim 1 of the '236 Patent is representative of the asserted claims for the purposes of invalidity. Therefore, the Court addresses the representative claim issue first and then turns to the Step 1 analysis.

### a. Representative Claim

Walmart raises two arguments as to why Claim 1 of the '236 Patent is representative of all asserted claims: (1) Mobile Equity, in its motion, did not argue separately for eligibility of the '058 Patent, nor any of the dependent claims in the asserted patents, Dkt. No. 228 at 6-7, and (2) Walmart has shown a "rationale" under *PPS Data, LLC v. Jack Henry & Assocs., Inc.*, 404 F.Supp.3d 1021 (E.D. Tex. 2019), for treating Claim 1 of '236 Patent as representative by relying on the claim language, specification, and the Court's Claim Construction Opinion and Order (Dkt. No. 128). Dkt. No. 287 at 2-3; *also* Dkt. No. 228 at 7 n.3. In response, Mobile Equity argues that Walmart has not carried its burden because Walmart has not conducted a sufficient "analysis tethered to the claim language, to show that there are no legally relevant distinctions between the claim identified as representative and the remaining asserted claims." Dkt. No. 261 at 1 (quoting *PPS Data*, 404 F.Supp.3d at 1031).

As to Walmart's first argument, the "initial burden of persuasion rests on the defendant to identify a rationale for treating a given claim or claims as representative of other asserted claims." *PPS Data*, 404 F.Supp.3d at 1030. To meet this burden, "the defendant must conduct an analysis tethered to the claim language, to show that there are no legally relevant distinctions between the claim identified as representative and the remaining asserted claims." *Id.* at 1031. "Once the defendant has proven a prima facie case demonstrating representativeness, the burden shifts to the

plaintiff to identify limitations that are present in the asserted claims but that are not represented by the allegedly representative claim. '[I]f the patentee does not present any meaningful argument for the distinctive significance of any claim limitations,' then the Court has discretion to treat the allegedly representative claim as representative." *Id.* at 1031-32 (quoting *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018)) (alternations in original).

With this, Walmart's first argument that Claim 1 is representative because Mobile Equity did not argue representativeness is irrelevant as it is Walmart's burden to initially establish a prima facie case of representativeness. However, by citing the language of the claims and offering argument as to why there are no limitations that are legally distinct from those in Claim 1, Walmart's makes a prima facie case sufficient to show Claim 1 is representative. Thus, the burden shifts to Mobile Equity to point to limitations that are not represented in Claim 1. Mobile Equity fails to present any meaningful argument as to how the '058 Patent or other dependent claims are not represented by Claim 1 of the '236 Patent. Therefore, the Court exercises its discretion and finds that Claim 1 of the '236 Patent is representative of all the asserted claims.

    b. Step 1

Mobile Equity, utilizing the inquiries identified in *TecSec*, argues that the asserted claims are eligible at Step 1 because the claims are directed to a specific improvement addressing a problem arising in the realm of computer networks, specifically mobile payment networks. In the alternative, Mobile Equity argues that there is at least a fact issue at Step 1 to preclude summary judgment. To support its arguments, Mobile Equity relies on the opinions of its technical expert, Dr. Markus Jakobsson, and offers other extrinsic evidence to show the asserted claims are eligible.

In response, Walmart argues that the asserted claims: (1) are directed to an economic problem related to financial transactions, not a technical problem; (2) if they address a technical

problem, they fail to provide a specific solution because they resemble other claims found ineligible or rely on conventional methods and hardware; or (3) merely automate a human activity. Additionally, Walmart argues that the Court cannot consider expert testimony or other extrinsic evidence at Step 1, and furthermore, because Step 1 is a question of law, the Court can resolve Step 1 on summary judgment.

>    i. *Mobile Equity's Evidence and Whether Factual Issues Exist*

In its motion, Mobile Equity offers opinions of its technical expert that address the *TecSec* inquiries and whether the asserted claims would preempt other inventions in the field of mobile-payment solutions. S*ee* Dkt. No. 202 at 3-7. Furthermore, Mobile Equity argues that Walmart fails to offer expert testimony to rebut its expert, stating: "What Walmart's lawyers think about Dr. Jakobsson's opinions or MEC's Patents does not defeat summary judgment." Dkt. No. 261 at 6. Walmart responds that it is unclear how Mobile Equity's expert testimony is relevant to Step 1, which is a question of law. Dkt. No. 228 at 15. Additionally, Walmart argues the Court should not consider expert testimony because other courts have declined to do so when faced with this issue and the expert's analysis is untethered from the claim language. *Id.* at 15-16.

