## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE EQUITY CORP., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Case No. 2:21-cv-00126-JRG-RSP |
| | § | |
| WALMART INC., | § | |
| | § | |
| *Defendant*. | § | |

## <u>MEMORANDUM ORDER</u>

Before the Court is the Motion to Strike Infringement Opinions of Dr. Jakobsson for Applying Incorrect Claim Constructions filed by Defendant Walmart Inc. **Dkt. No. 207**.

### I.        Background

On April 7, 2021, Plaintiff Mobile Equity Corp. filed the present suit alleging Walmart infringes U.S. Pat. Nos. 8,589,236 (the "'236 Patent") and 10,535,058 (the "'058 Patent"). On January 25, 2022, the Court issued its Claim Construction Opinion and Order. Dkt. No. 128. Relevant to this motion, the Court construed "payment processing server" to mean "a platform that can execute a transaction between a customer, a financial institution associated with the customer, and a merchant" and "mobile enablement center" to mean "a platform that routes outgoing messages from the mobile devices to the corresponding payment processing server." *Id.* at 18, 16.

Later, Mobile Equity served its opening expert report on infringement, in which Mobile Equity's technical expert, Dr. Jakobsson, concluded that the accused product, Walmart Pay, infringes the asserted patents. Walmart now moves to strike portions of Dr. Jakobsson's report.

### II.        Legal Standard

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical,

1

or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Federal Rule of Evidence 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's proposed testimony. See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 592–93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152. Although there are various factors that the district court may consider in determining admissibility the ultimate inquiry is whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391–92 (Fed. Cir. 2003) (applying Fifth Circuit law); *Pipitone v. Biomatrix, Inc.,* 288 F.3d 239, 249–50 (5th Cir. 2002). "Incorrect claim construction statements go to the relevance of the expert's opinion, and thus form a basis to exclude an expert's opinion." *Ultravision Techs., LLC v. GoVision LLC*, No. 2:18-cv-00100-JRG-RSP, 2021 WL 2144788 (E.D. Tex. May 26, 2021) (citing *Liquid Dynamics Corp. v. Vaughan Co., Inc*., 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2016)).

2

III.     **Analysis**

Walmart argues that Dr. Jakobsson's opinions as to the claim terms "in response to" and "payment processing server" should be excluded because he fails to "apply an appropriate understanding" of these terms. Dkt. No. 207 at 6.

a.   **In Response to**

Beginning with the "in response to" term, this term is recited in both Claim 1 of the '236 Patent—"receiving transaction information from the merchant terminal in response to the transaction information request"—and Claim 1 of the '058 Patent—"receiving, at the payment processing server, transaction information from the terminal in response to the transaction information request." In his report, Dr. Jakobsson opines that an authorization request being sent in response to a pairing request practices the above limitations because the pairing request is "a necessary precondition" for sending of the authorization request. Dkt. No. 207-3 at ¶ 423.

Walmart argues that the plain and ordinary meaning of in response to requires a *direct* causal relationship, not that something is a necessary precondition. Dkt. No. 207 at 7-8. Walmart further argues that what Dr. Jakobsson has identified as practicing this limitation lacks this direct relationship—as confirmed by Walmart's source code expert, Dr Jonathan Krein. *Id.* at 8-9. Thus, Walmart argues that, because the authorization request and the pairing request do not have a direct causal relationship, these requests do not fall within the plain and ordinary meaning of "in response to." *Id.* at 9. Therefore, Dr. Jakobsson's opinions are an "inappropriate" understanding of what "in response to" means and should be excluded. *Id.* (citing *Ultravision*, 2021 WL 2144788, at *2).

In response, Mobile Equity argues that Walmart is imposing additional requirements for this term beyond the plain and ordinary meaning. According to Mobile Equity, Walmart's arguments are improper because, not only has Walmart waived these arguments by not raising

them during claim construction, but they are incorrect based on the intrinsic evidence. Dkt. No. 227 at 2-5. Citing the claims and the specification, Mobile Equity argues that applying Walmart's proposed construction would exclude embodiments from the scope of the claims and would effectively rewrite the claims to be terminal-focused, not server focused. *Id.* at 3-5.

Overall, the Court agrees with Mobile Equity that Walmart is reading a "direct" causal relationship into the "in response to" term, which improperly narrows the plain and ordinary meaning of the term, and then uses this narrow reading as a basis of its argument to exclude Dr. Jakobsson's opinions. Walmart provides insufficient evidence to conclude that such a narrow construction is warranted, and therefore, the Court finds that Walmart's arguments are not a proper basis on which to exclude Dr. Jakobsson's opinions.

### b. Payment Processing Server

The Court construed "payment processing server" to mean "a platform that can execute a transaction between a customer, a financial institution associated with the customer, and a merchant," and this term appears in Claim 11 of the '236 Patent and Claim 1 of the '058 Patent. Dkt. No. 128 at 18. Walmart argues that Mobile Equity's expert applies an "inappropriate construction" of this term for three reasons: (1) the expert's application of the term is inconsistent with the Court's construction and the intrinsic record; (2) the expert fails to identify a single component that is the "server"; and (3) the expert conflates discrete elements of the claims.

For Walmart's first argument, the specification provides the following examples of payment processing servers: "databases maintained by Visa, MasterCard, American Express, etc." '236 Patent at 7:54-59. The accused product, Walmart Pay, does interact with servers maintained by American Express servers and other similarly situated entities; however, Dr. Jakobsson does not identify these components as the payment processing server in the accused product. Dkt. No.

207 at 10-12. Instead, Dr. Jakobsson identifies a series of components maintained by Walmart that collectively function as the payment processing server. *Id.* Thus, because he opines that other components of the accused product function as the payment processing server, and not the American Express and other similar servers, Walmart argues that Dr. Jakobsson's application conflicts with the intrinsic evidence and should be excluded.

Next, Walmart argues that Dr. Jakobsson's opinions are unreliable because he identifies "disparate, unrelated, and communicatively segregated components" that function collectively as the payment processing server. *Id.* at 12. According to Walmart, these components do not meet the Court's construction because they are not "a platform that can execute a transaction" and the Court's construction requires a single component to function as the server. *Id.* at 14.

Finally, Walmart argues that the expert improperly conflates the "mobile enablement center" element of the claims with the payment processing center element. *Id.* at 15.

In response to Walmart's first argument, Mobile Equity argues that Walmart is improperly trying to limit the term to the examples listed in the specification. Dkt. No. 227 at 12. Next, Mobile Equity argues that the Court's construction does not require a payment processing server to be a single component in the accused product. *Id.* at 13-14. Finally, Mobile Equity argues that the same components of the accused product can meet different claim limitations and the Court's construction does not require the mobile enablement center to be physically distinct from the payment processing server. *Id.* at 14.

Similar to the "in response to" term, the Court finds that Walmart is seeking to improperly (1) limit the "payment processing server" to the examples in the specification and (2) require it to be a single component in the accused product. The Court's construction does not require these limitations and therefore, Walmart's arguments are unpersuasive and not a proper basis to exclude

Dr. Jakobsson's opinions. Finally, Walmart's last argument about conflating components is similarly unpersuasive. The Court finds this would recast what is a fact issue to be a legal question regarding claim scope. Therefore, the Court does not exclude Dr. Jakobsson's opinions.

## IV.     Conclusion

For the foregoing reasons, the Court **DENIES** Walmart's motion.

**SIGNED this 21st day of September, 2022.**

ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE

6