The Federal Circuit has clarified that "step one of the *Alice* framework does not require an evaluation of the prior art or facts outside of the intrinsic record. . . . Accordingly, our analysis at *Alice* step one involves examining the patent claims in view of the plain claim language, statements in the written description, and the prosecution history, if relevant." *CardioNet, LLC v. InfoBionic, Inc*, 955 F.3d 1358, 1374 (Fed. Cir. 2020). Though the Federal Circuit did not hold that "it is impermissible for a court to look outside the intrinsic evidence as part of the *Alice* step one inquiry," the *Alice* step one inquiry begins and ends with the patent itself. *Id.* at 1373.

Therefore, neither party is entirely correct. Walmart is incorrect because the Court may

consider expert testimony as long as the testimony addresses the claim language, statements in the written description, or the prosecution history. Mobile Equity is incorrect that simply because Walmart offers no rebuttal expert testimony, that the Court must grant it summary judgment. Walmart cites the language of the asserted claims and portions of the specification to support its arguments at Step 1; therefore, Walmart has offered relevant evidence at Step 1.

Furthermore, the evidence offered by both sides addresses a question of law that is for the Court to decide. Therefore, on the record before it, the Court finds that it can resolve Step 1 as a matter of law because the parties have not identified any fact issue that would preclude the Court from rendering summary judgment. Thus, the Court will consider Mobile Equity's expert testimony to the extent he offers opinions related to the intrinsic evidence; however, the fact that Walmart does not offer expert testimony in rebuttal does not mean Mobile Equity is necessarily entitled to summary judgment at Step 1.

        ii.   *Problem Specifically Arising In The Realm Of Computer Networks Or Computers*

At Step 1, the "directed to" inquiry begins by asking "what the patent asserts to be the 'focus of the claimed advance over the prior art.'" *TecSec*, 978 F.3d at 1292. For patents related to computer networks or computers, like the asserted patents here, the first question in determining whether the asserted advance over the prior art is directed towards eligible subject is to determine "whether the focus of the claimed advance is on a solution to a problem specifically arising in the realm of computer networks or computers." *Id*. at 1293.

Mobile Equity argues that the claimed advance addresses a problem arising from computer networks, specifically the security of mobile payment transactions. Dkt. No. 202 at 3-4. According to Mobile Equity, the specification of the asserted patents identifies security of mobile transactions as an issue the patents seek to solve. *Id.* at 4 (citing '236 Patent at 1:48-56). Mobile Equity also

cites the prosecution history as further evidence that the asserted patents seek to address a problem with traditional client or mobile devices interacting with a point of sale system. Dkt. No. 261 at 5. Thus, MEC argues that, because mobile payment networks are computer networks and the asserted patents address an issue related to these networks, the asserted patents address a problem arising in the realm of computer networks. Dkt. No. 202 at 5.

Walmart responds by arguing, "the problem identified by MEC is fundamentally a business problem, rather than a problem that is specifically arising in the realm of computer networks or computers." Dkt. No. 228 at 9 (citing Dkt. No. 199 at 14-15). To support its argument, Walmart cites other cases where courts have found that the claims related to mobile or online payments addressed a business problem, not a technical problem. *See* Dkt. No. 228 at 9.

After reviewing the intrinsic record, the Court finds that the asserted patents are addressing a problem arising in the realm of computer networks, which is related to the problem of security as argued by Mobile Equity. Beginning with Claim 1, the claim recites:

> A method for conducting a transaction between a merchant and a customer, the customer using a mobile device, the method comprising:
> [1] receiving a merchant identifier from the mobile device operated by the customer, the merchant identifier indicating a request to initiate a transaction with a merchant terminal identified by the merchant identifier, wherein the merchant identifier does not indicate a transaction amount for the transaction;
> [2] sending, in response to receiving the merchant identifier, a transaction information request to the merchant terminal associated with the merchant identifier;
> [3] receiving transaction information from the merchant terminal in response to the transaction information request, the transaction information including the transaction amount for the transaction;
> [4] identifying a purchase account associated with the customer and a deposit account associated with the merchant; and
> [5] initiating the transaction between the merchant and the customer for the transaction amount received from the merchant terminal and the identified purchase account associated with the customer and the identified deposit account associated with the merchant.

As stated in the preamble, the claims recite a method for conducting a transaction where the

customer has a mobile device that provides a merchant identifier, which initiates a transaction. Furthermore, the specification provides:

> It is a general object of the present invention *to allow a customer to use a mobile communications device to initiate and execute a transaction by reversing the conventional direction of point of sale transaction initiation*; that is the processing server opens communications towards point of sale terminal utilizing merchant ID or point of sale terminal ID, instead of the conventional method of point of sale terminal opening communications towards processing server.

'236 Patent at 2:10-17 (emphasis added).

Thus, reading the representative claim in light of the specification, the Court finds that Claim 1 addresses the problem of how to allow a customer to use a mobile communications device to initiate and execute a transaction that occurs over a mobile payment network. This finding is consistent with the Court's claim construction, where the Court found that "Claim 1 of each patent is directed to the steps preceding and including initiating the transaction, which is consistent with how the patent describes the advancement over the prior art." Dkt. No. 128 at 9.[1] Walmart's references to other cases with different claims do not change the intrinsic record of the asserted patents, which shows that the patents are addressing a problem in computer networks.

Finally, although Mobile Equity argues that the problem addressed by the asserted patents is security of mobile payments, the Court finds overall increasing the security of the customer's credit card information is a benefit of the claimed invention, not the specific problem the asserted patents address. *See cf.* '236 Patent at 1:48-52 (discussing issues related to security of a customer's physical credit card); Dkt. No. 224-1 at MEC-WM-00000348 (discussing the vulnerability of payment credentials). Thus, the Court concludes that the asserted patents are addressing the

---

[1] This reading of the claims does not conflict with any of the Court's other constructions. During claim construction, the parties disputed whether "conducting a transaction," as recited in the preamble, required "a transaction be both initiated and executed." Dkt. No. 128 at 8. The Court found "the preambles are not limited so far as 'conducting a transaction' is concerned." *Id.* at 9.

problem of how to allow a customer to use a mobile communications device to initiate and execute a transaction that occurs over a mobile payment network, without having to rely upon the presence or even the existence of a credit card, all of which increases the security of the process.

>   *iii.   A Specific Improvement In Computer Capabilities Or Network Functionality*

Next, Mobile Equity argues that the claims are drawn to a specific new "reverse" software architecture that is a specific improvement to the operation of merchant-payment networks. Dkt. No. 202 at 5. Although Mobile Equity identified a different problem, reversing the "conventional method" of a mobile network payment is the specific improvement the asserted patents identify as an advancement over the prior art. According to the specification, the "conventional method" of completing a mobile payment transaction was the "point of sale terminal opening communications towards [a] processing server." '236 Patent at 2:16-17. The asserted patents' purported advancement over the prior art is reversing "the conventional direction of point of sale transaction initiation; that is the processing server opens communications towards point of sale terminal utilizing merchant ID or point of sale terminal ID," thus allowing a mobile communications device to initiate and execute a transaction. *Id.* at 2:10-15. Mobile Equity further argues that the limitations of Claim 1 specifically claim this improvement. Dkt. No. 261 at 4.

The Court finds that the specific improvement here is like other specific improvements found eligible by the Federal Circuit. In *Uniloc USA, Inc. v. LG Elecs. USA, Inc.*, 957 F.3d 1303 (Fed. Cir. 2020), the Federal Circuit held that the claims were eligible because specific improvement of adding an additional data field eliminated or reduced the delay present in conventional systems. *Id.* at 1307-08. The Federal Circuit stated that "the claimed invention changes the normal operation of the communication system itself to overcome a problem specifically arising in the realm of computer networks. In doing so, the claimed invention . . .

enables the communication system to accommodate additional devices . . . ." *Id.* at 1308 (internal citations and quotation marks omitted).

Similarly, the Federal Circuit held in *Packet Intelligence, LLC v. NetScout Sys., Inc.*, 965 F.3d 1299 (Fed. Cir. 2020) that the claims, read in light of the specification, solved a challenge unique to computer networks—"identifying disjointed connection flows in a network environment." *Id.* at 1309-10. In *Packet Intelligence*, the Federal Circuit stated:

> the asserted patents' specifications make clear that the claimed invention presented a technological solution to a technological problem. The specifications explain that known network monitors were unable to identify disjointed connection flows to each other, and the focus of the claims is a specific improvement in computer technology: a more granular, nuanced, and useful classification of network traffic. The specifications likewise explain how the elements recited in the claims refer to specific technological features functioning together to provide that granular, nuanced, and useful classification of network traffic, rather than an abstract result.

*Id.*

The Court finds that reversing the conventional transaction flow is a specific improvement in line with *TecSec*. The first two limitations of Claim 1—"receiving a merchant identifier from the mobile device operated by the customer, the merchant identifier indicating a request to initiate a transaction with a merchant terminal. . ." and "sending, in response to receiving the merchant identifier, a transaction information request to the merchant terminal . . ."—recite the reverse transaction flow. According to the specification of the asserted patents, this reverse transaction flow—i.e. opening communications towards the point of sale terminal from the processing server—enables a customer's mobile device to initiate a mobile payment transaction.

Thus, the claimed invention here enables a payment system "to accommodate additional devices" like the claimed invention in *Uniloc*. Furthermore, like the specification of the patents in *Packet Intelligence*, the specification of the asserted patents both explains (1) the "technological problem" that known payment networks were unable to allow mobile devices to initiate mobile

transactions using the conventional transaction flow and (2) how the first two limitations provide the "specific improvement in computer technology" of reversing the transaction flow.

Walmart's arguments to the contrary do not change this finding. Walmart argues that the reverse flow is not a specific solution because the claim (1) resembles claims deemed ineligible at Step 1 by the Federal Circuit and (2) the claims rely on generic computer hardware and functionally-claimed limitations, thus not a specific solution. Dkt. No. 228 at 9-10 (incorporating by reference Dkt. No. 199 at 6-11, 12-14).

As to Walmart's first argument, Walmart relies primarily on *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342 (Fed. Cir. 2021) (hereinafter "*USR*") and *Boom! Payments, Inc. v. Stripe, Inc.*, 839 F. App'x 528, 529 (Fed. Cir. 2021). Dkt. No. 228 at 10-11; *also* Dkt. No. 199 at 7-9. In *USR*, the claims at issue recited "a method for providing information to a provider to enable transactions between the provider and entities who have secure data stored in a secure registry in which each entity is identified by a time-varying multicharacter code." 10 F.4th at 1348. The Federal Circuit held that the claims were directed to the abstract concept of "a method for verifying the identity of a user to facilitate an economic transaction, for which computers are merely used in a conventional way, rather than a technological improvement to computer functionality itself." *Id.* at 1350. The Federal Circuit determined that the "time-varying multicharacter code" which was used in lieu of a "user's secure (credit card) information," simply recited conventional actions in a generic way and did not "purport to improve any underlying technology." *Id.* at 1349 (quoting *Solutran*, 931 F.3d at 1168).

Walmart argues that "*USR* compels the conclusion that the Asserted Claims are abstract as being directed to the abstract idea of a customer initiating a commercial transaction" given that the claims are similar to the claims found ineligible in *USR*. Dkt. No. 199 at 8. Mobile Equity

11

distinguishes the asserted patents from the patents in *USR*, arguing that the asserted patents specifically purport to improve the underlying technology by offering a new method of initiating a mobile payment transaction. Dkt. No. 224 at 3-4.

Turning to *Boom! Payments*, the Federal Circuit found that the claims generally recited "systems and methods for confirming that a transaction has been consummated prior to releasing electric payments," 839 F. App'x at 529, and that this was directed to the abstract idea of payment escrow. *Id.* at 532. Although the patentee argued that the claims were eligible based on their use of an "identification code" and "specific steps," the Federal Circuit found that neither the identification code, nor the recited steps, changed the direction of the claims. *Id.* at 532-33.

Walmart argues that the asserted claims are directed to an abstract concept because they resemble the claims found in *Boom! Payments* and Mobile Equity relies on similar arguments to the ones that the Federal Circuit rejected in *Boom! Payments*. Dkt. No. 199 at 10. Mobile Equity distinguishes the asserted claims from those in *Boom! Payments* by arguing that the asserted claims are not directed to "the concept of paying for goods or services" using a computer, but rather the claims provide an unconventional method that solves a problem related to computer networks in an unconventional way. Dkt. No. 224 at 5.

Walmart's argument is unpersuasive because Walmart fails to address the differences between the asserted patents and claims of this case and the patents and claims at issue in *USR* and *Boom! Payments*. Here, the asserted patents clearly purport to solve a problem with the "conventional method" of initiating transactions. Furthermore, the solution of reversing the transaction flow is not simply swapping out a conventional component with another conventional component as in *USR,* nor performing an escrow but with a computer as in *Boom! Payments*. Thus, while the asserted claims may use similar language to the claims in *USR* and *Boom! Payments*, the

12

asserted claims are directed toward eligible subject matter.

Walmart's second argument—that the asserted claims are ineligible because they rely on generic computer hardware and functionally-claimed limitations—is also unpersuasive. Walmart argues that claiming off-the-shelf computer technology and reciting elements "set forth in functional terms" renders the claims ineligible. Dkt. No. 199 at 12-14. Mobile Equity agrees with Walmart "that the specification discloses that known hardware and communications protocols may be used. But that fact is of no consequence by itself." Dkt. No. 261 at 7-8 (quoting *Uniloc*, 957 F.3d at 1309). In *Uniloc*, the Federal Circuit stated a claimed invention's compatibility with conventional systems does not render it abstract: "Our Precedent is clear that software can make patent-eligible improvements to computer technology, and related claims are eligible as long as they are directed to non-abstract improvements to the functionality of a computer or network platform itself . . . ." *Id.* at 1309. As shown above, the Court finds that the asserted patents are directed to non-abstract improvements to the functioning of mobile payment networks; therefore, the Court finds Walmart's second argument unpersuasive.

Overall, the Court finds that the asserted claims are directed to reversing the conventional transaction flow thus allowing a customer's mobile device to initiate a mobile payment transaction. This is a specific improvement in payment network functionality. Therefore, the asserted claims are eligible at Step 1 as they are directed to eligible subject matter.

   iv. *Walmart's Remaining Arguments*

Walmart's remaining arguments do not specifically address the inquiries identified in *TecSec* but relate to Step 1. First, Walmart argues that if the reverse transaction flow is eligible subject matter, the asserted claims are still invalid because, by the using the word "comprising," these claims "can sweep in even the conventional flow and still be infringed." Dkt. No. 228 at 18.

Thus, Walmart argues that these claims are not "restricted" to the reverse transaction flow embodiment because the claims "contain no limitation prohibiting the 'point of sale terminal' from having previously 'open[ed] communications towards [the] processing server,' nor any other negative limitation carving out 'the conventional method' of payment processing." *Id*. Because the claims are not restricted to the eligible embodiment, they are ineligible. *Id.* at 20-21 (citing *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017); *Mortgage Grader, Inc. v. First Choice Loan Servs.*, 811 F.3d 1314 (Fed. Cir. 2016)); Dkt. No. 287 at 10 (citing *Solutran*).

Walmart's cited cases are distinguishable and do not compel the Court to find the asserted claims ineligible. In *Mentor Graphics*, the specification of the patent in suit specifically defined "machine-readable medium" to include carrier waves, which the Federal Circuit previously held do "not fall within any statutory category of subject matter: process, machine, manufacture, or composition of matter." 351 F.3d at 1294 (citing *In re Nuijten*, 500 F.3d 1346, 1353 (Fed. Cir. 2007)). Because the claims were "expressly defined by the specification to cover carrier waves," the Federal Circuit was "bound by the patentee's lexicography" and held that the patent claimed ineligible subject matter. *Id.* at 1295. Similarly, in *Mortgage Grader*, the claims "expressly" encompassed the ineligible embodiment because of how the specification defined a term in the claims. 811 F.3d at 1326. Here, Walmart does not identify any definition or lexicography that would cause the "conventional method" to fall within the scope of the asserted claims.

In *Solutran*, the Federal Circuit found the clams were not directed to a specific improvement to the way computers operate and therefore were ineligible. 931 F.3d at 1167. The Federal Circuit stated, "This is also not a situation where the claims are limited to rules with specific characteristics to create a technical effect . . . . To the contrary, the claims are written at a distinctly high level of generality." *Id.* As discussed above, the asserted claims specifically claim

the reverse transaction flow and therefore, the Court finds that they are not written at a distinctly high level of generality.

Next, Walmart argues that the asserted claims apply "existing technology" to "automate" the process of conducting a wire transfer. Dkt. No. 228 at 12-14. This argument relies on an overgeneralization of the claims devoid of any context provided by the specification.[2]

Finally, Walmart's remaining arguments address Step 2. Dkt. No. 199 at 15-24. Because the Court found the asserted claims eligible at Step 1, the Court does not address Step 2. *See Enfish*, 822 F.3d at 1339.

## IV.     Conclusion

For the foregoing reasons, the Court finds that the asserted claims are directed to eligible subject matter at Step 1. Therefore, the Court recommends **GRANTING** Mobile Equity's motion for summary judgment (Dkt. No. 202) and **DENYING** Walmart's motion for summary judgment (Dkt. No. 199).

A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within 14 days bars that party from *de novo* review by the District Judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*). Any objection to this Report and

---

[2] Walmart also argues that specific limitations found in the asserted claims fail to save the claims from being ineligible. Dkt. No. 228 at 25-26. These arguments similarly rely on reading out limitations; therefore, the Court finds them unpersuasive as well.

Recommendation must be filed in ECF under the event "Objection to Report and Recommendations [cv, respoth]" or it may not be considered by the District Judge.

**SIGNED this 8th day of September, 2022.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE